UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| VIETNAM FINEWOOD COMPANY LIMITED, FAR EAST AMERICAN, INC. AND LIBERTY WOODS INTERNATIONAL, INC.<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES,<br><br>Defendant. | Ct No. 22-00049 |

## COMPLAINT

Vietnam Finewood Company Limited ("Finewood"), Far East American, Inc. ("FEA"), and Liberty Woods International, Inc. (Liberty), by their undersigned attorneys, hereby bring this civil action and allege the following:

### Parties

1. Finewood is a privately held company organized under the laws of Vietnam. Finewood produces hardwood plywood in Vietnam and exports hardwood plywood to the United States.

2. FEA and Liberty are U.S. importers of hardwood plywood manufactured by Finewood.

3. Defendant is the United States of America, acting by and through the U.S. Department of Commerce ("Commerce").

### Administrative Determination to be Reviewed

4. Plaintiffs seek judicial review of Commerce's final scope determination issued on January

1

21, 2022 concerning the antidumping and countervailing duty orders on hardwood plywood from the People's Republic of China.  *See* Memorandum from Nicolas Mayora. International Trade Analyst, Office V, AD/CVD Operations to James Maeder, Deputy Assistant Secretary for AD/CVD Operations Regarding Antidumping Duty and Countervailing Duty Orders on Certain Hardwood Plywood Products from the People's Republic of China, Enforcement and Protect Act (EAPA) Investigation No. 7252, Final Scope Ruling (Jan. 21, 2022) ("Scope Ruling").

## Procedural Background

5. Commerce issued antidumping and countervailing duty orders against imports of hardwood plywood from China on January 4, 2018.  Dep't Commerce, *Certain Hardwood Plywood from the People's Republic of China, Antidumping Order*, 83 Fed. Reg. 504 (Jan. 4, 2018) and *Certain Hardwood Plywood from the People's Republic of China, Countervailing Duty Order*, 83 Fed. Reg. 513 (Jan. 4, 2018) (the "Orders").

6. On August 15, 2018 and pursuant to Title IV, Section 421 of the Trade Facilitation and Trade Enforcement Act of 2015, commonly referred to as the "Enforce and Protect Act" or "EAPA," U.S. Customs and Border Protection ("CBP") initiated investigations of evasion against FEA, Liberty, and three additional U.S. importers of hardwood plywood, produced by Finewood in Vietnam.

7. On November 29, 2018, CBP notified FEA, Liberty, and the other importers of its initiation of the investigations and imposed interim measures, which included the suspension of the importers' unliquidated entries of hardwood plywood from Finewood.  CBP consolidated the investigations of the five targeted importers under EAPA Investigation 7252.

8. On September 25, 2019 CBP informed FEA and Liberty that, pursuant to EAPA regulation 19 CFR §165.16, CBP had referred the matter to Commerce for a scope determination. *See also* 19 U.S.C. § 1517(b)(4).

9. On December 27, 2019, Finewood, FEA, and U.S. importer InterGlobal Forest LLC instituted an action in the Court of International Trade ("CIT") pursuant to 28 U.S.C. § 1581(i)(1)(B) and (D), in which Liberty intervened as Plaintiff-Intervenor, claiming (i) CBP failed to conclude its EAPA Investigation within the statutory time frame provided for in 19 U.S.C. §§ 1517(c)(1)(A) & (B), and (ii) CBP's scope referral to Commerce was untimely. *See Vietnam Finewood Company Limited, et al. v. United States*, Court No. 19-00218 ("*Finewood I*"), ECF Doc. 5.

10. On January 13, 2020, Commerce initiated a scope inquiry, allegedly based on CBP's scope referral although Commerce indicated in its initiation notice that the scope inquiry was "self-initiated." *See* Dep't Commerce, *Certain Hardwood Plywood From the People's Republic of China: Notice of Covered Merchandise Referral and Initiation of Scope Inquiry*, 85 Fed. Reg. 3024 (Jan. 17, 2020) ("DOC Initiation Notice").

11. On March 11, 2020 and March 19, 2020, Commerce sent liquidation instructions to CBP to liquidate all entries exported by Finewood.

12. On March 20, 2020 and March 27, 2020, CBP liquidated all of FEA's and Liberty's entries of imports of Finewood's merchandise that are subject to the ongoing CBP EAPA Investigation and Commerce's Scope Inquiry.

13. On July 31, 2020, the Court issued an Opinion and Order in *Finewood I* denying Plaintiffs'

Motion for Leave to File a Supplemental Complaint and granting the Government's Motion to Dismiss for lack of subject-matter jurisdiction. The same day, the Court entered a judgment dismissing *Finewood I*, ECF Doc. Nos. 67 & 68.

