UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE MARK A. BARNETT, CHIEF JUDGE

| | | |
|---|---|---|
| VIETNAM FINEWOOD COMPANY LIMITED, FAR EAST AMERICAN, INC. AND LIBERTY WOODS INTERNATIONAL, INC., | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| and | ) ) | |
| INTERGLOBAL FOREST LLC, | ) ) | |
| Consolidated Plaintiff, | ) | Consol. Ct. No. 22-00049 |
| v. | ) ) | **PUBLIC VERSION** |
| UNITED STATES, | ) ) | |
| Defendant, | ) ) | |
| and | ) ) | |
| COALITION IN FAIR TRADE IN HARDWOOD PLYWOOD, | ) ) ) | |
| Defendant-Intervenor. | ) ) | |

## <u>ORDER</u>

Upon consideration of plaintiffs' and consolidated plaintiff's motions for judgment on the agency record, responses thereto, replies, and upon consideration of other papers and proceedings had herein, it is hereby:

ORDERED that plaintiffs' and consolidated plaintiff's motions are denied;

ORDERED that the Department of Commerce's determination is sustained in all respects.

Dated: _____, 2023  
    New York, New York             _____  
                                               CHIEF JUDGE

UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE MARK A. BARNETT, CHIEF JUDGE

_____
)
VIETNAM FINEWOOD COMPANY LIMITED,   )
FAR EAST AMERICAN, INC. AND   )
LIBERTY WOODS INTERNATIONAL, INC.,   )
)
        Plaintiffs,   )
)
       and   )
)
INTERGLOBAL FOREST LLC,   )
)
        Consolidated Plaintiff,   )     Consol. Ct. No. 22-00049
    v.   )
)     **PUBLIC VERSION**
UNITED STATES,   )     Proprietary Information Removed
)     from Brackets on Pages
       Defendant,   )     16, 26-27, and 30-31
)
       and   )
)
COALITION IN FAIR TRADE IN   )
HARDWOOD PLYWOOD,   )
)
       Defendant-Intervenor.   )
_____)

**DEFENDANT'S RESPONSE TO PLAINTIFF'S RULE 56.2 MOTION
FOR JUDGMENT UPON THE AGENCY RECORD**

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

PUBLIC VERSION

OF COUNSEL:

SAVANNAH ROSE MAXWELL
Attorney
Office of the Chief Counsel
   for Trade Enforcement & Compliance
U.S. Department of Commerce


November 18, 2022

TARA K. HOGAN
Assistant Director

HARDEEP K. JOSAN
Trial Attorney
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
26 Federal Plaza, Suite 346
New York, New York 10278
Tel.: (212) 264-9245
Fax:  (212) 264-1916
Email: hardeep.k.josan@usdoj.gov

# TABLE OF CONTENTS

STATEMENT PURSUANT TO RULE 56.2.................................................................. 2

**I.**    Administrative Determination Under Review ............................................... 2

**II.**   Issues Presented for Review.......................................................................... 2

STATEMENT OF FACTS ....................................................................................... 3

I.    The Scope Of The Orders............................................................................. 3

II.   The Scope Proceeding ................................................................................. 4

SUMMARY OF THE ARGUMENT.......................................................................... 7

ARGUMENT ......................................................................................................... 9

**I.**    Standard of Review...................................................................................... 9

**II.**   Commerce Reasonably Determined That Two-Ply Panels Were Subject To The Scope As Certain Veneered Panels.................................................................... 10

    A.    Legal Framework For Scope Rulings ............................................. 10

    B.    Commerce Reasonably Found That The Scope Was Ambiguous..................... 12

    C.    Commerce's Analysis Of The 19 C.F.R. § 351.225(k)(1) Factors Is Based On Substantial Evidence And In Accordance With Law......................................... 14

**III.**  Commerce Reasonably Determined That Finewood's Plywood Made With Chinese Two-Ply Panels Was Not Substantially Transformed By The Processing in Vietnam, And Thus Remained Chinese Country Of Origin And Subject To The Orders ............ 20

    A.    Legal Framework for Substantial Transformation Analysis .............................. 20

    B.    Commerce Lawfully Conducted Its Substantial Transformation Analysis......... 22

        1.    Class Or Kind................................................................... 23

        2.    Product Properties/Essential Characteristic And End Use .................... 24

        3.    The Nature And Sophistication Of Processing ...................... 26

i

4.    The Cost of Production And Value Added To The Product ................... 28

5.    The Level Of Investment  ................... 30

IV.   Commerce Did Not Abuse Its Discretion By Enforcing Its Regulatory Deadlines Concerning Untimely New Factual Information And Requirements For The Filing Of Case And Rebuttal Briefs ........................................................................... 31

A.    Commerce's Decision To Reject Untimely Filed New Factual Information In Finewood's Case Brief Is In Accordance With Law ......................................... 31

B.    Commerce's Decisions Not To Accept InterGlobal's Improperly Filed Case Brief And Rejection Of InterGlobal's Rebuttal Brief Is In Accordance With Law ............................................................................. 34

CONCLUSION ........................................................................................... 36

## TABLE OF AUTHORITIES

<u>**Cases**</u>

*ABB, Inc. v. United States,*
920 F.3d 811 (Fed. Cir. 2019) ....................................................... 34

*Advanced Tech & Materials Co., Ltd. v. United States,*
35 Ct. Int'l Trade 1380 (2011) ....................................................... 21

*Am. Silicon Techs. v. United States,*
261 F.3d 1371 (Fed. Cir. 2001) ....................................................... 9

*Arcelormittal Stainless Belgium N.V. v. United States,*
694 F.3d 82 (Fed. Cir. 2012) ....................................................... 11

*Bell Supply Co., LLC v. United States,*
348 F. Supp. 3d 1281 (Ct. Int'l Trade 2018) ....................................................... 23

*Bell Supply Co., LLC v. United States,*
393 F. Supp. 3d 1229 (Ct. Int'l Trade 2019) ....................................................... 24

*Bell Supply Company LLC v. United States,*
888 F.3d  (Fed. Circ. 2018) .......................................................21, 22, 23

*Bestfoods v. United States,*
165 F.3d 1371 (Fed. Cir. 1999) ....................................................... 21

*Boomerang Tube LLC v. United States,*
856 F.3d 908 (Fed. Cir. 2017) ........................................................ 34

*Consol. Bearings Co. v. United States,*
348 F.3d 997 (Fed. Cir. 2003) ........................................................ 35

*Consol. Edison v. NLRB,*
305 U.S. 197 (1938) ........................................................................ 9

*Corus Staal BV v. United States,*
502 F.3d 1370 (Fed. Cir. 2007) ...................................................... 34

*Crawfish Processors Alliance v. United States,*
483 F.3d 1358 (Fed. Cir. 2007) ........................................................ 9

*Dorbest Ltd. v. United States,*
604 F.3d 1363 (Fed. Cir. 2010) ...................................................... 34

*E.I.DuPont De Nemours & Company v. United States*,
8 F. Supp. 854, 858 (Ct. Int'l Trade 1993) .............................................

*Fujitsu Gen. Ltd. v. United States,*
88 F.3d 1034 (Fed. Cir. 1996) .......................................................... 9

*Global Commodity Group LLC v. United States,*
709 F.3d 1134 (Fed. Cir. 2013) ........................................................ 9

*Goldlink Indus. Co. v. United States,*
431 F. Supp. 2d 1323 (Ct. Int'l Trade 2006) .................................... 9

*Grobest & I-Mei Indus.(Vietnam) Co., Ltd. v. United States,*
815 F. Supp. 2d 1342 (Ct. Int'l Trade 2012) .................................. 33

*Huayin Foreign Trade Corp. v. United States,*
322 F.3d 1369 (Fed. Cir. 2003) ...................................................... 11

*Itochu Bldg. Prods. v. United States,*
733 F.3d 1140 (Fed. Cir. 2013) ...................................................... 35

*King Supply Co. LLC v. United States,*
674 F.3d 1343 (Fed. Cir. 2012) ........................................................ 9

*Laminated Woven Sacks Comm. v. United States,*
716 F. Supp. 2d 1316 (Ct. Int'l Trade 2010) .................................. 31

*Luoyang Bearing Factory v. United States,*
      240 F. Supp. 2d 1268 (Ct. Int'l Trade 2002).......................................................................... 35

*Mid Continent Nail Corp. v. United States,*
      725 F.3d 1295 (Fed. Cir. 2013)................................................................................................ 9

*Mittal Steel Point Lisas Ltd. v. United States,*
      548 F.3d 1375 (Fed. Cir. 2008)............................................................................................... 34

*Nan Ya Plastics Corp., Ltd. v. United States,*
      810 F.3d 1333 (Fed. Cir. 2016)............................................................................................... 36

*Novosteel SA v. United States,*
      128 F.Supp.2d 720, aff'd sub nom.
      Novosteel SA v. U.S., Bethlehem Steel Corp., 284 F.3d 1261 (Fed. Cir. 2002).................... 16

*Novosteel SA v. U.S., Bethlehem Steel Corp.,*
      284 F.3d 1261 (Fed. Cir. 2002)............................................................................................... 36

*NTN Bearing Corp. v. United States,*
      74 F.3d 1204 (Fed. Cir. 1995)................................................................................................. 33

*Philipp Bros. v. United States,*
      630 F. Supp. 1317 (Ct. Int'l Trade 1986)............................................................................... 35

*Prime Time Commerce LLC v. United States,*
      495 F. Supp. 3d 1308 (Ct. Int'l Trade 2021).......................................................................... 35

*PSC VSMPO–Avisma Corp. v. United States,*
      688 F.3d 751 (Fed. Cir. 2012)................................................................................................. 32

Sandvik Steel Co. v. United States,
      164 F.3d 596 (Fed. Cir. 1998)................................................................................................... 9

