NON-CONFIDENTIAL VERSION

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

VIETNAM FINEWOOD COMPANY
LIMITED, *et al.*,

                          Plaintiffs,

            and,

INTERGLOBAL FOREST LLC,

                          Consolidated-Plaintiff,

v.

UNITED STATES,

                          Defendant,

            and,

COALITION FOR FAIR TRADE IN
HARDWOOD PLYWOOD,

                          Defendant-Intervenors.

Before: Hon. Mark A. Barnett,
             Chief Judge

Consol. Court No. 22-00049

<u>NON-CONFIDENTIAL VERSION</u>

Business    Proprietary    Information
Removed from Pages: 20-23, 27-28

<u>**RESPONSE TO MOTION FOR JUDGMENT ON THE AGENCY RECORD**</u>

Timothy C. Brightbill, Esq.
Stephanie M. Bell, Esq.
Tessa V. Capeloto, Esq.

Wiley Rein LLP
2050 M Street, NW
Washington, DC 20036
(202) 719-7000

*Counsel to Coalition for Fair Trade in
Hardwood Plywood*

Dated: December 9, 2022

Consol. Ct. No. 22-00049                                      NON-CONFIDENTIAL VERSION

## TABLE OF CONTENTS

Page

I.  INTRODUCTION ........................................................................................... 1

II. ISSUES PRESENTED AND SUMMARY OF ARGUMENT .......................................... 2

    1.  Whether Commerce's Determination that the Scope Language Was Ambiguous Was Supported by Substantial Evidence and Otherwise in Accordance with Law? ...................................2

    2.  Whether Commerce's Determination that the (k)(1) Materials Demonstrated that Two-Ply Panels Are Covered by the Scope of the Orders Was Supported by Substantial Evidence and Otherwise in Accordance with Law? ...................................2

    3.  Whether Commerce's Determination that Further Processing in Vietnam Did Not Substantially Transform Chinese-made Two-Ply Panels Was Supported by Substantial Evidence and Otherwise in Accordance with Law? ...................................................................3

    4.  Whether Commerce Properly Rejected Untimely New Factual Information Contained in Finewood's Administrative Case Brief? ...................................................3

    5.  Whether InterGlobal Failed to Exhaust Its Administrative Remedies? ...................................................................3

III. STATEMENT OF THE FACTS ......................................................................... 4

IV. ARGUMENT ............................................................................................... 8

    A.  Commerce's Determination that the Scope Language Was Ambiguous Was Supported by Substantial Evidence and Otherwise in Accordance with Law .................................................8

    B.  Commerce's Determination that the (k)(1) Materials Confirmed that Two-Ply Panels Are Covered by the Scope Was Supported by Substantial Evidence and Otherwise in Accordance with Law ...........................11

    C.  Commerce's Determination that Two-Ply Panels Are Not Substantially Transformed in Vietnam Was Supported by Substantial Evidence and Otherwise in Accordance with Law ...........................17

        1.  Commerce's Class or Kind of Merchandise Analysis Supports Its Substantial Transformation Determination ...........................17

        2.  Commerce Properly Considered Information Regarding the Essential Components and End Use of the Product ...................................19

**Consol. Ct. No. 22-00049**                                                          **NON-CONFIDENTIAL VERSION**

3.   Commerce's Determination Regarding the Nature and
     Sophistication of Processing Supports Its Substantial
     Transformation Analysis...............................................................22

4.   Commerce's Analysis of the Cost of Production and Value
     Added Was Reasonable ...............................................................26

5.   Commerce's Level of Investment Analysis Was
     Reasonable and Supports Its Substantial Transformation
     Analysis.......................................................................................28

D.   Commerce Properly Rejected Untimely Filed New Factual
     Information ..................................................................................29

E.   InterGlobal Failed to Exhaust Its Administrative Remedies ................30

V.   CONCLUSION...................................................................................... 31

Consol. Ct. No. 22-00049                                    NON-CONFIDENTIAL VERSION

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bendure v. United States,*
    554 F.2d 427 (Fed. Cir. 1977)....................................................................................31

*Consol. Bearings Co. v. United States,*
    348 F.3d 997 (Fed. Cir. 2003)....................................................................................31

*Corus Staal BV v. United States,*
    502 F.3d 1370 (Fed. Cir. 2007)..................................................................................31

*Dۥferco Steel, Inc. v. United States,*
    296 F.3d 1087 (Fed. Cir. 2002)....................................................................................9

*Itochu Bldg. Products v. United States,*
    733 F.3d 1140 (Fed. Cir. 2013)..................................................................................31

*Kirovo-Chۥpetsky Khimichesky Kombinat, JSC v. United States,*
    58 F. Supp. 3d 1397 (Ct. Int'l Trade 2015)..................................................................9

*Laminated Woven Sacks Committee v. United States,*
    34 CIT 906, 716 F. Supp. 2d 1316 (2010)...................................................................9

*Maquilacero S.A. De C.V. v. United States,*
    256 F. Supp. 3d 1294 (Ct. Int'l Trade 2017) .............................................................16

*MCC Holdings v. United States,*
    537 F. Supp. 3d 1350 (Ct. Int'l Trade 2021) .......................................................16, 17

*Mitsubishi Polyester Film, Inc. v. United States,*
    228 F. Supp. 3d 1359 (Ct. Int'l Trade 2017) .........................................................9, 11

*Novosteel SA v. United States,*
    284 F.3d 1261 (Fed. Cir. 2002)....................................................................................9

*Star Pipe Products v. United States,*
    365 F. Supp. 3d 1277 (Ct. Int'l Trade 2019) .......................................................16, 17

*TMB 440AE, Inc. v. United States,*
    399 F. Supp. 3d 1314 (Ct. Int'l Trade 2019) .............................................................30

*Xiۥjiamei Furniture (Zhangzhou) Co. v. United States,*
    968 F. Supp. 2d 1255 (Ct. Int'l Trade 2014) .............................................................31

*Yantai CMC Bearing Co. v. United States*,
    203 F. Supp. 3d 1317 (Ct. Int'l Trade 2017) ........................................................12

**Statutes**

19 U.S.C. § 1517 ..........................................................................................................4

19 U.S.C. § 1517(b)(4) ................................................................................................4

**Regulations**

19 C.F.R. § 165.16 ........................................................................................................4

19 C.F.R. § 351.225(k)(1)............................................................................................5

**Administrative Materials**

*Certain Hardwood Plywood From the People's Republic of China*,
    85 Fed. Reg. 3,024 (Dep't Commerce Jan. 17, 2020) ...........................................4

## I.   <u>INTRODUCTION</u>

On behalf of the Coalition for Fair Trade in Hardwood Plywood ("Coalition"), defendant-intervenor in this action, we submit the following response to the opening briefs of Plaintiffs Vietnam Finewood Company Limited, Far East American, Inc., and Liberty Woods International, Inc. ("Finewood") and Consolidated Plaintiff InterGlobal Forest LLC ("InterGlobal") (collectively, "Plaintiffs"). Pls. Rule 56.2 Mem. in Support of Mot. for J. upon the Agency R. (Aug. 15, 2022), ECF No. 31 ("Finewood Br."); Consol. Pl. InterGlobal Forest, LLC R. 56.2 Mem. in Support of Mot. for J. upon the Agency R. (Aug. 15, 2022), ECF No. 30 ("InterGlobal Br."). The Coalition adopts the arguments made in Defendant United States' response brief. Def. Resp. to Pl. Rule 56.2 Motion for J. Upon the Agency R. (Nov. 18, 2022), ECF No. 35 ("Def. Br."). In this brief, the Coalition provides additional context and argument to aid the Court's understanding of the issues in Plaintiffs' appeal. For the reasons provided herein and in Defendant's brief, the Coalition respectfully requests that the Court sustain the final scope determination by the U.S. Department of Commerce ("Commerce"). Memorandum from Nicolas Mayora, Int'l Trade Analyst, to James Maeder, Deputy Assistant Sec'y, re: *Antidumping Duty and Countervailing Duty Orders on Certain Hardwood Plywood Products from the People's Republic of China, Enforcement and Protect Act (EAPA) Investigation No. 7252: Final Scope Ruling* (Jan. 21, 2022), P.R. 141, C.R. 135 ("IDM").[1]

---

[1]   Documents on the public record of the underlying administrative proceeding are identified here as "P.R.," followed by the number assigned to the relevant document in the administrative record index filed with the Court on March 30, 2022, ECF No. 23.  Documents in the confidential administrative record are identified by name, followed by "C.R." and the corresponding record number.