14. On August 5, 2020, Liberty Woods International, Inc. instituted an action in the CIT pursuant to 28 U.S.C. § 1581(i)(1)(B) and (D) contesting CBP's premature liquidations. *See Liberty Woods International, Inc. v. United States*, Court No. 20-00143, ECF Doc. Nos. 1 & 2 ("*Liberty Woods*").

15. On August 14, 2020, Finewood, FEA, and U.S. importer InterGlobal Forest LLC instituted an action in the CIT pursuant to 28 U.S.C. § 1581(i)(1)(B) and (D) contesting CBP's premature liquidations. *See Vietnam Finewood Company Limited, et al. v. United States*, Court No. 20-00155 ("*Finewood II*"), ECF Doc. Nos. 1 & 5.

16. On August 24, 2020, Liberty protested the liquidation of its entries of hardwood plywood produced by Finewood, Protest No. 130320105665.

17. On September 10, 2020, FEA protested the liquidation of its entries of hardwood plywood produced by Finewood, Protest No. 130320102534.

18. On November 3, 2020, the CIT stayed further proceedings in Ct. No. 20-00143, and on November 10, 2020, the CIT stayed further proceedings in Ct. No. 20-00155, pending CBP's final determination in EAPA Inv. 7252 or 15 days after CBP decides FEA's and Liberty's protests if such decision occurs prior to CBP's final EAPA determination. CIT Ct. No. 20-00143, ECF Doc. 13 and CIT Ct. No. 20-00155, ECF Doc. No. 12.

19. On February 2, 2022, the Court convened a teleconference with all of the parties in

*Finewood II*, CIT Ct. No. 20-00155 to discuss whether and to what extent Commerce's scope determination required a lifting of the stay in Ct. No. 20-00155. ECF Doc. No. 20.

## Jurisdiction

20. This action is brought pursuant to 19 U.S.C. §§ 1516a(a)(2)(A)(ii) and (B)(vi) to contest Commerce's Scope Ruling.

21. CBP's ongoing EAPA Inv. 7252 does not preclude this action. The EAPA statute's rule of construction in 19 U.S.C. § 1517(b)(4)(D) concerning CBP's scope referrals to Commerce states: "{n}othing in this paragraph shall be construed to affect the authority of an interested party to commence an action in the United States Court of International Trade under section 1516a(a)(2) of this title with respect to a determination of the administering authority under this paragraph."

22. Accordingly, and notwithstanding CBP's premature liquidation of FEA's and Liberty's entries, this Court has jurisdiction in accordance with 28 U.S.C. § 1581(c).

23. CBP has suspended action on FEA's and Liberty's protests. S*ee* Court Order and Joint Motion to Stay Further Proceedings, *Finewood II*, ECF Doc. No. 12; and Court Order and Joint Motion to Stay Further Proceedings, *Liberty Woods,* ECF Doc. Nos. 12 & 13.

24. Further, in accordance with 19 U.S.C. § 1514(b), CBP's liquidation of FEA's and Liberty's entries will not be final and conclusive during the pendency of this litigation ("{w}ith respect to determinations made under . . . subtitle IV of this chapter which are reviewable under section 1516a of this title, determinations of the Customs Service are final and conclusive upon all persons (including the United States and any officer thereof) unless a

civil action contesting a determination listed in section 1516a of this title is commenced in the United States Court of International Trade . . ..").  The Court may consider the provision of 19 U.S.C. § 1514(b) to be a so-called "agency-based injunction."

25. The liquidation of FEA's and Liberty's entries has not rendered judicial review of Commerce's Scope Ruling moot.  The proper scope of the Orders on hardwood plywood at issue here affects the ultimate outcome of CBP's EAPA Inv. 7252 as well as CBP's final disposition of FEA's and Liberty's pending protests.  FEA's and Liberty's future entries of similar merchandise are also affected by the outcome of the Court's judicial review of Commerce's Scope Ruling.

26.  If recourse to this Court under 19 U.S.C. § 1516a(2) and 28 U.S.C. § 1581(c) is unavailable because CBP has liquidated all of Plaintiffs' entries with AD and CVD duties, then, alternatively, this Court has jurisdiction in accordance with 28 U.S.C. § 1581(i)(1)(B) (concerning tariffs and fees) and (D) (concerning the enforcement of the trade laws) to review Commerce's Scope Ruling.