*Sango Int'l L.P. v. United States,*
      484 F.3d 1371 (Fed. Cir. 2007)................................................................................................. 9

*Stanley Works (Langfang) Fastening Sys. Co. v. United States,*
      279 F. Supp. 3d 1172 (Ct. Int'l Trade 2017).......................................................................... 35

*Tak Fat Trading Co. v. United States,*
      396 F.3d 1378 (Fed. Cir. 2005)..........................................................................................10, 11

*Timken U.S. Corp. v. United States,*
      434 F.3d 1345 (Fed. Cir. 2006)............................................................................................... 33

*Ugine and ALZ Belgium, N.V. v. United States,*
    517 F. Supp. 2d 1333 (Ct. Int'l Trade 2007)........................................................ 21

*United States v. Great Am. Ins. Co.,*
    738 F.3d 1320 (Fed. Cir. 2013)........................................................................... 36

*Universal Camera Corp. v. NLRB,*
    340 U.S. 474 (1951) ............................................................................................. 9

*Usinor Sacilor v. United States,*
    872 F. Supp. 1000 (Ct. Int'l Trade 1994) ........................................................... 33

*Wirth Ltd. v. United States,*
    5 F. Supp. 2d 968 (Ct. In'l Trade 1998) ............................................................. 16

*Yantai Timken v. United States,*
    521 F. Supp. 2d 1356 (Ct. Int'l Trade 2007)...................................................... 31

## Statutes

28 U.S.C. § 2637(d) ...................................................................................................... 34

## Regulations

19 C.F.R. § 351.225(a) ................................................................................................. 10

19 C.F.R. § 351.225(d)............................................................................................10, 11

19 C.F.R. § 351.225(e) ...........................................................................................10, 11

19 C.F.R. § 351.225(k)(1) ...........................................................................10, 11, 13, 14

19 C.F.R. § 351.225(k)(2) ............................................................................................ 11

19 C.F.R. § 351.301 ..................................................................................................... 32

19 C.F.R. § 351.302 ..................................................................................................... 32

19 C.F.R. § 351.302(b)............................................................................................32, 33

19 C.F.R. § 351.302(d)................................................................................................... 6

19 C.F.R. § 351.309(c)(2) ............................................................................................ 35

19 C.F.R § 351.303(b)(1) .............................................................................................. 6

## Other Authorities

*Notice of Final Determination of Sales at Not Less Than Fair Value:*
   *Wax and Wax/Resin Thermal Transfer Ribbon from the Republic of Korea,*
   69 Fed. Reg. 17,645, 17,647 (Dep't of Commerce April 5, 2004). ...................................... 24

*Certain Hardwood Plywood Products From the Peoples Republic of China:*
   *Initiation of Less-Than- Fair Value Investigation,*
   81 Fed. Reg. 91,125, at 91,130 (Dep't of Commerce Dec. 8, 2016)..................................... 14

*Certain Hardwood Plywood Products from the People's Republic of China:*
   *Final Determination of Sales at Less Than Fair Value, and Final Affirmative Determination of*
   *Critical Circumstances, in Part,*
   82 Fed. Reg. 53,460 (Dep't of Commerce Nov. 16, 2017)...............................................15, 19

*Certain Hardwood Plywood Products from the People's Republic of China:*
   *Amended Final Determination of Sales at Less Than Fair Value, and Antidumping Duty*
   *Order,*
   83 Fed. Reg. 504 (Dep't of Commerce January 4, 2018);..................................................3, 13

*Certain Hardwood Plywood Products from the People's Republic of China:*
   *Countervailing Duty Order,*
   83 Fed. Reg. 513 (Dep't of Commerce January 4, 2018)..................................................3, 13

*Certain Hardwood Plywood from the People's Republic of China:*
   *Notice of Covered Merchandise Referral and Initiation of Scope Inquiry,*
   85 Fed. Reg. 3,024 (Dep't of Commerce Jan. 17, 2020)....................................................... 4

*Antidumping and Countervailing Duty Orders on Certain Hardwood Plywood from the People's*
   *Republic of China: Enforcement and Protect Act (EAPA),*
   Investigation No. 7252: Final Scope Ruling (Dep't of Commerce Jan. 21, 2022)................... 2

IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE MARK A. BARNETT, CHIEF JUDGE

———————————————————————
                                                    )
VIETNAM FINEWOOD COMPANY LIMITED,   )
FAR EAST AMERICAN, INC. AND              )
LIBERTY WOODS INTERNATIONAL, INC.,    )
                                                    )
                      Plaintiffs,                  )
                                                    )
               and                                 )
                                                    )
INTERGLOBAL FOREST LLC,                     )
                                                    )
                      Consolidated Plaintiff,    )        Consol. Ct. No. 22-00049
                                                    )
               v.                                    )
                                                    )        **PUBLIC VERSION**
UNITED STATES,                               )
                                                    )
                      Defendant,                  )
                                                    )
               and                                 )
                                                    )
COALITION IN FAIR TRADE IN               )
HARDWOOD PLYWOOD,                          )
                                                    )
                      Defendant-Intervenor.     )
———————————————————————)

**DEFENDANT'S RESPONSE TO PLAINTIFFS' RULE 56.2 MOTION
FOR JUDGMENT UPON THE AGENCY RECORD**

Pursuant to Rule 56.2 of the Rules of the United States Court of International Trade,

defendant, the United States, respectfully submits this response in opposition to the motion for

judgment upon the agency record submitted by plaintiffs Vietnam Finewood Company Limited

(Finewood), Far East American, Inc., Liberty Woods International, Inc. (collectively, plaintiffs,)

and InterGlobal Forest, LLC (InterGlobal). Plaintiffs and InterGlobal challenge a final scope

ruling by the Department of Commerce finding that two-ply panels are covered by the scope of

the antidumping duty (AD) and countervailing duty (CVD) orders on certain hardwood plywood

products (hardwood plywood) from the People's Republic of China.  Plaintiffs also challenge Commerce's determination that hardwood plywood that was assembled in the Socialist Republic of Vietnam (Vietnam) using two-ply panels imported from China are Chinese country of origin. As demonstrated below, Commerce's determination that Finewood's hardwood plywood is within the scope of the orders is supported by substantial evidence and otherwise in accordance with law.  Accordingly, the United States respectfully requests that this Court sustain Commerce's scope ruling and deny plaintiffs' and InterGlobal's motions.

## STATEMENT PURSUANT TO RULE 56.2

### I.     Administrative Determination Under Review

The administrative determination under review is *Antidumping and Countervailing Duty Orders on Certain Hardwood Plywood from the People's Republic of China: Enforcement and Protect Act (EAPA) Investigation No. 7252: Final Scope Ruling* (Dep't of Commerce Jan. 21, 2022) (Final Scope Ruling),  P.R. 141, C.R. 134.[1]

### II.     Issues Presented for Review

1.   Whether Commerce's determination that two-ply panels fall within the general scope language of the antidumping and countervailing duty orders on hardwood plywood from China is supported by substantial evidence and in accordance with law.

2.   Whether Commerce's determination that Finewood's hardwood plywood, which was assembled in Vietnam using two-ply panels imported from China, are Chinese country of origin because the two-ply panels are not substantially transformed by the processing occurring

---

[1] For ease of reference, the record citations refer to documents filed under the AD case number, A-570-051, although duplicate documents were filed under the CVD case number, C-570-052, and both records were filed with the Court.  *See* ECF No. 23.

in Vietnam, is supported by substantial evidence and in accordance with law.

3.   Whether Commerce's rejection of portions of Finewood's administrative case brief for containing untimely new factual information was in accordance with law.

4.   Whether InterGlobal properly exhausted its administrative remedies and whether it waived its arguments with regards to its administrative case and rebuttal briefs.

## STATEMENT OF FACTS

### I.   The Scope Of The Orders

In January 2018, Commerce issued antidumping and countervailing duty orders on hardwood plywood from China.  *See Certain Hardwood Plywood Products from the People's Republic of China: Amended Final Determination of Sales at Less Than Fair Value, and Antidumping Duty Order*, 83 Fed. Reg. 504 (Dep't of Commerce January 4, 2018); and *Certain Hardwood Plywood Products from the People's Republic of China: Countervailing Duty Order*, 83 Fed. Reg. 513 (Dep't of Commerce January 4, 2018) (collectively, the Orders). The scope of the Orders includes, in relevant part:

> The merchandise subject to these Orders is hardwood and decorative plywood, and certain veneered panels as described below.  For purposes of this proceeding, hardwood and decorative plywood is defined as a generally flat, multilayered plywood or other veneered panel, consisting of two or more layers or plies of wood veneers and a core, with the face and/or back veneer made of non-coniferous wood (hardwood) or bamboo.  The veneers, along with the core may be glued or otherwise bonded together. Hardwood and decorative plywood may include products that meet the American National Standard for Hardwood and Decorative Plywood, ANSI/HPVA HP- 1-2016 (including any revisions to that standard).  For purposes of these Orders a "veneer" is a slice of wood regardless of thickness which is cut, sliced or sawed from a log, bolt, or flitch.

*Id.*

The Orders apply to hardwood plywood from China that meets the physical description of the scope even if it is exported to a third country for additional processing, so long as the hardwood plywood continues to meet the physical description after third country processing:

> Subject merchandise also includes hardwood and decorative plywood that has been further processed in a third country, including but not limited to trimming, cutting, notching, punching, drilling, or any other processing that would not otherwise remove the merchandise from the scope of the Orders if performed in the country of manufacture of the in-scope product.

*Id*.