## II.     ISSUES PRESENTED AND SUMMARY OF ARGUMENT

**1.     Whether Commerce's Determination that the Scope Language Was Ambiguous Was Supported by Substantial Evidence and Otherwise in Accordance with Law?**

Yes. Commerce need only identify language in a scope that is subject to interpretation to meet the low threshold for demonstrating ambiguity. Here, Commerce explained that, while the scope includes "certain veneered panels," it does not include a specific definition of that term. As such, the definition of certain veneered panels, and whether they include two-ply panels, was not clear from the plain language of the scope. While Plaintiffs assert that the scope does define "certain veneered panels," their proposed reading would render certain scope language superfluous, and Plaintiffs fail to demonstrate why such a reading is required by the scope language.

**2.     Whether Commerce's Determination that the (k)(1) Materials Demonstrated that Two-Ply Panels Are Covered by the Scope of the Orders Was Supported by Substantial Evidence and Otherwise in Accordance with Law?**

Yes. Commerce properly evaluated the (k)(1) materials to confirm that two-ply panels are covered by the scope. This included a statement in the petitions that "veneer core platforms"— which can consist of only two plies—are covered by the scope, as well as a scope determination during the investigation that the term "certain veneered panels" should not be removed from the scope and that "certain veneered panels" can be made of two-plies. Plaintiffs fail to point to anything on the record demonstrating that two-ply panels were not considered as part of the scope in the underlying investigation or identify information that otherwise undermines Commerce's determination.

3.     **Whether Commerce's Determination that Further Processing in Vietnam Did Not Substantially Transform Chinese-made Two-Ply Panels Was Supported by Substantial Evidence and Otherwise in Accordance with Law?**

Yes. Commerce examined each of the criteria considered as part of its substantial transformation analysis and concluded that none of these factors weighed in favor of finding that substantial transformation had occurred. Commerce made this determination based on a consideration of the whole record and its determination regarding the weight of the evidence. In contesting these findings, Plaintiffs argue that Commerce should have considered the information differently or used a different approach to analyze information. However, they fail to identify information that Commerce did not consider or that render the agency's findings unsupported or otherwise show that Commerce's findings were unreasonable.

4.     **Whether Commerce Properly Rejected Untimely New Factual Information Contained in Finewood's Administrative Case Brief?**

Yes. Commerce properly rejected untimely new factual information contained in Finewood's case brief, consistent with the agency's regulations and practice. Finewood does not argue that it submitted this information consistently with the agency's regulations. Instead, it asserts that Commerce was required to examine this information as part of its consideration of the (k)(1) materials but has failed to support this assertion.

5.     **Whether InterGlobal Failed to Exhaust Its Administrative Remedies?**

Yes. InterGlobal did not properly file briefs before Commerce. As such, it has failed to exhaust its administrative remedies with respect to issues raised for the first time in this appeal. Additionally, none of the exceptions to exhaustion apply here, as it would not have been futile to raise these arguments before the agency and none of these arguments are pure questions of law. As such, these arguments should not be considered.

### III.    STATEMENT OF THE FACTS

On August 15, 2018, U.S. Customs and Border Protection ("CBP") initiated an investigation under the Enforce and Protect Act in response to an allegation of evasion regarding the Antidumping and Countervailing Duty Orders on Hardwood Plywood from the People's Republic of China (the "Orders"). Letter from Regina Walton, Acting Director, to Jeffrey I. Kessler, Assistant Sec'y, re: *Scope Referral Request for merchandise under EAPA Cons. Investigation 7252, imported by Far East America, Inc., CIEL Group, American Pacific Plywood, Interglobal Forest, and Liberty Woods International, Inc.,("importers') and concerning the investigation of evasion of the antidumping and countervailing duty orders on hardwood plywood from the People's Republic of China (A-570-051 and C-570-052)* (Sept. 16, 2019), P.R. 10, at 1 ("Scope Referral"). This investigation concerned products made in Vietnam by Finewood and imported into the United States by various importers. *Id.* On September 16, 2019, CBP issued a scope referral request to Commerce regarding this investigation. *See id.* This referral was issued pursuant to 19 U.S.C. § 1517, which instructs that, if CBP is unable to determine whether the merchandise at issue is covered by the scope of the relevant orders, it shall refer the matter to Commerce, which then must make a scope determination. 19 U.S.C. § 1517(b)(4); *see* 19 C.F.R. § 165.16; Scope Referral at 1-2. In its letter, CBP asked whether "2-ply cores of Chinese origin, which are further processed in Vietnam to include the face and back veneers of non-coniferous wood, are within the scope of the orders." Scope Referral at 2.

On January 17, 2020, Commerce initiated a scope inquiry in response to the referral request. *Certain Hardwood Plywood From the People's Republic of China*, 85 Fed. Reg. 3,024 (Dep't Commerce Jan. 17, 2020) (notice of covered merchandise referral and initiation of scope inquiry). Following initiation of the scope inquiry, Commerce issued initial and supplemental

questionnaires to Finewood, to which the company responded, and received comments and additional factual information from Finewood and the Coalition. Memorandum from Nicolas Mayora, Int'l Trade Analyst, to James Maeder, Deputy Assistant Sec'y, re: *Antidumping Duty and Countervailing Duty Orders on Certain Hardwood Plywood Products from the People's Republic of China, Enforcement and Protect Act (EAPA) Investigation No. 7252: Preliminary Scope Ruling* (Aug. 26, 2021), P.R. 110, C.R. 128, at 2-3 ("Prelim. Memo"). On August 26, 2021, Commerce issued its preliminary determination, finding that two-ply panels are covered by the scope of the Orders and that plywood exported by Finewood to the United States using two-ply panels from China was of Chinese origin as the two-ply panels were not substantially transformed by the processing occurring in Vietnam. *Id.* at 1. Commerce first found that the plain language of the scope was not dispositive in determining whether two-ply panels were covered. *See id.* at 11. This was based on the ambiguity surrounding the definition of the "certain veneered panels" included within the scope. *Id.* at 11-12. As the plain language of the scope was subject to interpretation, Commerce undertook an analysis based on the factors enumerated in 19 C.F.R. § 351.225(k)(1) (*i.e.*, the "(k)(1) materials"). *Id.* at 13-14. Based on a review of the product description contained in the petitions, the report of the U.S. International Trade Commission ("ITC"), and Commerce's scope determinations during the course of the investigation, the agency concluded that two-ply panels met the definition of "certain veneered panels" and thus were included in the scope. *Id.* Finally, the agency undertook a substantial transformation analysis to determine the country of origin of the product exported by Finewood. *Id.* at 15-31. In doing so, Commerce found that none of the factors considered—specifically, whether the downstream and upstream product were of the same class or kind of merchandise, whether processing in a third country changed the important qualities or use of the component, the nature and sophistication of processing, the cost of

production of and value added to the product, and the level of investment—weighed in favor of finding that substantial transformation occurred. *Id.* Accordingly, Commerce determined that no substantial transformation occurred via the processes undertaken by Finewood in Vietnam and that, consequently, the plywood was country of origin China and subject to duties under the Orders. *Id.*

Following Commerce's preliminary determination, Finewood submitted a case brief contesting various aspects of the agency's findings.[2] *See* IDM at 2. The Coalition submitted a rebuttal brief addressing the arguments put forth by Finewood and requesting that Commerce reject those arguments.[3] *Id.* After considering the briefs, Commerce issued its final determination, in which it continued to find that two-ply panels were covered by the scope and not substantially transformed in Vietnam. *Id.* at 1. First, Commerce continued to find that the scope was ambiguous with respect to the definition of "certain veneered panels" and the inclusion of two-ply panels. *Id*. at 10. As Commerce explained, the scope covers two types of merchandise: (1) hardwood and decorative plywood and (2) certain veneered panels. *Id*. Commerce further explained that, while the scope provided a definition for "hardwood and decorative plywood," it did not specifically define "certain veneered panels" nor did it provide any examples. *Id*. at 11. Commerce concluded that, "without a clear definition of certain veneered panels{,}" the scope lacked a complete definition of the products covered and thus additional guidance was needed to determine whether two-ply panels were covered. *Id.*

---

[2]     While InterGlobal attempted to submit a case brief, its comments were not properly submitted and were thus rejected and removed from the record. Def. Br. at 5-6.