27. But for CBP's premature liquidation of FEA's and Liberty's entries, Plaintiffs would have a cause of action for judicial review of Commerce's Scope Ruling under 19 U.S.C. §§ 1516a(a)(2)(A)(ii) and (B)(vi), and this Court would have jurisdiction over the action under 28 U.S.C. § 1581(c).  Plaintiffs' claims against Commerce and CBP for the premature liquidation of FEA's and Liberty's entries are before the Court in *Finewood II* and *Liberty Woods*.

28. Neither Commerce nor CBP may deprive this Court of jurisdiction by means of premature or illegal actions because 28 U.S.C. § 1581(i)(1)(B) & (D) grant the CIT "exclusive

jurisdiction of any civil action commenced against the United States . . . that arises out of any law of the United States providing for . . . tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue." "The Court of International Trade shall possess all the powers in law and equity of, or as conferred by statute upon, a district court of the United States." 28 U.S.C. § 1585.

## Standing

29. Plaintiff Finewood is a foreign exporter of the merchandise subject to Commerce's scope inquiry. Plaintiffs FEA and Liberty are U.S. importers of the merchandise subject to Commerce's scope inquiry. Accordingly, Plaintiffs qualify as interested parties within the meaning of 19 U.S.C. §§ 1516a(f)(3) and 1677(9)(A).

30. In addition, because the Department made a final determination that was not lawful, Plaintiffs have been adversely affected or aggrieved by agency action within the meaning of 5 U.S.C. § 702. Therefore, Plaintiffs have standing to bring this action under 28 U.S.C. § 2631(c).

## Timeliness

31. An action under 28 U.S.C. § 1581(c) must be commenced within 30 days after the date Commerce mailed its Scope Ruling. 19 U.S.C. §§ 1516a(a)(2)(A)(ii) & (B)(vi). Plaintiffs filed its summons on this date, February 18, 2022, within thirty days of the date Commerce mailed its Scope Ruling to the parties on January 21, 2022.

32. An action under 28 U.S.C. § 1581(i) must be commenced within two years after the cause of action first accrues. 28 U.S.C. § 2636(i). Commerce issued its Scope Ruling on January

21, 2022.  Thus, this action is timely filed.

## Facts

33. Commerce published its antidumping and countervailing duty orders on hardwood plywood from China on January 4, 2018.  *Certain Hardwood Plywood from the People's Republic of China: Antidumping Order*, 83 Fed. Reg 504 (Dept. Commerce, Jan. 4, 2018); *Certain Hardwood Plywood from the People's Republic of China: Countervailing Duty Order*, 83 Fed. Reg. 513 (Dept. Commerce, Jan. 4, 2018) (together: the "Orders").

34. Commerce defined the scope of the Orders as follows:

> The merchandise subject to this investigation is hardwood and decorative plywood, and certain veneered panels as described below. For purposes of this proceeding, hardwood and decorative plywood is defined as a generally flat, multilayered plywood or other veneered panel, **consisting of two or more layers or plies of wood veneers <u>and</u> a core**, with the face and/or back veneer made of non-coniferous wood (hardwood) or bamboo. The veneers, along with the core may be glued or otherwise bonded together. Hardwood and decorative plywood may include products that meet the American National Standard for Hardwood and Decorative Plywood, ANSI/HPVA HP-1-2016 (including any revisions to that standard).
>
> For purposes of this investigation a "veneer" is a slice of wood regardless of thickness which is cut, sliced or sawed from a log, bolt, or flitch. **The face and back veneers are the outermost veneer of wood on either side of the core** irrespective of additional surface coatings or covers as described below.
>
> **The core of hardwood and decorative plywood consists of the layer or layers of one or more material(s) that are situated between the face and back veneers**. The core may be composed of a range of materials, including but not

> limited to hardwood, softwood, particleboard, or medium-density fiberboard (MDF).

*Id.* at Appendix. {Emphasis added}. The scope of the Orders makes clear that the subject merchandise <u>must</u> consist of at least two plies <u>and a core</u>. A two-ply product is not within the scope of the Orders.

35. On January 13, 2020, after commencement of *Finewood II*, Commerce initiated a scope inquiry, allegedly based on CBP's scope referral although Commerce indicated in its initiation notice that the scope inquiry was "self-initiated." *See* Dep't Commerce, *Certain Hardwood Plywood From the People's Republic of China: Notice of Covered Merchandise Referral and Initiation of Scope Inquiry*, 85 Fed. Reg. 3024 (Jan. 17, 2020) ("DOC Notice").

36. CBP's scope referral to Commerce relied on the following facts: Finewood produced finished plywood, importing two-ply from China under HTSUS 4412; Finewood outsourced some of the Chinese veneer to tollers in Vietnam to "develop" the Chinese cores; Finewood applied hardwood face and back veneer to the self-produced or tolled cores and exported the finished plywood to the United States.