## II.   The Scope Proceeding

On September 16, 2019, U.S. Customs and Border Protection submitted a "covered merchandise referral" to Commerce requesting that Commerce issue a determination as to whether hardwood plywood produced by Finewood from two-ply panels of Chinese origin, which are incorporated into the plywood cores and further processed in Vietnam to include the face and back veneers of non-coniferous wood, are within the scope of the Orders.  On January 17, 2020, Commerce initiated a formal scope inquiry.  *See Certain Hardwood Plywood from the People's Republic of China: Notice of Covered Merchandise Referral and Initiation of Scope Inquiry*, 85 Fed. Reg. 3,024 (Dep't of Commerce Jan. 17, 2020).

Commerce released its preliminary scope ruling on August 26, 2021.  Preliminary Scope Ruling, P.R. 110, C.R. 128.  Commerce preliminarily determined that Finewood's hardwood plywood made with Chinese two-ply panels are within the scope of the Orders. As a part of its scope analysis, Commerce determined that language regarding "certain veneered panels" in the scope of the Orders was ambiguous.  Preliminary Scope Ruling at 11-12. Commerce thus examined the (k)(1) sources, namely the changes in the scope from the petition to the initiation, as well as prior scope determinations from the investigation, to define the

ambiguous language "certain veneered panel" as a veneer of hardwood affixed to a base, usually

of inferior wood, by gluing under pressure.  *Id*. at 14.  Commerce determined that Finewood's

two-ply panels, which it imported from China, were subject to the scope of the Orders as certain

veneered panel.  Commerce further performed a substantial transformation analysis to determine

the country of origin of Finewood's plywood that was finished in Vietnam using the Chinese

two-ply panels.  *Id*. at 15-31. Commerce found that all five factors of this analysis supported that

the hardwood plywood was not substantially transformed by the processing in Vietnam, and thus

subject to the Orders.

Commerce set the deadline for parties to comment on the Preliminary Scope Ruling,

allowing parties 20 days to file comments and 10 days thereafter to file rebuttal comments.  *Id*.

At the request of Finewood, Commerce granted an extension for parties to file comments by 15

days.  Extension Memo, P.R. 122.  Finewood filed its affirmative comments on September 30,

2021.  Finewood Comments, C.R. 131.  However, on December 10, 2021, Commerce rejected

Finewood's comments for including nine references to untimely filed new factual information in

its submission, and directed Finewood to indicate where on the record the information was

already cited or to redact that information from the submission.  Finewood Rejection Letter, P.R.

136.  On December 14, 2021, Finewood re-filed its initial comments with seven redactions,

having explained that two of the requested redactions included information that was on the

record.  Finewood Resubmitted Comments, C.R. 134.  Petitioner filed its rebuttal comments in

support of Commerce's Preliminary Scope Ruling on October, 13, 2021.  Petitioner Rebuttal

Comments, C.R. 133.

InterGlobal never properly filed its initial comments with Commerce.  P.R. 127-131.  As

Commerce explained in its letter, InterGlobal's comments were untimely and included a number

of procedural errors.  Commerce Letter Re: IGF Comments, P.R. 126.  19 C.F.R § 351.303(b)(1)

states that "{a}n electronically filed document must be received successfully in its entirety by the

Department's electronic records system, ACCESS, by 5 p.m. Eastern Time on the due date."

However, on September 30, 2021, two parts of InterGlobal's comments on the Preliminary

Scope Ruling were submitted at 4:49 p.m. and 4:50 p.m., and two parts were submitted after the

deadline, at 5:04 p.m. and 5:05 p.m.  Attachment 1, P.R. 129.  Thus, Commerce determined that

InterGlobal's comments on the Preliminary Scope Ruling were not submitted in their entirety by

the due date, as required by the regulations, and contained numerous other procedural

deficiencies.  As a result of the numerous procedural errors, including conflicting statements on

the proprietary or public nature of the documents, incorrect security classification, and a failure

to state whether the documents may or may not be released under the administrative protective

order, all of InterGlobal's submissions were rejected by the staff of Commerce's Central Records

Unit.  Attachment II, P.R. 130.  Consequently, none of InterGlobal's submissions were ever

approved on the record of these inquiries.

Pursuant to 19 C.F.R. § 351.302(d) and 19 C.F.R. § 351.104(a)(2)(iii), Commerce

informed InterGlobal that its submissions were untimely, and the absence of a timely extension

request, or demonstration that such a request was not possible because of extraordinary

circumstances, foreclosed  the possibility of allowing InterGlobal to submit its comments on the

Preliminary Scope Ruling.  Commerce Letter Re: IGF Comments, P.R. 126.  Because

InterGlobal did not properly file its submissions and, consequently, they were never placed on

the records of these inquiries, there was nothing for Commerce to reject and remove from the

records.  *Id*.  Commerce explained that should InterGlobal wish to submit rebuttal comments, it

may do so by the established deadline and in conformance with Commerce's requirements.

On October 11, 2022, InterGlobal filed its rebuttal comments. InterGlobal Rebuttal Comments, P.R.127. However, because its rebuttal comments contained untimely affirmative argument, and did not rebut any other arguments on the record, Commerce rejected the submission. Commerce Rejection of InterGlobal Rebuttal Comments, P.R. 134.

On January 21, 2022, Commerce issued its final scope ruling, in which it determined that Finewood's hardwood plywood made with Chinese two-ply panels are within the scope of the Orders covering hardwood plywood from China. Final Scope Ruling at 44, P.R. 141, C.R. 135. Commerce continued to find that language regarding "certain veneered panels" in the scope of the Orders was ambiguous. Final Scope Ruling at 9-11. Based on the (k)(1) sources, Commerce defined "certain veneered panel" as a veneer of hardwood affixed to a base, usually of inferior wood, by gluing under pressure. *Id.* at 12. Commerce determined that Finewood's two-ply panels, which it imported from China, were subject to the scope as certain veneered panel. Commerce further performed a substantial transformation analysis to determine the country of origin of Finewood's hardwood plywood that was finished in Vietnam using the Chinese two-ply panels. *Id.* at 21-43. Commerce found that all five factors of this analysis supported that the hardwood plywood was not substantially transformed by the processing in Vietnam, and thus subject to the Orders.

## SUMMARY OF THE ARGUMENT

Commerce's determination that Finewood's hardwood plywood made with Chinese two-ply panels are within the scope of the Orders is supported by substantial evidence and in accordance with law. As a part of its scope analysis, Commerce determined that language regarding "certain veneered panels" in the scope of the Orders was ambiguous. Based on the (k)(1) sources, Commerce defined "certain veneered panel" as a veneer of hardwood affixed to a

PUBLIC VERSION

base, usually of inferior wood, by gluing under pressure.  Commerce determined that Finewood's two-ply panels, which it imported from China, were subject to the scope as certain veneered panel.  Commerce further performed a substantial transformation analysis to determine the country of origin of Finewood's hardwood plywood that was finished in Vietnam using the Chinese two-ply panels.

Commerce did not expand the scope of the Orders.  Rather, it filled a statutory gap by applying its substantial transformation analysis to determine whether the finished hardwood plywood remained subject to the Orders.  Commerce's substantial transformation analysis is supported by substantial evidence.  All five factors of this analysis support that the hardwood plywood is not substantially transformed by the processing in Vietnam, and thus remains subject to the Orders.  The Chinese veneered panels were not transformed into a different class or kind of merchandise by the finishing operations in Vietnam, which themselves were not sophisticated.  The essential components and end-use of the hardwood plywood was not transformed as a result of the finishing.  And the value added from finishing and the level of investment in finishing operations in Vietnam were not significant.

Finally, Commerce did not abuse its discretion by enforcing its regulatory deadlines concerning untimely new factual information and requirements for comments and rebuttal comments.  Finewood failed to show there were extraordinary circumstances that prevented it from filing its factual information by the applicable deadline.  Similarly, Commerce acted within its discretion by rejecting InterGlobal's rebuttal case brief for containing untimely affirmative argument.  InterGlobal has not exhausted its administrative remedies with regard to certain arguments advanced before this Court.

## ARGUMENT

### I.    Standard Of Review

This Court "must uphold a scope ruling unless {it finds the ruling} to be 'unsupported by substantial evidence on the record, or otherwise not in accordance with law.'"  *Sango Int'l L.P. v. United States,* 484 F.3d 1371, 1378 (Fed. Cir. 2007) (quoting 19 U.S.C. § 1516a(b)(1)(B)). "'Substantial evidence' means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Crawfish Processors Alliance v. United States,* 483 F.3d 1358, 1361 (Fed. Cir. 2007) (quoting *Consol. Edison v. NLRB,* 305 U.S. 197, 229 (1938)); *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 477 (1951) ("{s}ubstantial evidence is more than a mere scintilla").

Crucially, "{e}ven if it is possible to draw two inconsistent conclusions from evidence in the record, such a possibility does not prevent Commerce's determination from being supported by substantial evidence."  *Am. Silicon Techs. v. United States,* 261 F.3d 1371, 1376 (Fed. Cir. 2001) (citing *Fujitsu Gen. Ltd. v. United States,* 88 F.3d 1034, 1044 (Fed. Cir. 1996)).  "{T}he Court may not substitute its judgment for that of the {agency} when the choice is between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it *de novo.*"  *Goldlink Indus. Co. v. United States,* 431 F. Supp. 2d 1323, 1326 (Ct. Int'l Trade 2006) (citations and internal quotations omitted).

The Court grants "significant deference to Commerce's interpretation of a scope order." *Mid Continent Nail Corp. v. United States,* 725 F.3d 1295, 1300 (Fed. Cir. 2013) (citing *Global Commodity Group LLC v. United States,* 709 F.3d 1134, 1138 (Fed. Cir. 2013)).  This is because a scope ruling involves "a highly fact-intensive and case-specific determination," *King Supply Co. LLC v. United States,* 674 F.3d 1343, 1345 (Fed. Cir. 2012), making it "particularly within the expertise of {Commerce}."  *Sandvik Steel Co. v. United States,* 164 F.3d 596, 600 (Fed. Cir.