[3]     InterGlobal also sought to submit rebuttal comments, however these comments were rejected as containing untimely affirmative arguments and not containing rebuttal argument. Def. Br. at 6-7.

Based on this finding, Commerce then examined the (k)(1) materials. *Id.* at 11-20. With respect to the ITC's report, Commerce explained that "certain veneered panels" were considered by the ITC and there was no express exclusion of two-ply panels in the ITC's report. *Id.* at 13. Thus, Commerce concluded that the ITC's determination provided no basis to conclude that two-ply panels were not included in the scope. *Id.* With regard to the petitions, Commerce noted that "veneer core platforms" were included in the description of covered products and that they were defined as "two or more wood veneers that form the core of an otherwise completed hardwood plywood product . . . ." *Id.* at 15. Additionally, while a reference to "veneer core platforms" was removed from the scope language as part of a pre-initiation clarification, the record indicated that this did not demonstrate the Coalition's intent to remove these products from the scope. *Id.* at 14-15. This was evidenced by the inclusion of the term "certain veneered panels" as part of the same clarification and a determination by Commerce during the course of the investigations that the term "certain veneered panels" should not be excluded from the scope language. *Id.* Commerce further explained that, based on its scope determination during the investigation, "certain veneered panels" was understood to mean "a veneer of hardwood affixed to a base, usually of inferior wood, by gluing under pressure," consistent with the World Customs Organization ("WCO") definition, and that "the WCO squarely encompasses products such as the Chinese two-ply panels." *Id.* at 16-17. Finally, Commerce rejected the argument that the agency did not consider two-ply panels as part of its antidumping investigation, noting that the product characteristics in its questionnaire did not prohibit the reporting of two-ply panels and that there was no need to issue supplemental questionnaires regarding these products. *Id.* at 19-20. Consequently, Commerce concluded that two-ply panels met the definition of "certain veneered panels" and thus were covered by the scope of the Orders. *Id.* at 11.

Finally, Commerce examined whether two-ply panels were substantially transformed in Vietnam by Finewood such that they were no longer Chinese country of origin. *Id.* at 20-43. First, Commerce explained that both two-ply panels and finished hardwood plywood are included within the scope of the Orders and are thus of the same class or kind of merchandise. *Id.* at 20-24. Second, Commerce found that the essential characteristic of the two-ply panels was "their suitability for use in the future production of plywood following the gluing together of at least two individual veneers{,}" that this was imparted in China, and that this did not change through the further processing that took place in Vietnam. *Id.* at 25-32. Third, Commerce found that the number of processing steps and sophistication of the processing undertaken in China was greater than in Vietnam. *Id.* at 32-36. Fourth, Commerce compared the cost of production of the two-ply panels imported by Finewood and the value added in Vietnam and found that the value added in Vietnam was not a significant portion of the value of the plywood that was sold to the United States. *Id.* at 36-41. Finally, Commerce compared the level of investment required to produce two-ply panels in China versus that required to assemble panels into hardwood plywood in Vietnam and found that the investment in China was more significant. *Id.* at 41-43. Based on the above, Commerce determined that each factor weighed against a finding of substantial transformation. *Id.* at 20-43. Consequently, Commerce concluded that two-ply panels further processed in Vietnam were Chinese country of origin and covered by the scope of the Orders.

## IV.    ARGUMENT

### A.    Commerce's Determination that the Scope Language Was Ambiguous Was Supported by Substantial Evidence and Otherwise in Accordance with Law

Plaintiffs assert that Commerce erred in finding ambiguity in the scope language regarding the definition of "certain veneered panels." Finewood Br. at 11-14; InterGlobal Br. at 14-16. According to Plaintiffs, the scope language contains a clear definition of "certain veneered

panels{,}" which requires that such panels have at least three plies. *See* Finewood Br. at 11-14. As explained by Defendant, this is incorrect. Def. Br. at 12-13. Commerce reasonably read the scope language to be ambiguous regarding the definition of "certain veneered panels" and, consequently, the inclusion of two-ply panels.

Determining that scope language is ambiguous is a "low threshold." *Novosteel SA v. United States*, 284 F.3d 1261, 1272 (Fed. Cir. 2002). As this Court has explained, the analysis of whether scope language can be considered ambiguous "is conducted under the controlling principle that Commerce need only meet a low threshold to show that it justifiably found an ambiguity in scope language." *Laminated Woven Sacks Committee v. United States*, 34 CIT 906, 914, 716 F. Supp. 2d 1316, 1325 (2010) (citing *Novosteel SA v. United States*, 284 F. 3d 1261, 1272 (Fed. Cir. 2002)). Thus, for example, the Court upheld Commerce's finding that the language "printed with three colors or more in register" was ambiguous as to whether it referenced the number of visual colors perceived or the number of inks used. *Id.* at 910-11, at 1322-23 ("Mindful of the low threshold requirement needed to establish ambiguity, the Court finds that Commerce has met this standard."); *Kirovo-Chepetsky Khimichesky Kombinat, JSC v. United States*, 58 F. Supp. 3d 1397, 1404 (Ct. Int'l Trade 2015) (recognizing that there is "a low threshold" to justify a finding of ambiguity); *Mitsubishi Polyester Film, Inc. v. United States*, 228 F. Supp. 3d 1359, 1374 (Ct. Int'l Trade 2017). Moreover, so long as Commerce finds that a scope is subject to interpretation, the agency properly considers the (k)(1) materials. *See Laminated Woven Sacks Committee*, 34 CIT at 915, 716 F. Supp. 2d at 1325-26 ("All that is necessary before Commerce may consider secondary documents from the original investigation is 'language in the order that is subject to interpretation'" (quoting *Duferco Steel, Inc. v. United States*, 296 F.3d 1087, 1097 (Fed. Cir. 2002))); *Mitsubishi*, 228 F. Supp. 3d at 1371 (finding that Commerce met the "low threshold" to

find ambiguity and proceed to a (k)(1) analysis where the scope language "does not on its face demand an unambiguous reading vis-à-vis the instant matter, but rather is subject to multiple reasonable interpretations").

Here, Commerce has met this threshold. As explained in Defendant's brief, the first sentence of the scope identifies two general types of merchandise covered by the Orders: (1) hardwood and decorative plywood and (2) certain veneered panels. *See* Def. Br. at 11. While the scope goes on to define "hardwood and decorative plywood," it does not contain a definition specific to "certain veneered panels." *Id.* As such, Commerce reasonably found that the scope was ambiguous regarding the definition of "certain veneered panels" and the inclusion of two-ply panels. *See id.* at 12; IDM at 11.