37. On March 11, 2020 and March 19, 2020, Commerce sent instructions to CBP to liquidate entries of Finewood's merchandise "at the cash deposit rate required at the time of entry". Commerce's instructions were in violation of 19 CFR §351.225(l)(1)(2020), which requires Commerce to continue suspension of liquidation of entries that are already subject to suspension of liquidation during a pending scope inquiry.

38. On March 12, 2020, as part of its scope inquiry, Commerce issued a questionnaire to

Finewood, duplicating CBP's requests for information in EAPA Inv. No. 7252, and to which Finewood responded on April 9, 2020 and April 23, 2020.

39. On March 20, 2020, CBP began unlawfully liquidating the FEA's and Liberty's entries of Finewood's merchandise assessing AD and CVD duties of 206%, even though the cash deposit rate required at the time of entry was 0.00%.

40. On April 17, 2020, Plaintiffs alerted CBP to these premature liquidations, to which CBP replied that it had received liquidation instructions from Commerce and was required to follow Commerce's instructions.

41. On April 23, 2020, Plaintiffs wrote to Commerce requesting that Commerce issue instructions to CBP to reverse liquidation of entries of merchandise produced by Finewood and further suspend liquidation of these entries, to which Commerce replied on May 18, 2020 that it had no legal authority to direct CBP to re-suspend liquidated entries.

42. In its final scope ruling Commerce determined that two-ply is covered by the scope of the Orders.

43. Commerce found that the Orders cover two general types of merchandise: (1) hardwood and decorative plywood, and (2) certain veneered panels, and although the scope defines "hardwood and decorative plywood," the scope does not define "*certain* veneered panels" despite the clear scope language that "multilayered plywood or *other* veneered panels" must consist of **two or more layers or plies of wood veneers and a core.** In its analysis of the scope language, Commerce ignored the fact that the scope language states that "certain veneered panels" are defined in the scope text and then the text defines "other

veneered panels" as having a minimum of three plies.

44. Finding ambiguity in the scope language where there is none, Commerce proceeded to analyze the factors and source materials included in 19 CFR § 351.225(k)(1)(2020) ("(k)(1) materials").  In so doing, Commerce claimed that it need consider only information that either Commerce or the parties put on the record.

45. Commerce rejected Plaintiffs' references in their case brief to (k)(1) materials from the original investigation.  These source materials include "{t}he descriptions of the merchandise contained in the petition, the initial investigation, and the determinations of the Secretary (including prior scope determinations) and the Commission."  Commerce claimed that it was not obligated to consider the (k)(1) materials not on the administrative record of its current scope investigation.

46. Commerce also rejected the argument that the U.S. International Trade Commission ("ITC") did not investigate two-ply in its injury investigation, finding that no party placed the complete ITC Final Report on the record.  Despite the fact that the ITC defined the scope merchandise as consisting of a minimum of three plies, Commerce stated that the ITC also included "certain veneered panels" in its investigation, even though no party, including the Petitioner, Commerce, or the ITC ever defined "certain veneered panels" as potentially consisting of only two plies.

47. Although Commerce noted in its analysis that the ITC stated that a "plywood core" can be composed of only two plies, the scope of the Orders does not cover plywood cores as subject merchandise.

48. Commerce next analyzed whether Finewood's two-ply imported from China was substantially transformed in Vietnam by Finewood's incorporation of the panels in its production of finished hardwood plywood. Rejecting the substantial evidence that Plaintiffs put on the record of the case to show substantial transformation, Commerce concluded that the two-ply was not substantially transformed in Vietnam, i.e., as result of Finewood's manufacturing processes in Vietnam, the imported two-ply did not lose its identity and was not transformed into a new product with a new name, character, and use.

49. In particular, in its substantial transformation analysis, Commerce improperly compared two-ply from China with the two-ply that Finewood used in the production of finished hardwood plywood in Vietnam. Commerce rejected the proper comparison of the upstream product - two-ply - with Finewood's downstream product – finished hardwood plywood composed of seven or more plies.

## COUNT I

50. The allegations of paragraphs 1 through 49 are restated and incorporated herein by reference.

51. Commerce's conclusion that two-ply is covered by the Orders is not reasonable in light of the clear scope language defining the subject merchandise as consisting of a minimum of three plies. Commerce's conclusions are arbitrary and capricious and not supported by substantial evidence because the scope language states that "certain veneered panels are "defined below"; and the next sentence defines "other veneered panels" as having a minimum of three plies. Commerce cannot issue an interpretation that changes the scope

of the order nor "interpret an order in a manner contrary to its terms." *See Duferco Steel Inc. v. United States,* 296 F.3d 1087, 1094-95 (Fed. Cir. 2002).

52. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *DuPont Teijin Films USA v. United States*, 407 F.3d 1211, 1215 (Fed. Cir. 2005) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229, (1938)).

## COUNT II

53. The allegation of paragraphs 1 through 52 are restated and incorporated herein by reference.

54. Commerce's final scope ruling unlawfully expands the scope to include merchandise that was not part of the ITC's final injury determination. "A fundamental requirement of both U.S. and international law is that an antidumping duty order must be supported by an ITC determination of material injury covering the merchandise in question." *Wheatland Tube Co. v. United States*, 973 F.Supp. 149, 158 (Ct. Int'l Trade 1997), aff'd, 161 F.3d 1365 (Fed. Cir. 1998).

## COUNT III

55. The allegation of paragraphs 1 through 54 are restated and incorporated herein by reference.

56. In its analysis of the (k)(1) factors in this case, Commerce unlawfully rejected substantial evidence from the original investigation, including the descriptions of the merchandise contained in the petition, the initial investigation, and the ITC's injury determinations that

show that the investigation did not, and was not intended to, cover two-ply. Neither Commerce's regulations nor relevant case law allows Commerce to disregard relevant (k)(1) materials when Commerce finds the scope language ambiguous or must reference the (k)(1) materials to interpret the scope language. *See, e.g., Mid Continent Nail Corp. v. United States*, 725 F.3d 1295, 1302 (Fed. Cir. 2013): "{i}f the language is ambiguous, Commerce *must next consider the regulatory history*, as contained in the so-called "(k)(1) materials" {emphasis added}.

## COUNT IV

57. The allegation of paragraphs 1 through 56 are restated and incorporated herein by reference.

58. Commerce's substantial transformation analysis is arbitrary and capricious because Commerce improperly applied the factors for evaluating the substantial transformation of an upstream product into a downstream product. Commerce avoided the "transformation" part of the test by focusing only on Chinese two-ply whereas plywood's essential characteristics require three plies. "'[A]n agency determination that is arbitrary is ipso facto unreasonable,' and a determination is arbitrary when it fails to 'consider an important aspect of the problem,' or 'treat[s] similar situations in dissimilar ways.'" *Sunpower Corp. v. United States*, 179 F. Supp. 3d 1286, 1295 (Ct. Int'l Trade 2016), citing to *Shenyang Yuanda Aluminum Indus. Eng'g Co. v. United States*, 146 F. Supp. 3d 1331 (Ct. Int'l Trade 2016), *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29 (1983), and *Anderson v. U.S. Sec'y of Agric.*, 462 F. Supp. 2d 1333, 1339 (Ct. Int'l Trade 2006).

59. Commerce's substantial transformation analysis is not based on substantial evidence. The materials of record before Commerce conclusively show that two-ply panels are not in the scope of the Orders. The source materials that Commerce rejected and did not consider further support that conclusion. When the record as a whole is considered, Commerce's Scope Ruling is unsupported by substantial evidence. "Substantial evidence refers to 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion,' considering any relevant evidence that fairly detracts from the reasonableness of the agency's determination. *Sunpower Corp. v. United States*, 179 F. Supp. 3d 1286, 1294 (Ct. Int'l Trade 2016), citing to *SKF USA, Inc. v. United States*, 537 F.3d 1373, 1378 (Fed. Cir. 2008) and *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951).

## DEMAND FOR JUDGMENT AND PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests judgment from the Court:

(1) Finding that the unambiguous scope language of the Orders on hardwood plywood from China does not cover two-ply;

(2) Finding that the ITC's injury investigation on hardwood plywood from China did not cover two-ply;

(3) Finding that Commerce unlawfully rejected relevant (k)(1) materials from its scope analysis;

(4) Finding that Commerce's substantial transformation analysis was arbitrary and capricious and unsupported by substantial evidence; and

(5) Granting Plaintiffs such other relief as the Court may deem appropriate.

Respectfully submitted,

/s/ Gregory S. Menegaz

Gregory S. Menegaz
Alexandra H. Salzman
J. Kevin Horgan
Vivien Jinghui Wang
**deKieffer & Horgan, PLLC**
Suite 410
1090 Vermont Ave., N.W.  20005
Tel: (202) 783-6900
Fax: (202) 783-6909
email:  gmenegaz@dhlaw.com

Dated:  February 18, 2022