1998).[2]

## II.   Commerce Reasonably Determined That Two-Ply Panels Were Subject To <u>The Scope As Certain Veneered Panels</u>

Commerce reasonably determined that the plain language of the scope of the Orders was ambiguous with regard to "certain veneered panels", and that the descriptions of hardwood plywood and certain veneered panels in the sources under 19 C.F.R. § 351.225(k)(1) – that is, the petition, findings from the investigation, and the ITC report from the original investigations – are dispositive as to whether Finewood's plywood made with Chinese two-ply panels are subject to the Orders.  In making these determinations, Commerce supported its conclusions with substantial evidence.

### A.   <u>Legal Framework For Scope Rulings</u>

Commerce is often called upon to determine whether a certain product is included within the scope of an antidumping or countervailing duty order because it necessarily writes scope language in general terms. *See* 19 C.F.R. § 351.225(a).  Commerce's determinations concerning a particular product are made in accordance with its regulations.  Pursuant to 19 C.F.R. § 351.225(d), Commerce may make a scope ruling based on the information in the scope request and the sources set forth in 19 C.F.R. § 351.225(k)(1).  If Commerce cannot make a determination based upon the scope ruling request and the (k)(1) sources, Commerce will initiate a formal scope inquiry. 19 C.F.R. § 351.225(e).  Commerce is not required to initiate a formal scope inquiry when Commerce determines that a product is within the scope of an order pursuant to the (k)(1) sources.

---

[2] Plaintiffs repeatedly mention the "arbitrary and capricious" standard in their brief.  *See, e.g.*, Plaintiffs Br. at 3, 10.  However, that is not the right standard of review the Court should apply.

The first step in considering whether a product is within the scope of an order is to consider the language of the order itself. *Arcelormittal Stainless Belgium N.V. v. United States,* 694 F.3d 82, 87 (Fed. Cir. 2012). Commerce may decide that the language of the order unambiguously applies to the product at issue, *id.*, or it may additionally consider the descriptions of the merchandise contained in the (k)(1) sources. *Tak Fat Trading Co. v. United States,* 396 F.3d 1378, 1382-83 (Fed. Cir. 2005). The (k)(1) sources are the petition, the investigation, and the determinations of Commerce (including prior scope determinations) and the ITC. 19 C.F.R. § 351.225(k)(1). If Commerce determines that the descriptions of the merchandise contained in the (k)(1) sources are dispositive, Commerce issues a final scope ruling as to whether the product falls within the scope of the order. *See* 19 C.F.R. § 351.225(d); *see also Tak Fat Trading,* 396 F.3d at 1382.

Only when the (k)(1) sources are not dispositive will Commerce consider the five criteria set forth in 19 C.F.R. § 351.225(k)(2): (1) the physical characteristics of the product; (2) the expectations of the ultimate purchasers; (3) the ultimate use of the product; (4) the channels of trade in which the product is sold; and (5) the manner in which the product is advertised and displayed. 19 C.F.R. § 351.225(k)(2).

Pursuant to 19 C.F.R. § 351.225(d), Commerce may make a scope ruling based on the order, information in the scope request and the sources set forth in 19 C.F.R. § 351.225(k)(1). If Commerce cannot make a determination based upon the order, scope ruling request and the (k)(1) sources, Commerce initiates a formal scope inquiry. 19 C.F.R. § 351.225(e). Commerce is not required to initiate a formal scope inquiry when Commerce determines that a product is within the scope of an order pursuant to the (k)(1) sources. *Huayin Foreign Trade Corp. v. United States*, 322 F.3d 1369, 1378-79 (Fed. Cir. 2003).

### B.   Commerce Reasonably Found That The Scope Was Ambiguous

Commerce reasonably found the scope ambiguous as to the phrase "certain veneered panels," and determined that the plain language of the Orders was not dispositive in determining whether Finewood's two-ply panels were included in the scope of the Orders.  Final Scope Ruling at 10-11.  Specifically, Commerce determined that the first sentence of the scope indicates that the Orders cover two general types of merchandise:  (1) hardwood and decorative plywood, and (2) certain veneered panels.  Preliminary Scope Ruling at 12; Final Scope Ruling at 11.  The scope defines "hardwood and decorative plywood" as "a generally flat, multilayered plywood or other veneered panel, consisting of two or more layers or plies of wood veneers and a core, with the face and/or back veneer made of non-coniferous wood (hardwood) or bamboo." However, the scope does not provide a definition for "certain veneered panels."  Preliminary Scope Ruling at 11.  Therefore, Commerce reasonably determined that the ambiguity of the phrase "certain veneered panels" in the scope precluded Commerce from making a determination as to whether Finewood's two-ply panels are subject to the Orders based solely on the plain language of the scope.  Commerce explained that the scope of the Orders was ambiguous, not dispositive, and thus was susceptible to interpretation.

Plaintiffs argue that the plain language of the Orders excludes two-ply panels from the scope.  Plaintiffs Br. at 11-13; InterGlobal Br. at 11-12.  Specifically, plaintiffs argue that "the scope definition unambiguously states in the very first sentence that the 'certain veneered panels' that are in the scope of the *Hardwood Plywood Orders* are the veneered panels 'described below.'"  Plaintiffs Br. at 11.  And, according to plaintiffs, veneered panels are "described immediately thereafter" as "consisting of two or more layers or plies of wood and a core." Plaintiffs Br. at 11-12.  Plaintiffs are wrong.

As Commerce explained, although the first sentence of the scope of the Orders identifies subject merchandise as "hardwood and decorative plywood, and certain veneered panels," the description in the second sentence of the scope only defines "hardwood and decorative plywood":

> The merchandise subject to these Orders *is hardwood and decorative plywood, and certain veneered panels* as described below. For purposes of this proceeding, *hardwood and decorative plywood is defined* as a generally flat, multilayered plywood or other veneered panel, consisting of two or more layers or plies of wood veneers and a core, with the face and/or back veneer made of non-coniferous wood (hardwood) or bamboo. The veneers, along with the core may be glued or otherwise bonded together.

Orders, 83 Fed. Reg. 504 and 83 Fed. Reg. 513 (emphasis added).

The definition does not include certain veneered panels as plaintiffs claim. Rather, as Commerce explained, if the definition of "hardwood and decorative plywood" were intended to also define "certain veneered panels," the express inclusion of "certain veneered panels" in the first sentence of the scope, which was not in the original language in the petition, would be unnecessary. Final Scope Ruling at 11. Instead, a plain reading of the scope indicates that the Orders cover two general types of merchandise: (1) hardwood and decorative plywood; and (2) certain veneered panels. And the definition in the second sentence applies exclusively to "hardwood and decorative plywood." Neither a definition nor an example is provided for the phrase "certain veneered panels." Orders, 83 Fed. Reg. 504 and 83 Fed. Reg. 513. Thus, Commerce reasonably concluded "it is unclear whether all in-scope merchandise must be made of a minimum of three layers because the scope lacks a complete definition of the products covered." Accordingly, Commerce further considered the 19 C.F.R. § 351.225(k)(1) factors to determine whether Finewood's two-ply panels from China are covered by the scope of the Orders.

13

C.      Commerce's Analysis Of The 19 C.F.R. § 351.225(k)(1) Factors Is Based
        On Substantial Evidence And In Accordance With Law

Based on its analysis of the 19 C.F.R. § 351.225(k)(1) sources – the petition, the

investigation, and the ITC Report from the investigation – Commerce reasonably determined that

Finewood's two-ply panels meet the definition of certain veneered panels and are, thus, covered

by the scope of the Orders.  Commerce's determination is supported by substantial evidence.

First, Commerce examined the petition of the investigation and the revisions to the scope

language prior to the initiation of the investigations.  Final Scope Ruling at 14-15.  In the pre-

initiation phase of these investigations, the scope provided in the petitions included a reference to

"veneer core platforms," which it defined as "two or more wood veneers that form the core of an

otherwise completed hardwood plywood product (i.e., a hardwood plywood product to which the

outer (face and back) veneers have not yet been affixed)."  *See* Preliminary Scope Ruling at 13

(citing Petition at 7, P.R. 91).  As Commerce noted, this definition of veneer core platforms in

the petitions clearly described two-ply panels.  Final Scope Ruling at 15.  The scope was

subsequently revised prior to initiation to remove the reference to "veneer core platforms" and to

add language to the first sentence of the scope indicating that the covered merchandise is

"hardwood and decorative plywood, and certain veneered panels as described below."  *See*

*Certain Hardwood Plywood Products From the Peoples Republic of China: Initiation of Less-*

*Than- Fair Value Investigation*, 81 Fed. Reg. 91,125, at 91,130 (Dep't of Commerce Dec. 8,

2016) (*Initiation Notice*).

Commerce next reviewed references to "certain veneered panels" during the

investigation.  Certain parties argued for the removal of the phrase "certain veneered panels"

from the scope during the investigations, citing possible confusion because there is no specific

description of the physical characteristics or uses that define "certain veneered panels."  LTFV

14

Preliminary Scope Decision at 3, P.R. 102.  Commerce declined to remove this language and explained that the phrase referred to "a veneer of hardwood which has been affixed to a base (including a core) of inferior wood or a non-wood product."  LTFV Preliminary Scope Decision at 3.  As a part of this analysis in the investigation, Commerce examined the World Customs Organization's explanatory notes to HTS subheading 4412, entitled "Plywood, veneered panels and similar laminated wood," which defines veneered panels as "panels consisting of a thin veneer of wood affixed to a base, usually of inferior wood, by gluing under pressure."  *See id*.; *see also* World Customs Organization Explanatory Notes to HTS subheading 4412, P.R. 92. Commerce also considered language from the ITC Report which explained that a plywood core can be composed entirely of veneers or other types of wood material, for example MDF and oriented strand board.  Preliminary Scope Ruling at 14 (citing excerpts of ITC Report, P.R. 91).