Plaintiffs claim that "certain veneered panels" are defined via the description in the second sentence of the scope. Finewood Br. at 11-13; InterGlobal Br. at 16-17. However, as Defendant explains, this reading is not consistent with, much less compelled by, the scope language. Specifically, the second sentence of the scope states that it is providing a definition for "hardwood and decorative plywood." *See* Def. Br. at 13. If this were read to also provide a definition for "certain veneered panels," then the inclusion of the phrase "certain veneered panels" in the first sentence of the scope would be superfluous. *Id.* In other words, if "hardwood and decorative plywood" encompassed "certain veneered panels," as proposed by Plaintiffs, then the first sentence of the scope would effectively read: "hardwood and decorative plywood (including certain veneered panels) and certain veneered panels." Plaintiffs fail to explain how such a reading can be considered reasonable. *See* Finewood Br. at 11-14; InterGlobal Br. at 14-16. Further, even if such a reading were considered reasonable—and the Coalition believes it is not—the scope cannot be read to compel such a conclusion, as it would render the inclusion of "certain veneered panels" in

the first sentence of the scope meaningless. Absent unambiguous language that cannot be considered subject to interpretation, Commerce properly considers the (k)(1) materials, as it did here. *Cf. Mitsubishi*, 228 F. Supp. 3d at 1374 ("Though Mitsubishi's construction of the plain scope language is not unreasonable, it is also not unambiguous.").

Plaintiffs also assert that the phrase "as described below" demonstrates that the definition in the second sentence of the scope applies to "certain veneered panels." *See* Finewood Br. at 11-13; InterGlobal Br. at 16-17. However, the scope language contains 14 additional paragraphs following the first paragraph, all of which provide information regarding the covered merchandise. *See* IDM at 2-5. Plaintiffs fail to explain why this phrase necessarily means that "certain veneered panels" are defined in the second sentence of the scope or why the scope cannot be understood in any other manner. Thus, here too, Plaintiffs fail to demonstrate that the scope is not subject to interpretation and cannot be considered ambiguous. As such, Commerce reasonably found that the scope language did not unambiguously define "certain veneered panels" and thus properly considered the (k)(1) materials to aid in its interpretation of the scope.

**B.**    **Commerce's Determination that the (k)(1) Materials Confirmed that Two-Ply Panels Are Covered by the Scope Was Supported by Substantial Evidence and Otherwise in Accordance with Law**

Plaintiffs next assert that Commerce erred in its consideration of the (k)(1) materials. Finewood Br. at 14-24; InterGlobal Br. at 17-19. In doing so, Plaintiffs point to (1) the revisions to the scope prior to initiation of the investigations; (2) Commerce's preliminary scope determination memorandum; (3) Commerce's dumping investigation; and (4) the ITC determination. Finewood Br. at 14-24; InterGlobal Br. at 17-18. However, in discussing these materials, Plaintiffs ignore the full record from the original investigation and make unsupported assertions regarding the record. Further, Plaintiffs fail to identify information that Commerce did

not consider or address and do not show that Commerce's determination is unsupported by substantial evidence; instead, they seek to have the Court reweigh the evidence that was before the agency and serve as a factfinder. Accordingly, for the reasons provided in Defendant's brief and further discussed below, these arguments should be rejected. *See Yantai CMC Bearing Co. v. United States*, 203 F. Supp. 3d 1317, 1325 (Ct. Int'l Trade 2017) ("Commerce weighed the evidence and arrived at a conclusion that, while not to Plaintiff's liking, is supported by substantial evidence on the record. It is not the court's role to reweigh that evidence.").

First, Plaintiffs highlight the fact that the scope language was modified between the filing of the petitions and initiation of the investigations. Finewood Br. at 15-19; InterGlobal Br. at 17-19. To start, as Defendant notes, the petitions expressly state that two-ply panels are covered by the scope. *See* Def. Br. at 16-17. Specifically, the petitions state that "{v}eneer core 'platforms' are included in the definition of subject merchandise" and define a "veneer core platform" as "two or more wood veneers that form the core of an otherwise completed hardwood plywood product." Letter from deKieffer & Horgan, PLLC to Sec'y Commerce, re: *Hardwood Plywood from the People's Republic of China: EAPA Scope Inquiry Finewood Supplemental Questionnaire Response – Part IV and Information on Substantial Transformation* (Apr. 20, 2021), P.R. 91-92, C.R. 117-123, at Exhibit SQ1-25, p. 7 ("Finewood's SQR Part IV"). The scope included in the petitions also included a reference to veneer core platforms, explaining that, "{f}or products that are entirely composed of veneer, such as Veneer Core Platforms, the exposed veneers are to be considered the face and back veneers . . . ." *Id.* at Exhibit SQ1-25, p.5. Thus, the petitions unambiguously included two-ply panels. *See* Def. Br. at 16-17.

Plaintiffs rely on the fact that the reference to veneer core platforms was subsequently removed from the scope language and claim that this demonstrates that the inclusion of two-ply

panels was rejected during the pre-initiation phase. Finewood Br. at 18-19; InterGlobal Br. at 17-

19. This is incorrect. As Defendant notes, Commerce explained that "the removal of the phrase

veneer core platform did not change the scope to remove two-ply panels." Def. Br. at 17 (quoting

IDM at 15). Indeed, in making this change, the Coalition stated that revisions were made only for

the purpose of "clarifying the language of the scope" based on "a request by {Commerce} and

discussions with {Commerce} and with {CBP}. . . ." Finewood's SQR Part IV at Exhibit SQ1-26,

p. 1-2. The Coalition did not state that it was modifying the universe of merchandise covered nor

does anything on the record indicate that this was the Coalition's intent. *Id.*

Plaintiffs also state that it is "illogical" to conclude that the inclusion of "veneer core

platforms" in the petitions "confirms Petitioner's intent to include two-ply panels . . .{,}" noting

that this term was undefined in the scope and "not even in the first paragraph describing the subject

merchandise . . . ." Finewood Br. at 18. This ignores the record as a whole. As noted above, the

petitions expressly stated that veneer core platforms were covered and that a veneer core platform

could be only two plies. Finewood's SQR Part IV at Exhibit SQ1-25, p. 7. It is unclear why an

express statement of inclusion in the petitions fail to indicate the Coalition's intent. Furthermore,

veneer core platforms were not included in the scope by reason of the reference to such products

in the scope paragraph discussing veneers. The petitions explicitly state that veneer core platforms

are included. Accordingly, neither the location of the reference to veneer core platforms in the

original scope language nor the removal of this reference equate to the exclusion of veneer core

platforms or two-ply panels from the scope.

Second, Plaintiffs claim that Commerce's preliminary scope determination indicates that

"certain veneered panels" are limited to products with at least three plies. Finewood Br. at 17-18.

This conclusion is not supported by the record. As an initial matter, the Coalition's objection to

removing the phrase "certain veneered panels" during the investigation confirms that this phrase was understood to have meaning distinct from "hardwood and decorative plywood." This further demonstrates that Plaintiffs' request that the definition of "hardwood and decorative plywood" also be applied to "certain veneered panels" is not supported by the record. Moreover, as Defendant notes, Commerce's preliminary scope determination confirms that "certain veneered panels" includes products with two plies. Def. Br. at 15-17. Specifically, Commerce explained: "based on petitioners' explanation of 'certain veneered panels,' we clarify that this phrase means, in the context of this investigation, a veneer of hardwood which has been affixed to a base (including the core) of inferior wood or a non-wood product." Letter from Wiley Rein LLP to Sec'y Commerce, re: *Hardwood Plywood Products from the People's Republic of China: Rebuttal to Substantial Transformation Information* (May 4, 2021), P.R. 102, C.R. 126, at Exhibit 1 ("Coalition's Rebuttal to STI"). Commerce also noted that the Coalition used the phrase "veneered panels" because of its use by the WCO and the Harmonized Tariff Schedule of the United States. *Id.* As Commerce explained in its final determination here: "the primary definition of a veneered panel promulgated by the WCO squarely encompasses products such as the Chinese two-ply panels used by Finewood because these panels consist of a veneer of hardwood affixed to a base, in this case a base made of a hardwood veneer." IDM at 17.