    In examining these sources, Commerce found that the investigation Preliminary Scope Decision explicitly defines "certain veneered panels" as a product with a minimum of two plies. Final Scope Ruling at 20 (citing LTFV Preliminary Scope Decision at Comment 4, P.R. 102). "Moreover, although Commerce subsequently issued an Additional Preliminary Scope Memorandum, a Post-Preliminary Scope Memorandum, and a Final Scope Decision Memorandum, no parties commented further or raised any objections concerning the preliminary decision to define veneered panels as a product with a minimum of two plies or Commerce's decision that such products are covered by the scope of the Orders."  Final Scope Ruling at 20 (citing *Certain Hardwood Plywood Products from the People's Republic of China: Final Determination of Sales at Less Than Fair Value, and Final Affirmative Determination of Critical Circumstances, in Part*, 82 Fed. Reg. 53,460 (Dep't of Commerce Nov. 16, 2017) (LTFV Final Determination) and accompanying IDM at 7).

Accordingly, based on the foregoing (k)(1) sources, Commerce defined "certain veneered panels" as "a veneer of hardwood affixed to a base, usually of inferior wood, by gluing under pressure." Final Scope Ruling at 16. The two-ply panels that Finewood imported from China consisted of two layers of [    ] core veneers already glued together, and range from [      ] mm in thickness. Preliminary Scope Ruling at 14, C.R. 28. Commerce determined that Finewood's two-ply panels meet the definition of "certain veneered panels," and were covered by the scope of the Orders when they entered Vietnam for further processing into hardwood plywood. Preliminary Scope Ruling at 14; Final Scope Ruling at 11. This determination is based on substantial evidence and in accordance with law, and plaintiffs' arguments to the contrary are without merit.

Plaintiffs argue that Commerce erred in its (k)(1) analysis and in its determination that two-ply panels are included in the scope. Specifically, plaintiffs contend that the initial petition and the scope language adopted prior to the initiation of the investigations demonstrates petitioner only intended to cover plywood products composed of three plies or more, and that Commerce improperly relied on the Preliminary Scope Determination from the investigation. Plaintiffs Br. 14-19; InterGlobal Br. at 17-19. This argument ignores the evidence Commerce examined and asks the court to re-weigh the evidence before Commerce, which it cannot do under the substantial evidence standard. *See Novosteel SA,* 128 F. Supp. 2d 720, 730 (Ct. Int'l Trade 2001) ("declin{ing} to re-weigh the record evidence as Plaintiff urges" because "{u}nder the applicable substantial evidence standard of review, the agency rather than the reviewing court weighs the evidence and determines its credibility"); *accord Wirth Ltd. v. United States,* 5 F. Supp. 2d 968, 981 (Ct. In'l Trade 1998).

This argument also ignores that the petition references "veneer core platforms" which

are defined as "two or more wood veneers that form the core of an otherwise completed hardwood plywood product (*i.e.*, a hardwood plywood product to which the outer (face and back) veneers have not yet been affixed)," clearly describing two-ply panels.  Final Scope Ruling at 15.  Moreover, plaintiffs' arguments rely on an unsupported presumption that Commerce and the petitioner considered, and rejected, the idea that products, such as "veneer core platforms," composed of only two plies of wood should be included in the scope of the hardwood plywood investigations.  Plaintiffs Br. at 15-19.  As Commerce explained, "the removal of the phrase veneer core platform did not change the scope to remove two-ply panels," a fact that was confirmed: (1) by inclusion at initiation of the term "certain veneered panels" in the scope of the investigations; and (2) later by Commerce's express decision in the LTFV Preliminary Scope Decision to decline to remove the reference to "certain veneered panels" from the scope.  Final Scope  Ruling at 15.

Plaintiffs further argue that Commerce did not consider two-ply panel as subject to the investigation, and never intended the scope to cover two-ply panels.  Plaintiffs Br. at 19-21; InterGlobal Br. at 17-19.  Specifically, plaintiffs argue that Commerce "never required respondents in the AD investigation to identify two-ply panels in its initial hardwood plywood product characteristics," as evidenced by Commerce's model-matching methodology and the instructions in the initial and supplemental questionnaires.  Plaintiffs Br. at 19-20.  However, as Commerce explained, "Commerce's Product Characteristics Memorandum did not instruct respondents not to report two-ply panels; instead, it directed respondents to report the number of plies of the product, with the option to create their own two-digit codes (*e.g.*, respondents could have reported '02' for a two-ply product) for any product with a number of plies not listed."  Final Scope Ruling at 19 (*citing* Product Characteristics Memo, P.R. 107).

Moreover, and contrary to plaintiffs' implication, the number of plies was not a physical characteristic used to define the reported products (also known as control numbers or "CONNUMs"); instead, it was merely an "additional product characteristic" not included in the CONNUM and respondents were instructed to contact the officials in charge if they had any concerns with regard to how to report data in this informational field.  Final Scope Ruling at 19 (*citing* Product Characteristics Memo, P.R. 107 (stating "The characteristics in the following field number 3.13 should be reported for sale identification and verification purposes.  Do not use any of these identifiers for any control number, sale matching or cost reporting purpose. Contact the "Official(s) in Charge" immediately if you have any questions in this area")). However, as Commerce explained, no respondents contacted Commerce to inquire as to whether, or how, they should report two-ply products and, thus, no further guidance was needed.

Additionally, plaintiffs argue that, because Commerce did not issue any supplemental questionnaires addressing two-ply panels or address the issue in any of the scope memoranda, Commerce could not have considered two-ply panels to be covered merchandise.  Plaintiffs Br. at 20.  First, looking to the information submitted by Finewood from the first administrative review of the AD order, Commerce did not question the respondent in that review regarding two-ply panels because it reported that all its sales to the United States were of subject merchandise. Final Scope Ruling at 20.  Thus, there was no need to issue supplemental questionnaires to elicit information about merchandise purported to be non-subject because the respondent did not report the existence of any sales of such merchandise during the period of review.  Despite its arguments that Commerce did not consider two-ply panels as subject to the Orders, plaintiffs ignore that two-ply panels are covered by the LTFV Preliminary Scope Decision, which explicitly defines "certain veneered panels" as a product with a minimum of two plies.  Final

18

Scope Ruling at 20.  And no party commented further or raised any objections concerning the preliminary decision to define veneered panels as a product with a minimum of two plies or Commerce's decision that such those products are covered by the scope of the Orders.  *LTFV Determination*, 82 Fed. Reg. 53,460 and IDM at 7.  Thus, contrary to plaintiffs' assertion, the fact that Commerce did not explicitly inquire about two-ply products does not support the conclusion that Commerce considered such products to be outside the scope of the Orders.

Finally, plaintiffs argue that the ITC did not investigate two-ply panels, and specifically that the ITC did not discuss two-ply panels in its report, and thus Commerce ignored the ITC's finding in its analysis of the (k)(1) factors.  Plaintiffs Br. at 21-24.  Although the ITC Final Report does not directly discuss such products, plaintiffs' conclusion that the ITC made no injury finding with respect to two-ply panels, is not supported by record evidence.  To the contrary, "the term 'certain veneered panels' was included in the release documents transmitted to the ITC by Commerce when the underlying investigation was initiated."  Final Scope Ruling at 13.  As Commerce noted, the term "certain veneered panels" was part of the scope of the hardwood plywood investigations, which the ITC specifically considered during its injury determination. *Id.*  Indeed, "the ITC stated that its definition of the domestic like product is coextensive with the scope of the investigations, meaning that the ITC did, in fact, include 'certain veneered panels' in its injury investigation."  *Id.*  Accordingly, "{g}iven that the scope expressly includes 'certain veneered panels,' and that the ITC referenced the scope on multiple occasions, it would be unrealistic to conclude that the ITC did not consider such merchandise in its investigation."  *Id.*

Although plaintiffs argue that Commerce disregarded language in the ITC Final Report regarding the three-ply requirement and did not explain how the core composition was relevant to its scope analysis, Commerce did not ignore the ITC's reference to a three-ply product.

Plaintiffs Br. at 21-23.  In the Preliminary Scope Ruling, Commerce explained that the ITC Final

Report stated that a plywood core can be entirely composed of veneers to illustrate that a two-ply

panel could also be considered a core, contrary to Finewood's claims that such panels cannot

function as plywood cores.  Preliminary Scope Ruling at 13-14.  The three-ply nature of

"hardwood plywood" that Finewood claims Commerce disregarded was irrelevant to the

discussion of certain veneered panels because the two products are distinct and separate, as

evidenced by their individual identification in the first sentence of the scope and the different

definitions assigned to each product in the explanatory notes of the HTSUS.  Final Scope Ruling

at 13 (citing World Customs Organization (WCO) explanatory notes to HTS subheading 4412).

Therefore, Commerce reasonably determined that the ITC's scope of the investigation was

coextensive with the scope of Commerce's investigation, which included certain veneered panel,

and was devoid of any express exclusion of such products from the scope of its investigation.

Final Scope Ruling at 13-14.

### III. Commerce Reasonably Determined That Finewood's Plywood Made With Chinese Two-Ply Panels Was Not Substantially Transformed By The Processing in Vietnam, And Thus Remained Chinese Country Of Origin And Subject To The Orders

Commerce correctly determined that Finewood's plywood manufactured using Chinese

two-ply panels and finished in Vietnam is within the scope of the Orders.  Plaintiffs argue that

the determination is not supported by substantial evidence, and that Commerce did not lawfully

apply its substantial transformation criteria.  Plaintiffs Br. at 28-47; InterGlobal Br. at 23-44.  As

demonstrated below, however, Commerce's findings were consistent with its substantial

transformation practice and are supported by substantial evidence.