Third, Plaintiffs claim that the product characteristics required to be reported as part of Commerce's dumping investigation demonstrate that the agency considered subject merchandise to have at least three plies. Finewood Br. at 19-20. However, as Defendant explains, Commerce's questionnaire did not instruct respondents to not report two-ply panels; instead, it requested that the number of plies be reported and allowed for the reporting of a number of plies that was not expressly listed in the questionnaire. Def. Br. at 17. In other words, respondents were not

prohibited from reporting products with two-plies. Similarly, while Plaintiffs rely on the requirement that "core composition" be reported, the questionnaire included an option to identify and specify a core other than those listed. Finewood Br. at 20; Letter from deKieffer & Horgan, PLLC to Sec'y Commerce, re: *Hardwood Plywood from the People's Republic of China: EAPA Scope Inquiry Finewood Sur-Rebuttal to Petitioner's May 4, 2021 Rebuttal Comments* (May 13, 2021), P.R. 102, C.R. 127, at Exhibit SR-2, p. 5 ("Finewood's Sur-Rebuttal"). While Plaintiffs note that the questionnaire states that cores made with multiple materials should be reported under "other," it fails to explain why the "other" category is necessarily limited to this description and could not be used for two-ply panels. Finewood Br. at 20.

Plaintiffs also assert that the lack of questions in any supplemental questionnaires regarding two-ply panels further demonstrates that two-panels were not covered. *Id.* at 20-21. But, as Defendant explained, there was no apparent need for Commerce to issue such questions; for example, in the first administrative review, Chengen Import and Export Co., Ltd. ("Chengen") reported that all of its sales to the United States were of subject merchandise. Def. Br. at 18; IDM at 20. Thus, it is unclear what Plaintiffs believe Commerce should have, or could have, asked about two-ply panels.

Finally, Plaintiffs assert that the ITC did not investigate two-ply panels in making its injury determination. Finewood Br. at 21-24. This is based largely on the fact that the ITC did not explicitly reference two-ply panels in report. *Id.* at 22-23. However, as explained by Defendant, the lack of an express reference to two-ply panels does not equate to the exclusion of two-ply panels from its determination. Def. Br. at 19. Further, as Defendant highlights, the ITC stated that it considered merchandise coextensive with the scope, which includes "certain veneered panels." *Id*. Plaintiffs also rely on the statement in the ITC report that "hardwood and decorative plywood

is a wood panel made from gluing two or more layers of wood veneer to a core . . . {,}" asserting that this represents the ITC's "definitive understanding of the subject merchandise . . . ." Finewood Br. at 22. But this lone statement cannot be understood to have defined the entire universe of merchandise considered by the ITC. Notably, this statement indicates that subject merchandise must be "made from gluing{,}" but the scope is clear that subject merchandise "may be glued *or otherwise bonded together.*" IDM at 2-3 (emphasis added). Thus, reading the ITC's statement as the "definitive" definition of in-scope merchandise, as Plaintiffs propose, would also mean that the ITC did not consider merchandise bonded by means other than glue notwithstanding the scope's express inclusion of such goods. Such a conclusion is not reasonable.

Nor is Plaintiffs' argument supported by the cases on which it relies. For example, in the proceeding underlying *Maquilacero S.A. de C.V. v. United States*, Commerce had determined that certain mechanical tubing did not fall within a scope exclusion based on the agency's finding that stenciling was required to for a product to constitute excluded "mechanical tubing." *Maquilacero S.A. De C.V. v. United States*, 256 F. Supp. 3d 1294, 1302-03 (Ct. Int'l Trade 2017). In remanding this determination, the Court explained the scope exclusion for mechanical tubing did not include a stenciling requirement, nor was there any indication that the ITC considered stenciling when it made a negative injury determination as to the separate domestic like product of mechanical tubing. *Id.* at 1310-11. Thus, in *Maquilacero*, there had been specific discussion of, and a negative injury determination as to, the merchandise at issue. Similarly, in *Star Pipe Products v. United States* and *MCC Holdings v. United States*, both of which addressed the inclusion of ductile iron flanges in the scope of the orders on non-malleable cast iron pipe fittings, the Court identified language in the ITC report undermining Commerce's determination that the agency failed to address. *Star Pipe Products v. United States*, 365 F. Supp. 3d 1277 (Ct. Int'l Trade 2019); *MCC*

*Holdings v. United States*, 537 F. Supp. 3d 1350 (Ct. Int'l Trade 2021). In particular, the Court noted that the ITC specifically excluded ductile flanged fittings from its investigation and included discussions of what constituted pipe fittings and flanged fittings. *Star Pipe Products*, 365 F. Supp. 3d at 1283-86; *MMC Holdings*, 537 F. Supp. 3d at 1358-30. Unlike in those cases, Plaintiffs can point to no language or determination here that would likewise demonstrate that the ITC excluded two-ply panels from its affirmative injury determination. Indeed, the only language Plaintiffs point to is a single sentence that cannot be understood as limiting the scope of the ITC's determination in light of its express conflict with the scope, as noted above. As such, Plaintiffs' reliance on the ITC report as a means for undermining Commerce's determination is misplaced.

### C.  Commerce's Determination that Two-Ply Panels Are Not Substantially Transformed in Vietnam Was Supported by Substantial Evidence and Otherwise in Accordance with Law

Plaintiffs next argue that Commerce's substantial transformation analysis is unsupported by the record and contrary to law. Finewood Br. at 28-47; InterGlobal Br. at 23-44. In doing so, Plaintiffs disagree with the weight Commerce placed on information and the manner in which it considered certain information. Finewood Br. at 28-47; InterGlobal Br. at 23-44. However, Plaintiffs do not demonstrate that Commerce failed to address the evidence on which Plaintiffs rely or that the approach the agency took in analyzing the record was unreasonable. Instead, Plaintiffs simply disagree with Commerce's weighing of the evidence. Consequently, for the reasons provided below, in conjunction with those presented in Defendant's brief, these arguments should be rejected.

#### 1.  Commerce's Class or Kind of Merchandise Analysis Supports Its Substantial Transformation Determination

Plaintiffs argue that Commerce erred in its analysis of whether two-ply panels and finished plywood were of the same class or kind by allegedly placing too much weight on this factor in its

substantial transformation analysis. Finewood Br. at 29-30. This argument ignores Commerce's determination. To start, as Defendant notes, the Courts have acknowledged Commerce's use of the "class or kind" criterion in its substantial transformation analysis. Def. Br. at 23-24. And Plaintiffs do not argue that Commerce cannot consider this factor. Finewood Br. at 30. Instead, Plaintiffs assert that Commerce's consideration of this factor was inconsistent with the "totality of the circumstances approach" used in considering substantial transformation. *Id.* at 29-30. This is based on a statement made in the preliminary determination, which Plaintiffs understood to mean that Commerce's class or kind determination would effectively dictate whether substantial transformation had occurred. *Id.* However, this ignores Commerce's final determination, which makes clear that the agency did not consider this factor to be dispositive:

> The "class or kind" criterion continues to be part of Commerce's substantial transformation analysis, in which Commerce continues to consider the totality of the circumstances of all relevant criteria. Commerce continues to consider the class or kind of merchandise factor in its substantial transformation analysis because it serves, generally, as an indicator of the degree of transformation. That is, if a product is of a certain class or kind of merchandise and through processing is transformed into a different class or kind of merchandise, the change is indicative (but not dispositive) of a more significant transformation than if the merchandise were of the same class or kind of merchandise both before and after processing. If the downstream product becomes a different class or kind of merchandise, this weighs in favor of a finding that the product is a new and different article of commerce (*i.e.*, substantially transformed) in the third country. Conversely, where the upstream and downstream products are within the same class or kind, Commerce has found that it weighs against a finding of substantial transformation. . . . {H}ere, we continue to find that this factor weighs against finding that substantial transformation has occurred when factored into our substantial transformation analysis.

IDM at 23 (footnotes omitted). Thus, Commerce's final determination demonstrates that the agency did not place this criterion above others in its substantial transformation analysis and instead considered it as one factor weighing against a finding of substantial transformation when

considering the totality of the circumstances. *See id.* Plaintiffs fail to identify any error in this approach.