#### A. Legal Framework for Substantial Transformation Analysis

Because AD and CVD orders apply to merchandise from particular countries,

determining the country where the merchandise is produced is fundamental to proper

administration and enforcement of the AD and CVD statute.  The scope of an AD or CVD order

is limited to merchandise that originates in the country covered by the orders.  It is well-

established that the scope of an order is "defined by the type of merchandise and the country-of-

origin" and "therefore the determination of where the merchandise is produced or manufactured

is a fundamental step in the administration of the antidumping laws." *Advanced Tech &*

*Materials Co., Ltd. v. United States*, 35 Ct. Int'l Trade 1380, 1384 (2011); *see also Ugine and*

*ALZ Belgium, N.V. v. United States*, 517 F. Supp. 2d 1333, 1345 (Ct. Int'l Trade 2007) (Ugine).

In determining the country of origin of a product, Commerce conducts a substantial

transformation analysis.  As upheld by the Federal Circuit, "substantial transformation occurs

where, 'as a result of manufacturing or processing steps ... {,} the {product} loses its identity and

is transformed into a new product having a new name, character and use.'" *Bell Supply*

*Company LLC v. United States*, 888 F.3d 1228 (Fed. Circ. 2018) (*citing Bestfoods v. United*

*States*, 165 F.3d 1371, 1373 (Fed. Cir. 1999)).  The Federal Circuit has upheld Commerce's

"substantial transformation" analysis as a means to conduct its country of origin analysis.  *See*

*Bell Supply*, 888 F.3d at 1229 (*citing E.I.DuPont De Nemours & Company v. United States*, 8 F.

Supp. 854, 858 (Ct. Int'l Trade 1993) (noting that "in determining if merchandise exported from

an intermediate country is covered by an antidumping order, Commerce identified the country of

origin by considering whether the essential component is substantially transformed in the country

of exportation").

This court has stated, and the Federal Circuit has affirmed, that "{the} 'substantial

transformation' rule provides a yardstick for determining whether the processes performed on

merchandise in a country are of such significance as to require that the resulting merchandise be

considered the product of the country in which the transformation occurred."  *See Bell Supply*,

888 F.3d at 1229 (*citing E.I.DuPont De Nemours & Company v. United States*, 8 F. Supp. 854,

858 (Ct. Int'l Trade 1993)).

 With respect to subject merchandise that is further processed in a third country prior to

exportation to the United States, to determine the country of origin of such merchandise,

Commerce normally considers the following criteria when conducting a substantial

transformation analysis: (1) whether, as a result of the manufacturing or processing, the product

loses its identity and is transformed into a new product having a new name, character, and use;

and (2) whether through that transformation, the new article becomes a product of the country in

which it was processed or manufactured.  Final Scope Ruling at 8.

 To determine whether there has been a substantial transformation, Commerce looks to

factors such as (1) the class or kind of merchandise; (2) the product properties, essential

component of the merchandise, and intended end-use; (3) the nature and sophistication of

processing in the country of exportation; (4) the cost of production/value added; and (5) level of

investment.  *Bell Supply*, 888 F.3d 1228-1229.

### B. <u>Commerce Lawfully Conducted Its Substantial Transformation Analysis</u>

 Because the covered merchandise referral addressed finished plywood products

assembled in Vietnam that contain two-ply panels imported from China, Commerce used a

substantial transformation analysis to determine the country of origin of the finished plywood

products exported by Finewood to the United States.  Final Scope Ruling at 8.  Specifically,

Commerce found that none of the five factors in the substantial transformation analysis

weighed in favor of finding that the subject merchandise used by Finewood, using Chinese-

origin two-ply panels, are substantially transformed when used to produce hardwood

plywood in Vietnam.  Commerce therefore determined that the country of origin of

Finewood's hardwood plywood is China, and subject to the Orders.  *Final Scope Ruling* 44.

Plaintiffs' contend that because Finewood substantially transformed Chinese two-ply panels

into hardwood plywood in Vietnam, the proper country of origin is Vietnam.  Plaintiffs Br.

at 28.  However, as discussed below, Commerce's determination is based on substantial

evidence, including questionnaire responses by Finewood, information from the first

administrative review of the AD Order placed on the record by Finewood relating to mandatory

Chinese respondent Linyi Chengen's production process, and the ITC Report from the

investigation.

### 1.    Class Or Kind

First, relying on *Bell Supply*, plaintiffs argue that the class or kind criterion should be

given no weight in Commerce's analysis.  Plaintiffs Br. at 29-30.  Plaintiffs' reliance on *Bell*

*Supply* is misplaced.  Most recently, the Federal Circuit acknowledged Commerce's continued

use of this test, in which it recognized the elements examined in the substantial transformation

test included the class or kind of merchandise factor.  *See Bell Supply*, 888 F.3d at 1229.  In

Commerce's remand redetermination subsequent to the Federal Circuit's decision in Bell Supply,

888 F.3d 1228, Commerce continued to find the "class or kind" criterion of the substantial

transformation analysis to be relevant, and weighed in favor of its finding that the goods at issue

were not substantially transformed by further processing in a country not covered by the order.

*Bell Supply Co., LLC v. United States*, 348 F. Supp. 3d 1281 (Ct. Int'l Trade 2018).  Although

the Court found that this "factor neither detracts from nor supports Commerce's totality-of-the-

circumstances analysis", it nonetheless sustained Commerce's substantial transformation

determination.  *See Bell Supply Co., LLC v. United States*, 393 F. Supp. 3d 1229, 1244 (Ct. Int'l Trade 2019).

Here, Commerce reasonably explained:  "Commerce continues to consider the class or kind of merchandise factor in its substantial transformation analysis because it serves, generally, as an indicator of the degree of transformation."  Final Scope Ruling at 23.  For instance, where the upstream and downstream products are within the same class or kind, Commerce has found that it weighs against a finding of substantial transformation.  *See, e.g.*, *Notice of Final Determination of Sales at Not Less Than Fair Value: Wax and Wax/Resin Thermal Transfer Ribbon from the Republic of Korea*, 69 Fed. Reg. 17,645, 17,647 (Dep't of Commerce April 5, 2004).  It was therefore reasonable for Commerce to consider this factor when analyzing the nature and degree of the transformation that has occurred.  As discussed above, both the two-ply panels at issue, as well as finished hardwood plywood, are included within the scope of the Orders, meaning they are of the same class or kind of merchandise.  Accordingly, Commerce reasonably determined that this factor weighs against finding that substantial transformation has occurred.

## 2.    Product Properties/Essential Characteristic And End Use

Second, plaintiffs argue that Commerce erred in analyzing the essential characteristics of the two-ply panels by failing to compare the Chinese panels to the finished plywood in Vietnam.  Plaintiffs Br. 30-34; InterGlobal  Br. at 29-30.  Commerce properly evaluated upstream inputs/components used to produce finished subject merchandise and found that the essential characteristics are imparted in China, at the point when the veneers are first glued together.  As Commerce explained, "the essential characteristics of two-ply panels imported by Finewood are imparted in China when two veneers are glued together and processed into a panel that is suitable

24

for future use in the production of plywood." Final Scope Ruling at 25. And because the gluing and assembly of additional veneers and further processing in Vietnam does not alter the essential characteristic of the two-ply panels, Commerce reasonably found "that this factor does not support the conclusion that further processing of these products in Vietnam substantially transforms the two-ply panels." *Id.*

Plaintiffs attempt to minimize the labor associated with Finewood's two-ply panels by claiming that the purchased two-ply panels "were not sanded and puttied" and "have no stability that finished plywood exhibits through layers of stacking and gluing veneer." Plaintiffs Br. at 32; InterGlobal Br. at 31. However, evidence from the ITC Final Report refutes plaintiffs' claim. As Commerce explained, the ITC Final Report stated that "prior to pressing, the face and core veneers are dried, sorted for defects, repaired or patched, taped or stitched to make larger sheets from smaller pieces, and trimmed." Final Scope Ruling at 31 (citing ITC Final Report Excerpt at I-16, P.R. 94). The ITC Final Report also stated that "veneers are stacked with their grain in alternating directions . . .in order to provide strength and stability to the finished product." *Id.* For incorporation into a finished hardwood plywood panel, it is conceivable that the core veneers used to produce Finewood's two-ply panels would also need to be repaired or patched, taped or stitched, and stacked with their grain in alternating directions, which is consistent with Commerce's observations at verification, where Commerce noted workers "repairing veneers by filling in holes with pieces of wood and tape." Final Scope Ruling at 31. (citing Finewood's May 13, 2021, Response at Exhibit SR-3, p. 14, P.R. 107). Thus, plaintiffs' "attempts to distinguish its two-ply panels from veneer core platforms are unconvincing and, regardless, its two-ply panels are still covered by the scope of the *Orders* because they meet the definition of certain veneered panels." Final Scope Ruling at 31.

25

Plaintiffs further argue that the photographs taken by Finewood's importer during its

plant visit "demonstrate that two-ply panels do not possess the same stability as finished

hardwood plywood." Plaintiffs Br. at 32. The photographs, however, demonstrate no such

thing. As Commerce noted, the photographs plaintiffs rely on do not specifically identify two-

ply panels. Final Scope Ruling at 29. Rather, the captions to the photographs identify [███████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

█████████████████]. *Id.* at 29-30 (citing Finewood's SQR Part IV at Exhibit SQ1-28, C.R.

120).

Ultimately, none of plaintiffs' arguments undermine Commerce's determination that the

essential characteristic of the two-ply panels is imparted in China because that is where the

gluing and pressing of veneers occurs. "That the product may undergo the addition of other

veneers or minor processing does not substantially transform these two-ply panels into a product

that is outside the scope of the *Orders*." Final Scope Ruling at 32.