### 2.      Commerce Properly Considered Information Regarding the Essential Components and End Use of the Product

In challenging Commerce's consideration of the essential components of the merchandise and the intended end use, Plaintiffs first claim that Commerce's approach to considering this criterion was incorrect. Finewood Br. at 30-31. However, Plaintiffs do not persuade in their argument that Commerce was required to compare the essential characteristics of two-ply panels with those of finished plywood. *Id.* at 30-31; *see* InterGlobal Br. at 29-30. As an initial matter, in critiquing Commerce's approach, Plaintiffs fail to consider the full analysis undertaken. Specifically, Commerce determined both that the essential characteristics of two-ply panels are imparted when the veneers "are glued together and processed into a panel that is suitable for future use in the production of plywood" *and* that the "gluing and assembly of additional veneers . . . into a veneered panel or plywood does not alter the essential characteristics of the two-ply panels . . . ." IDM at 25, 28-29. Thus, Commerce reasonably considered the essential characteristics of the products at issue and the role played by production in China and Vietnam. Moreover, Plaintiffs fail to explain why their proposed analysis is required. While Plaintiffs point to two cases in which the essential characteristics of the finished product was discussed, they do not explain why these cases mandate that Commerce undertake this analysis and cannot examine other factors when considering this criterion. Finewood Br. at 31. As Commerce explained in its final determination, the agency "evaluated upstream inputs/components used to produce finished subject merchandise and found that the essential characteristics are imparted in China." IDM at 28. Plaintiff do not demonstrate that this was impermissible.

Plaintiffs next point to information on the record that they claim supports the conclusion that the "distinguishing physical characteristics of finished hardwood plywood are imparted through the process of laying out and gluing veneers to construct a plywood panel with face, back, and core." Finewood Br. at 31-34; InterGlobal Br. at 29-31. In doing so, however, Plaintiffs largely ignore Commerce's final determination. First, Plaintiffs point to language in the ITC report regarding the stability imparted during the production process and assert that two-ply panels have not undergone the same processes and do not have the stability of or ability to function as finished plywood. Finewood Br. at 32. As discussed in Defendant's brief, Commerce considered the ITC report language relied on by Plaintiffs, as well as additional language from the ITC report regarding the processes core veneers undergo. Def. Br. at 25. Upon considering this information, Commerce found that the core veneers used to produce Finewood's two-ply panels could have undergone the same processes, including repairing or patching, taping or stitching, and stacking with grain in alternating directions. IDM at 31. Commerce further explained that this was consistent with its observations during verification in the underlying original investigation. *Id.* While Plaintiffs may wish that Commerce considered this information differently, they do not demonstrate that this conclusion was unreasonable or unsupported.

Plaintiffs also assert that pictures taken by Finewood's importer during a plant visit likewise demonstrate that two-ply panels do not have the same stability as finished plywood. Finewood Br. at 32. But, as Defendant noted, the photographs "demonstrate no such thing." Def. Br. at 26. First, the photographs at issue fail to specifically identify two-ply panels. *See id*. For example, the [

                        ] Finewood's SQR Part IV at Exhibit SQ1-28, p. 5. Further, even assuming that the pictures do represent two-ply panels, little, if any, information can be garnered from these

images, [                                        ]. Thus, contrary to Plaintiffs claims, these
images do not "clearly" distinguish two-ply panels from core platforms and plywood. *See*
Finewood Br. at 32.

Next, Plaintiffs contend that information regarding "two-ply veneer" demonstrate that two-
ply panels do not have the stability needed for plywood. *Id.* at 33. However, as Commerce noted
in its final determination, the record shows that Chinese manufacturer sold [          ], poplar core
product that was [    ]mm thick, meaning that the veneer core platform used in these products was
a two-ply panel [                        ] by Finewood. IDM at 30. While Plaintiffs seek to dismiss
this information because these products accounted for only [        ] of Chengen's U.S. sales and
characteristics other than thickness can be relevant for plywood, this misses the point. Finewood
Br. at 33-34. In the underlying proceeding, Finewood had argued that its two-ply panels are simply
"reinforced veneers," are not sanded or puttied, and have no stability. *See* IDM at 30. In response,
Commerce highlighted that Finewood has not addressed how its two-ply panels are distinguishable
from the [        ] veneer core platforms used by Chengen. *Id.* Neither the proportion of
Chengen's sales accounted for by these products nor the fact that finished plywood may have other
characteristics address this. The fact remains that Chengen manufactured products with [
                                        ] and thus the record
does not support Plaintiffs' contention that two-ply panels cannot serve as cores of completed
hardwood plywood. *See id.*

Finally, Plaintiffs fault Commerce for not analyzing information showing the
characteristics that are identified in an invoice for finished plywood, which they claim supports
the argument that two-ply panels cannot be used in the same manner as finished plywood.
Finewood Br. at 33; *see* InterGlobal Br. at 30-31. This is incorrect. In its final determination,

Commerce stated that Finewood "attempt{ed} to distinguish its two-ply panels from subject merchandise by claiming that its two-ply panels cannot be sold in the United States as finished plywood" and noted that this argument "fails on multiple counts." IDM at 31. For example, Commerce explained that "it is immaterial whether Finewood's two-ply panels can be sold as finished plywood because they, as with other veneered panels, are nevertheless covered by the scope of the Orders." *Id.* Thus, Plaintiffs have not identified any information that Commerce failed to consider or otherwise demonstrate that the agency's determination was unsupported.

3. **Commerce's Determination Regarding the Nature and Sophistication of Processing Supports Its Substantial Transformation Analysis**

With respect to Commerce's analysis of the nature and sophistication of processing, Plaintiffs contest the approach used by the agency as well as the weight that was placed on record information. Finewood Br. at 34-39. While Plaintiffs may disagree with Commerce's analysis and conclusion, they do not demonstrate that the agency's findings were unsupported, impermissible, or otherwise unreasonable.

First, Plaintiffs fault Commerce for allegedly excluding [     ] production steps when analyzing the production stages in Vietnam. *Id.* at 34. Similarly, Plaintiffs fault Commerce for not explaining more clearly how it developed the list of production steps used in its analysis. *Id.* at 35. However, as Commerce explained, it undertook a holistic approach based on information on the record. *See* IDM at 34-35; Memorandum from Nicolas Mayora, Int'l Trade Compliance Analyst, to The File, re: *Antidumping Duty and Countervailing Duty Orders on Certain Hardwood Plywood Products from the People's Republic of China, Enforcement and Protect Act (EAPA) Investigation No. 7252: Preliminary Scope Ruling: Analysis Memorandum for the Preliminary Determination* (Aug. 26, 2021), P.R. 111, C.R. 129, at 1. Moreover, as Commerce noted, with the exception of harvesting, debarking, and transporting logs—which Commerce specifically addressed as

discussed below—Finewood did "not claim that any of the steps identified are not undertaken."[4]

IDM at 34-35. Similarly, beyond a general statement that Commerce did not explain why it did

not rely on all of Finewood's reported production steps, the company made no argument that any

step was improperly excluded or should have been considered. *Compare* Letter from deKieffer &

Horgan, PLLC, to Sec'y Commerce, re: *Hardwood Plywood from the People's Republic of China:*

*EAPA Scope Inquiry Resubmission of DH Respondents Comments on Preliminary Scope Ruling*

(Dec. 14, 2021), P.R. 138, C.R. 134, at Attachment, p. 30, 34-38 ("Resubmission of DH

Respondents Comments"), *with* Finewood Br. at 34. Thus, to the extent that parties argued that

Commerce should have relied on different production steps, those arguments were addressed.

Second, Plaintiffs claim that Commerce improperly considered a "holistic view" of the

production process "to avoid potential manipulation . . . ." Finewood Br. at 35. While Plaintiffs

appear to dispute the idea that they could have engaged in manipulation, this misses the point. As

explained in the final determination, Commerce used a holistic approach rather than relying on the

steps reported by a specific supplier because the latter approach "would lead to inconsistent

analyses based on the supplier and whether it is a producer or a mere reseller of veneered panels."