### 3.   The Nature And Sophistication Of Processing

Third, plaintiffs disagree with how Commerce determined the nature and sophistication

of the processing that occurs in China versus the sophistication and processing undertaken by

Finewood in Vietnam. Plaintiffs Br. at 34-39; InterGlobal Br. at 32-34. Commerce determined

that the nature and sophistication of the processing that occurs in China is greater than that in

Vietnam based on its analysis of the production steps and record evidence. Final Scope Ruling

at 32, 34. Specifically, Commerce determined that an analysis of the number of steps undertaken

to produce two-ply panels in China to the number of steps required to produce plywood in

Vietnam (using purchased two-ply panels), indicates that the production process in China

involves [█] steps and the process in Vietnam only involves [█] steps.  Final Scope Ruling at

34.  Commerce further determined that a similar analysis of the production steps to produce

plywood in China (starting with the harvesting of logs) versus the steps to produce plywood in

Vietnam (using purchased two-ply panels) indicates that the China production process involves

[█] steps as compared to the [█] steps undertaken by Finewood.  *Id.*

      Plaintiffs argue that Commerce improperly considered the number of steps undertaken to

produce plywood in China versus the number of steps undertaken by Finewood in Vietnam.

Plaintiffs Br. at 34-39.  Plaintiffs argue that Commerce should not have considered the initial

steps of harvesting, debarking, and transporting of logs because these steps are not specific to

plywood production.  Plaintiffs Br. at 35-36.  Plaintiffs' claim that these steps are not typical of

activities of a plywood manufacturer because they do not take place in plywood mills is

unsupported by record evidence.  To the contrary, as Commerce noted, Finewood's own

information includes the initial harvesting and debarking as part of the plywood production

process.  Final Scope Ruling at 36 (citing Finewood's SQR Part IV at Exhibit SQ1-37, P.R. 91-

92 (Finewood stated it was submitting "Plywood Manufacturing Process in A Chinese Plywood

Factory," to "illustrate the plywood production process in China.")).

      Plaintiffs also contest Commerce's finding that the sophistication of the processing that

occurs in China is significant by claiming that the process does not require any highly

sophisticated equipment.  Plaintiffs Br. at 38.  This argument ignores Commerce's analysis on

the precise nature of the veneer peeling process.  Specifically, "Commerce considered the degree

to which the veneer peeling machinery is tuned, such that veneers can be produced and adjusted

by fractions of a millimeter; this is a highly sophisticated process that is necessary to ensure that

the precise measurements required for finished plywood can be achieved."  Final Scope Ruling

at 36.  "The laying up process, which involves little to no machinery and primarily manual labor, does not create the precision, tolerance and technicality required of finished plywood."  *Id.* Based on the foregoing, Commerce reasonably concluded that the cutting of precise veneers is a sophisticated process that is undertaken in China prior to the laying up process in Vietnam. Accordingly, contrary to plaintiffs' claims, Commerce's determination that the nature and sophistication of processing that occurs in China is greater than that undertaken by Finewood in Vietnam is supported by substantial evidence.

### 4.    The Cost of Production And Value Added To The Product

Fourth, plaintiffs argue that Commerce's value-added calculation is unsupported by substantial evidence, and that Commerce should have instead used Finewood's calculation. Plaintiffs Br. at 44.  Commerce, however, reasonably determined that the value added by Finewood in Vietnam to the Chinese two-ply panels does not represent a significant proportion of the value of the hardwood plywood that Finewood sold to the United States.  Final Scope Ruling at 37- 41.  Commerce explained that the cost of production of the two-ply panels imported by Finewood and the value added by Finewood in Vietnam is company-specific and focuses on the production experience of Finewood.  Given the absence of data by which to value Finewood's two-ply panels, Commerce considered the only available information on the record, Chengen's, and made several adjustments where necessary.  Final Scope Ruling at 37.

Plaintiffs contend that Commerce's analysis of the value added to the two-ply panels in Vietnam was unreasonable because it was inconsistent with Commerce's analysis related to the level of complexity of the production processes occurring in China and those occurring in Vietnam.  Plaintiffs Br. at 39.  This ignores Commerce's methodological decision that the production process for plywood does not exist in a vacuum and all steps of the process must be

completed by one entity or another, whereas the value added to the two-ply panels by Finewood

in Vietnam is necessarily a company-specific analysis that should focus on the experience of the

entity that is the subject of the analysis.  Final Scope Ruling at 39.

Plaintiffs also disagree with Commerce's explanation that it did not consider Chengen's

data to be representative of plywood production in China, and argue that as the sole mandatory

respondent in the first administrative review of plywood from China, Chengen's experience is

deemed to be representative of other Chinese exporters and producers.  Plaintiffs Br. at 40-41.

As Commerce explained, "the record does not demonstrate that Chengen's data would provide a

representative basis by which to calculate the value of the two-ply panels purchased by

Finewood because Commerce cannot assume that Chengen's production process or consumption

rates accurately reflect those of other producers in China or Finewood's Chinese suppliers, about

which the record contains no information."  Final Scope Ruling at 39.  Commerce nevertheless

used Chengen's data to conduct this analysis absent any other record data by which to value

Finewood's two-ply panels.  *Id*.

Finally, Commerce reasonably rejected Finewood's alternative calculation.  Finewood's

calculation relied upon the non-market economy (NME) methodology "used in NME cases as

the price to which the adjusted export price or constructed price is compared to determine the

amount of dumping."  Final Scope Ruling at 41.  However, as Commerce explained, "there is no

need to construct a value using the NME methodology when we know the exact prices at which

Finewood sold its plywood to the United States."  *Id.*  None of the plaintiffs' arguments

undermine Commerce's calculation, which "compares the cost of production of Finewood's two-

ply panels and identifies the value that was added to the two-panels in Vietnam by Finewood

based on the prices at which it actually sold the plywood produced using those two-ply panels to

the United States."  Final Scope Ruling at 41.  Accordingly, Commerce's value-added

calculation is reasonable and supported by substantial evidence.

### 5.  The Level Of Investment

Fifth, plaintiffs contend that Commerce's level of investment analysis is unsupported by

substantial evidence.  Plaintiffs Br. at 44-46.  Commerce determined that the level of investment

required to produce two-ply panels in China is more significant than the level of investment

required to assemble the two-ply panels into hardwood plywood in Vietnam.  Final Scope Ruling

at 41, 43.  To analyze the investment levels on a uniform basis, Commerce compared

Finewood's and Chengen's per-unit investment amount.  As one measure of significance,

Commerce expressed Chengen's and Finewood's investments in terms of each company's sales

volume over the same period.  *Id.* at 41; *see also* Preliminary Scope Ruling at 31 (finding

Finewood's investment amounted to $[████]/m3 of plywood sales volume, while Linyi

Chengen's investment amounted to $[████]/m3 of plywood sales volume).  Commerce

calculated the per-unit investment amounts by using the reported total investments and U.S. sale

volume within a comparable period.  *Id.*

Plaintiffs disagree with Commerce's methodology of dividing the total investment by the

sales of volume of each company in its level of investment analysis, and argue that a better

comparison is using only the sales volume of both companies' busiest month.  Plaintiffs' Br. at

44-46.  However, as Commerce explained, nothing on the record suggests that sales volume for

the highest sales month is in any way representative of production capacity or that both

companies were operating at similar capacity utilization rates in their respective months with the

highest sales volume.  Final Scope Ruling at 43.  Thus, the record provides no basis to determine

whether Finewood's suggested method is a reasonable basis for comparison.  Notwithstanding,

as Commerce noted, even if it were to adopt Finewood's proposed methodology, Chengen's per-unit level of investment was still higher than Finewood's level of investment on a per-unit basis; the result is an investment by Finewood of [          ] per-cubic meter (m3) and an investment by Chengen of [          ]/m3.  Final Scope Ruling at 43.  Thus, Commerce's determination that the level of investment required to produce two-ply panels in China is greater than the level of investment required to assemble the two-ply panels into finished plywood in Vietnam is supported by substantial evidence.

In sum, Commerce's substantial transformation determination reflects a weighing of the record according to well-established criteria and Commerce's conclusion, which is entitled to "significant deference," is supported by substantial evidence.  *Laminated Woven Sacks Comm. v. United States,* 716 F. Supp. 2d 1316, 1319-20 (Ct. Int'l Trade 2010).  The court should sustain Commerce's determination.

## IV.   Commerce Did Not Abuse Its Discretion By Enforcing Its Regulatory Deadlines Concerning Untimely New Factual Information And Requirements For The Filing Of Case And Rebuttal Briefs

### A.   Commerce's Decision To Reject Untimely Filed New Factual Information In Finewood's Case Brief Is In Accordance With Law

Commerce's decision to reject Finewood's untimely filed new factual information was lawful.  Plaintiffs argue that Commerce improperly rejected portions of their comments on the preliminary scope ruling.  Plaintiffs Br. at 24-27.  By regulation, Commerce has identified the types of factual information that it accepts, and the deadlines for filing such information.  "Commerce has broad discretion to establish its own rules governing administrative procedures, including the establishment and enforcement of time limits."   *Yantai Timken v. United States*, 521 F. Supp. 2d 1356, 1370 (Ct. Int'l Trade 2007).  Further, "{t}he role of judicial review is limited to determining whether the record is adequate to support the administrative action{,}"

31

and therefore "{a} court cannot set aside application of a proper administrative procedure because it believes that properly excluded evidence would yield a more accurate result."  *PSC VSMPO–Avisma Corp. v. United States*, 688 F.3d 751, 761 (Fed. Cir. 2012).

Commerce's regulations create time limits for the submission of factual information.  19 C.F.R. § 351.301.  Extension of those limits is governed by 19 C.F.R. § 351.302.  "*Before* the applicable time limit the Secretary may, for good cause, extend the time limit.   An *untimely filed* extension request, however, *will not be considered* unless the party demonstrates "an extraordinary circumstance exists."   19 C.F.R. § 351.302(b) (emphasis added).  An extraordinary circumstance is defined as an unexpected event that could not have been prevented if reasonable measures had been taken, and precludes a party or its representative from filing a timely extension request through all reasonable means.   19 C.F.R. § 351.302(c)(i)-(ii).