IDM at 35. Plaintiffs do not explain why this is an unreasonable or unsupported approach.

Third, Plaintiffs claim that Commerce improperly considered harvesting, transporting,

[      ], and debarking logs as steps in the production of two-ply panels. Finewood's Br. at 35.

As Commerce noted, there has been no argument that these steps don't take place, only that they

are allegedly performed outside a plywood production facility. IDM at 34-36; Finewood Br. at 35.

---

[4] Plaintiffs argue in their brief that Commerce also failed to explain the inclusion of
[                    ] as part of two-ply production. Finewood Br. at 36. As this argument was not
raised in the administrative case brief, Plaintiffs have failed to exhaust their administrative
remedies, and this argument should not be considered here. *See* Resubmission of DH Respondents
Comments at Attachment.

Yet, Plaintiffs fail to provide any reasoning or support as to why this necessarily means they cannot be considered. Finewood Br. at 35. Notably, as Defendant notes, Finewood's own data include harvesting and debarking as steps in the production process. Def. Br. at 27. Additionally, as Commerce explained, this is consistent with the agency's approach of taking a holistic view of the production process instead of a supplier-specific analysis. IDM at 35.

Plaintiffs also contest Commerce's finding that debarking logs is labor-intensive. Finewood Br. at 36-37. As an initial matter, Commerce described the harvesting and debarking of logs as "both labor- and resource-intensive" explaining that "{t}hese processes, together with soaking and drying of the logs, also require forestry management resources and much more physical space than is required for Finewood's assembly facility." Prelim. Memo at 23-24. Even if Plaintiffs' assertion that debarking is not labor intensive is correct, Plaintiffs do not demonstrate that the consideration of these steps was inappropriate or otherwise weighed against Commerce's determination in light of the agency's additional findings. Nonetheless, Plaintiffs' argument must fail, as it is based on their interpretation of how the evidence should have been weighed. As Commerce explained, Chengen's verification report shows that "the process of debarking of logs is a manual process that involves labor and is not an automated process." IDM at 36. Plaintiffs rely on the fact that the verification report references "a" worker and the fact that not all logs need to be debarked. Finewood Br. at 37. But Plaintiffs fail to show how this undermines Commerce's determination beyond an unsupported assertion that this "strongly suggest{s} that Chengen does not routinely receive large quantities of logs that need to be debarked." *Id.* at 37. Even if this were true, this does not mean that debarking is not labor-intensive nor does this address the fact that

debarking still needs to occur as part of the production process.[5] Plaintiffs are dissatisfied with how Commerce weighed this evidence but point to nothing that undermines the agency's conclusions or demonstrate that they were otherwise unreasonable.

Finally, Plaintiffs challenge Commerce's conclusion that the processes undertaken in China are sophisticated compared to those undertaken in Vietnam. Finewood Br. at 38; InterGlobal Br. at 32-33. This argument ignores Commerce's actual determination. Specifically, as Defendant highlights, Commerce emphasized that veneer peeling machines need to be tuned precisely to obtain the proper measurement, which "indicates a level of sophistication far greater than the hot press and cold presses used by Finewood to assemble the finished plywood." Def. Br. at 27; IDM at 36; Prelim. Memo at 24. While Plaintiffs argue that the document relied on by Commerce does not discuss machinery and claim that "the tolerance of the plywood" is gained through other steps of the production process, this misses the point. Finewood Br. at 38. The documentation relied on by Commerce shows that the thicknesses of the veneers, as well as the overall tolerance for the finished product, are "precise measurements" and indicate that veneer peeling machines can be "adjusted by fractions of a millimeter." IDM at 36. Plaintiffs do not address, much less undermine, this finding. As such, Plaintiffs do not demonstrate that Commerce's finding that the processes occurring in China are sophisticated is unsupported or otherwise show that the agency's determination was improper.

---

[5]     In this regarding, the Coalition notes that Finewood's own documentation shows that at least some mills in China receive logs that are largely, if not entirely, still in need of debarking. *See* Letter from Wiley Rein LLP to Sec'y Commerce, re: *Hardwood Plywood Products from the People's Republic of China: Response to Comments on Preliminary Determination* (Oct. 12, 2021), P.R. 132, C.R. 133, at 20 ("Coalition's Response to Comments"); Letter from deKieffer & Horgan, PLLC to Sec'y of Commerce, re: *Hardwood Plywood from the People's Republic of China: EAPA Scope Inquiry Finewood Rebuttal to Petitioner's Additional Information* (Apr. 30, 2021), P.R. 100, C.R. 125, at Exhibit 1, Attachment 1.

4.    **Commerce's Analysis of the Cost of Production and Value Added Was Reasonable**

In challenging Commerce's consideration of the value-added in Vietnam, Plaintiffs first assert that Commerce's methodology with respect to this factor was inconsistent with its consideration of the nature and sophistication of the processing in Vietnam. Finewood Br. at 39. As Defendant notes, this ignores Commerce's methodological decision that an analysis of the production steps that occur in China must include all steps of the production process while the cost of production and value-added analysis is necessarily company-specific. Def. Br. at 28-29; IDM at 30. Plaintiffs fail to explain why this is an unreasonable approach beyond asserting that it is so. *See* Finewood Br. at 39.

Plaintiffs also contest Commerce's approach of calculating the cost of production based on Chengen's use of veneers instead of logs. *Id.* at 40. According to Plaintiffs, Commerce unreasonably found that Chengen was not necessarily representative of other Chinese producers or of Finewood's Chinese suppliers. *Id.*; *see* IDM at 39. As an initial matter, as Defendant notes, Commerce ultimately used Chengen's data in light of the fact that there was no other data on the record with which the agency could value Finewood's two-ply panels. Def. Br. at 29; IDM at 39. Thus, Plaintiffs' claim is moot. Moreover, to the extent that Plaintiffs are arguing that Commerce was required to consider Chengen's production process and consumption rates necessarily representative of other Chinese producers, this is unsupported. Finewood Br. at 40; IDM at 39. Plaintiffs point to cases discussing the deemed representativeness of mandatory respondents for the purpose of assigning dumping margins to non-individually examined companies. Finewood Br. at 40. But the fact that mandatory respondents are deemed representative in this context does not equate to a requirement that production processes and consumption rates of mandatory respondents necessarily be considered representative of other producers. Thus, beyond claiming

that Commerce should have used a different approach, Plaintiffs have failed to demonstrate that the agency acted in an unreasonable or unsupported manner in its reliance on veneer consumption in its cost of production analysis.

Plaintiffs next claim that there was "{a}nother reasonable alternative" for Commerce to undertake its value-added analysis. *Id.* at 41-42; *see* InterGlobal Br. at 35-38. As an initial matter, even assuming *arguendo* that Plaintiffs' proposed alternative analysis is reasonable, this does not demonstrate that Commerce's approach was necessarily unreasonable or unsupported. Commerce explained why it used the approach it did and why it rejected alternative proposals. *See* IDM at 38-41; Def. Br. at 29. The fact that Plaintiffs believe that Commerce could have used a different approach does not undermine this conclusion and instead seeks to undermine Commerce's role as factfinder.

Moreover, as Commerce highlighted in its final determination, the cost of production calculation proposed by Finewood is distorted because not all of the plywood produced by the company used two-ply panels from China. IDM at 40. Plaintiffs claim that it has corrected for this distortion, but this is incorrect. *See* Finewood Br. at 43. Specifically, in its revised analysis, Finewood removed CONNUMs that used no two-ply panels from its calculation. *Id.* at 43; Finewood's Sur-Rebuttal to Rebuttal Comments at 14-15. However, this calculation is still distorted because it [                                                      ]. *See* Coalition's Response to Comments at 25-26 & n.124; *see* Coalition's Rebuttal to STI at 14-16 (highlighting that certain [


]). Furthermore, as the Coalition has explained, it is not possible to differentiate the [

]. *See* Coalition's Response to Comments at 26 n.124. Consequently, Plaintiffs have failed to demonstrate either that Commerce's approach was unreasonable or that the proposed alternative approach was usable, much less that Commerce was necessarily obligated to utilize it.