The specific types of factual information accepted by Commerce are set forth in 19 C.F.R. § 351.102(b)(21)(i)-(iv).  Subsection 351.102(b)(v) provides for certain other information not covered by subsections (i)-(iv).  Pursuant to section 351.301(c)(5), all submissions containing information under 351.102(b)(21)(v) are required to explain why the information does not meet the definitions in sections 351.102(b)(21)(i)-(iv).

On December 10, 2021, Commerce sent a letter to Finewood regarding its comments on the Preliminary Scope Ruling.  In its rejection letter, Commerce listed nine instances in which Finewood cited new factual information, specifically, the portions of Finewood's letter contained factual information from documents on the record of the investigation segment of this proceeding, but not on the record of this scope inquiry.  *See* Commerce Rejection Letter, P.R. 136.

Finewood did not provide the required explanation regarding its submission under section

351.102(b)(21)(v).   Further, as Commerce explained in its rejection letter, Commerce "was not granting parties the opportunity to provide additional factual information in parties comments on the preliminary scope ruling."  Commerce Rejection Letter, P.R. 136.  Therefore, Commerce rejected the information, and requested that Finewood file its comments with that information redacted.  *Id*.  Finewood did not explain why it was filing this information late, nor did Finewood argue that it had an extraordinary circumstance which prevented it from filing this information earlier in the proceeding.  Indeed, Finewood resubmitted its comments without reference to seven instances of new factual information but supported the remaining two rejected instances with citations to the record.

"Commerce has discretion both to set deadlines and to enforce those deadlines by rejecting untimely filings."  *Grobest & I-Mei Indus.(Vietnam) Co., Ltd. v. United States*, 815 F. Supp. 2d 1342, 1365 (Ct. Int'l Trade 2012) (*citing NTN Bearing Corp. v. United States,* 74 F.3d 1204, 1206–07 (Fed. Cir. 1995)).  Courts have recognized that they must weigh factors of fairness with "the burden imposed upon the agency by accepting the late submission," *Usinor Sacilor v. United States,* 872 F. Supp. 1000, 1008 (Ct. Int'l Trade 1994), and "the need for finality at the final results stage," *Timken U.S. Corp. v. United States,* 434 F.3d 1345, 1353 (Fed. Cir. 2006).

Finewood did not demonstrate that its tardiness was caused by an extraordinary (or any other kind of) circumstance.  Accordingly, Commerce properly rejected the new factual information contained in plaintiffs' comments.

**B.**      **Commerce's Decisions Not To Accept InterGlobal's Improperly Filed Case Brief And Rejection Of InterGlobal's Rebuttal Brief Is In Accordance With Law**

As Commerce explained above, InterGlobal never properly filed its comments on the Preliminary Scope Ruling.  Therefore, to the extent that its arguments mirror those of the other plaintiffs in this case, Commerce has responded to them.  However, because InterGlobal did not properly file comments, it has not exhausted its administrative remedies with regard to arguments that were raised for the first time in this litigation.  Thus, the Court should decline to consider InterGlobal's additional arguments that Commerce: (1) was required to initiate a new rule making process instead of unilaterally expanding the scope; (2) should not be allowed to "entrap manufacturers and importers" by unilaterally changing the interpretation of the scope of the orders; (3) that some of Interglobal's plywood was not produced with two-ply panels and thus should not be covered; (4) various additional arguments regarding Commerce's substantial transformation analysis and (5) that InterGlobal took efforts to verify that the Finewood possessed sufficient technology to produce the Plywood IGF purchased.  InterGlobal Br. at 16-17, 19-20, 43, and 46-49.

Congress has mandated that "the Court of International Trade shall, where appropriate, require the exhaustion of administrative remedies."  28 U.S.C. § 2637(d).  This statute "indicates a congressional intent that, absent a strong contrary reason, the court should insist that parties exhaust their remedies before the pertinent administrative agencies."  *Boomerang Tube LLC v. United States*, 856 F.3d 908, 912 (Fed. Cir. 2017) (citing *Corus Staal BV v. United States*, 502 F.3d 1370, 1379 (Fed. Cir. 2007)).  As such, courts require parties to exhaust administrative remedies before the agency by raising all issues in their initial case briefs before Commerce.  *See ABB, Inc. v. United States*, 920 F.3d 811, 818 (Fed. Cir. 2019); *Dorbest Ltd. v. United States*,

34

604 F.3d 1363, 1375 (Fed. Cir. 2010); *Mittal Steel Point Lisas Ltd. v. United States*, 548 F.3d

1375, 1383 (Fed. Cir. 2008); *Prime Time Commerce LLC v. United States*, 495 F. Supp. 3d 1308,

1313-14 (Ct. Int'l Trade 2021).  Likewise, Commerce's regulations require each party to submit

a case brief that contains all arguments relevant to the final determination.  *See* 19 C.F.R.

§ 351.309(c)(2).  "Simple fairness to those who are engaged in the tasks of administration, and to

litigants, requires as a general rule that courts should not topple over administrative decisions

unless the administrative body not only has erred but has erred against objection made at the time

appropriate under its practice."  *Mittal Steel*, 548 F.3d at 1383-84; *see also Stanley Works*, 279 F.

Supp. 3d at 1189 (discussing purposes of exhaustion requirement).

An interested party can establish that it should be excused from the exhaustion

requirement by showing that one of the exceptions to the requirement should apply.  Such

exceptions, however, are limited.  An exception may apply, for example, when a party shows

that raising its argument would have been "futile."  *See Itochu Bldg. Prods. v. United States*, 733

F.3d 1140, 1146 (Fed. Cir. 2013).  Similarly, the Court may excuse a party's failure to exhaust

its administrative remedies if the issue presented for the Court is a "pure question of law" that

can be addressed without further factual development or the agency's exercise of discretion.  *See*

*Itochu Bldg. Prods. v. United States*, 733 F.3d 1140, 1146 (Fed. Cir. 2013).[3]

---

[3] There are other exceptions to the exhaustion requirement.  *See Philipp Bros. v. United States*, 630 F. Supp. 1317, 1324 (Ct. Int'l Trade 1986) ("ITA did not take account of this lag in offset tax collection, however, until its final decision . . . . Therefore . . . there was no opportunity to raise the issue at the administrative level."); *Consol. Bearings Co. v. United States*, 348 F.3d 997, 1004 (Fed. Cir. 2003) (unavailability of administrative procedure); *Luoyang Bearing Factory v. United States*, 240 F. Supp. 2d 1268, 1297 n.26 (Ct. Int'l Trade 2002) (intervening judicial decision).  Because the record evidence does not indicate that these exceptions are applicable to this case, we discuss only the two most pertinent exceptions, futility and a purely legal question.

PUBLIC VERSION

Here, InterGlobal has failed to exhaust its administrative remedies, and no exception to the requirement applies. The record does not show that it would have been futile for InterGlobal to challenge Commerce's procedures. In fact, other parties, including the petitioners and plaintiffs properly filed their comments, and Commerce responded to each of the arguments listed in its Final Scope Ruling. Here, InterGlobal's improper filing of its comments is what prevented it from raising its arguments.

Finally, although InterGlobal argues that Commerce should not have rejected plaintiffs' untimely filed factual information in its respective comments (InterGlobal Br. at 6), it neither made any arguments regarding its own improperly filed comments nor explained themselves at all. InterGlobal neither contested Commerce's decision not to accept its untimely and improperly filed comments, nor raised arguments regarding Commerce's rejection of its rebuttal comments. Failure to develop or make an argument within the operative framework "typically warrants a finding of waiver." *See Nan Ya Plastics Corp., Ltd. v. United States*, 810 F.3d 1333, 1346–47 (Fed. Cir. 2016) (holding failure to develop an argument within the *Chevron* framework is typically waived); *United States v. Great Am. Ins. Co.*, 738 F.3d 1320, 1328 (Fed. Cir. 2013) ("It is well established that arguments that are not appropriately developed in a party's briefing may be deemed waived." (citing authorities)); *see, e.g., Novosteel SA,* 284 F.3d at 1274 (explaining that party waives argument if not raised in principal summary judgment brief). Therefore, to the extent that InterGlobal makes any affirmative arguments that Commerce's decisions were improper, those arguments should be deemed waived.

## CONCLUSION

For these reasons, we respectfully request that the Court sustain Commerce's

scope ruling as supported by substantial evidence and otherwise in accordance with the

law.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

/s/Tara K. Hogan by /s/ Claudia Burke
TARA K. HOGAN
Assistant Director

OF COUNSEL:

/s/Hardeep K. Josan
HARDEEP K. JOSAN
SAVANNAH ROSE MAXWELL              Trial Attorney
Attorney                                       Commercial Litigation Branch
Office of the Chief Counsel                     Civil Division
   for Trade Enforcement & Compliance      U.S. Department of Justice
U.S. Department of Commerce               26 Federal Plaza, Suite 346
                                          New York, New York 10278
                                          Tel.: (212) 264-9245
                                          Fax:  (212) 264-1916
                                          Email: hardeep.k.josan@usdoj.gov

November 18, 2022

**PUBLIC VERSION**

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify, pursuant to section 2(B)(1) of the Standard Chambers Procedures of this Court, that this brief contains 10,660 words, excluding the table of contents, table of authorities, any addendum containing statutes, rules or regulations, any certificates of counsel, and counsel's signature, as calculated by the word processing system used to prepare this brief (Microsoft Word).

<u>/s/ Hardeep K. Josan</u>
Hardeep K. Josan
Trial Attorney
Department of Justice
Civil Division