Finally, Plaintiffs claim that the U.S. sales value used by Commerce was improper because it [                                    ]. Finewood Br. at 43. However, this issue was not raised before Commerce in the administrative case briefs. While Finewood argued in its case brief that Commerce should not have used the sales value as the denominator, this was based on its contention that the agency's "{Factors of Production} methodology already distorted the base of comparison." Resubmission of DH Respondents Comments at Attachment, p. 40. In contrast, here, Plaintiffs argue that the U.S. sales price used by Commerce [

].[6] Finewood Br. at 43-44. As this issue was not previously raised, Plaintiffs have failed to exhaust their administrative remedies, and this argument should not be considered.

### 5.    Commerce's Level of Investment Analysis Was Reasonable and Supports Its Substantial Transformation Analysis

Finally, Plaintiffs claim that Commerce's determination that the level of investment in China to produce two-ply panels is greater than that required to assemble two-ply panels in Vietnam is unsupported by substantial evidence. *Id.* at 44-46; InterGlobal Br. at 38-44. This is based largely on Plaintiffs' contention that Commerce's consideration of the investment-to-sales amount was unreasonable. Finewood Br. at 44-46. As an initial matter, while Plaintiffs claim that

---

[6]    The Coalition also notes that it is not clear that the record supports Plaintiffs' claim that [                                                                                    ].

Commerce "refused to directly compare" investment levels, they do not argue that absolute investment levels should have been considered. *Id.* at 44-46. Instead, Plaintiffs argue that Commerce should have considered investment relative to sales volume in the companies' busiest month instead of investment relative to each companies' total sales volume over the same period. *Id.* at 44-46. However, as Defendant explained, Commerce disagreed with this approach because there was nothing on the record to suggest that sales volume in the busiest month was representative of production capacity or that capacity utilization for the two companies was similar. Def. Br. at 30-31. Indeed, to support their argument, Plaintiffs do nothing more than assert that they believe this to be a better comparison. Finewood Br. at 44-46. As such, Plaintiffs fail to identify any information that Commerce did not consider or otherwise demonstrate that Commerce's analysis was inappropriate.

### D.      Commerce Properly Rejected Untimely Filed New Factual Information

Plaintiffs argue that Commerce improperly rejected comments on the preliminary scope ruling as containing untimely new factual information. *Id.* at 24-27. As explained in detail by Defendant, Commerce has developed regulations that govern the submission of new factual information, and the Court has recognized that the agency has broad discretion to establish rules regarding these time limits. Def. Br. at 31-33. Here, Plaintiffs failed to submit certain information within the time limits established and, consequently, this information was rejected and removed from the record by Commerce. *Id.* In challenging this determination, Plaintiffs do not claim that their submission of information was timely, but instead assert that Commerce was required to review and consider this information because it constituted (k)(1) materials contained in the record for the underlying investigation. Finewood Br. at 25-27. However, Plaintiffs fail to demonstrate that Commerce is required to consider or accept this untimely filed information. While Plaintiffs

point to cases that discuss Commerce's use of the (k)(1) materials, in none of these cases did the Court state that Commerce must consider information that is not on the record or allow for the submission of untimely information. Instead, these cases generally discuss the circumstances in which Commerce should rely on the (k)(1) materials in a scope analysis. For example, in *TMB 440AE, Inc. v. United States*, the Court faulted Commerce for failing to consider the (k)(1) materials at all based on the agency's determination that the scope language was unambiguous. *TMB 440AE, Inc. v. United States*, 399 F. Supp. 3d 1314, 1322 (Ct. Int'l Trade 2019). Here, in contrast, Commerce considered the (k)(1) materials that were properly placed on the record. As such, these cases do not support Plaintiffs' argument. As Plaintiffs do not put forth any other basis for why their untimely information should have been accepted, their claim that Commerce improperly rejected untimely information must fail.

    **E.**    **InterGlobal Failed to Exhaust Its Administrative Remedies**

        As explained in Defendant's brief, InterGlobal failed to properly file comments on the preliminary scope ruling and thus failed to exhaust its administrative remedies with regard to issues that have been raised for the first time in this appeal.[7] Def. Br. at 34. As Defendant further explains, parties are required to exhaust administrative remedies before Commerce by raising all relevant issues in their administrative case briefs. *Id.* While there are exceptions to the exhaustion doctrine, none apply here. Most notably, a party may be excused from exhausting its administrative remedies where raising the argument at issue would have been futile or is a pure question of law. *See id.* at 35. As Defendant notes, neither of these exceptions apply here.

---

[7]    As further noted, with respect to arguments raised by InterGlobal that were also raised by the remaining Plaintiffs, these arguments have been addressed by Defendant and herein. *See* Def. Br. at 34.

With respect to futility, the U.S. Court of Appeals for the Federal Circuit has explained that this exception is "narrow" and does not apply simply where an adverse decision may have been likely. *Corus Staal BV v. United States*, 502 F.3d 1370, 1379 (Fed. Cir. 2007). Instead, "{t}he futility exception to the exhaustion requirement has been applied in situations in which enforcing the exhaustion requirement would mean that parties 'would be required to go through obviously useless motions in order to preserve their rights.'" *Id.* (internal quotations omitted) (quoting *Bendure v. United States*, 554 F.2d 427, 431 (Fed. Cir. 1977)). As Defendant explains, the record here does not support a conclusion that it would have been futile for InterGlobal to raise its arguments before Commerce. Def. Br. at 36.

Nor do the issues at hand fall within the exception for pure questions of law. As the Court has explained, this exception "applies only where the issue 'can be addressed without further factual development or further agency exercise of discretion.'" *Xir.jiamei Furniture (Zhangzhou) Co. v. United States*, 968 F. Supp. 2d 1255, 1267 (Ct. Int'l Trade 2014) (quoting *Itochu Bldg. Products v. United States*, 733 F.3d 1140, 1146 (Fed. Cir. 2013)). Or, "{p}ut another way, 'statutory construction alone must be sufficient to resolve the case.'" *Id.* (quoting *Consol. Bearings Co. v. United States*, 348 F.3d 997, 1003 (Fed. Cir. 2003)). Here, InterGlobal has raised no arguments that are pure issues of law. Instead, the arguments raised are fact intensive and rely on Commerce's exercise of its discretion in consideration of the record. As such, InterGlobal has failed to exhaust its administrative remedies with respect to certain issues and does not qualify for an exception to this requirement. Accordingly, these arguments should not be considered here.

## V.   **CONCLUSION**

For the reasons detailed above, the Coalition respectfully requests that the Court reject the arguments raised by Plaintiffs and affirm Commerce's scope determination.

**Consol. Ct. No. 22-00049**                              NON-CONFIDENTIAL VERSION

Respectfully submitted,

*/s/ Timothy C. Brightbill*
Timothy C. Brightbill, Esq.
Stephanie M. Bell, Esq.
Tessa V. Capeloto, Esq.

**WILEY REIN LLP**
2050 M Street NW
Washington, DC 20036
(202) 719-7000

*Counsel to Coalition for Fair Trade in
Hardwood Plywood*

Dated: December 9, 2022

<u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Chamber Procedure 2(B)(l), the undersigned certifies that this brief complies with the word limitation requirement. The word count for Response to Motion for Judgment on the Agency Record, as computed by Wiley Rein LLP's word processing system (Microsoft Word 2019), is 9,930 words.

<u>*/s/ Timothy C. Brightbill*</u>
(Signature of Attorney)

<u>Timothy C. Brightbill</u>
(Name of Attorney)

<u>Coalition for Fair Trade in Hardwood Plywood</u>
(Representative Of)

<u>December 9, 2022</u>
(Date)