PUBLIC VERSION

## UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE MARK A. BARNETT, CHIEF JUDGE

| | |
|---|---|
| VIETNAM FINEWOOD COMPANY LIMITED, FAR EAST AMERICAN, INC. AND LIBERTY WOODS INTERNATIONAL, INC., <br><br>         Plaintiffs, <br><br>   and <br><br> INTERGLOBAL FOREST LLC, <br><br>         Consolidated Plaintiff <br>     v. <br><br> UNITED STATES, <br><br>         Defendant, <br>   and <br><br> COALITION IN FAIR TRADE IN HARDWOOD PLYWOOD, <br><br>         Defendant-Intervenor | Consol. Ct. No. 22-00049 <br><br> **PUBLIC VERSION** |

## PLAINTIFFS' REPLY BRIEF IN SUPPORT OF RULE 56.2 MOTION

## FOR JUDGMENT UPON THE AGENCY RECORD

<div style="text-align:right">

Gregory S. Menegaz
J. Kevin Horgan
Judith L. Holdsworth
Alexandra H. Salzman
Vivien J. Wang
**deKieffer & Horgan, PLLC**
Suite 410
1090 Vermont Ave., N.W.  20005
Tel: (202) 783-6900
email:  gmenegaz@dhlaw.com
*Counsel to Plaintiffs Finewood, FEA, Liberty*

</div>

Dated: December 29, 2022

# TABLE OF CONTENTS

I.    Argument ..................................................................................................................1

    A.    Commerce Expanded the Orders by Reading Ambiguity Into The
          Scope Language When There Is None.................................................................1

    B.    K(1) Sources Confirm That Two-Ply Panels Are Not Subject to the
          Orders...............................................................................................................4

    C.    Substantial Transformation Test ......................................................................13

        1.  Product Properties, Essential Components/Characteristics, and
            End-Use..........................................................................................14

        2.  Nature and Sophistication of Processing....................................................17

        3.  Value-Added in Vietnam..............................................................................20

        4.  Level of Investment.......................................................................................23

II.   Conclusion ...............................................................................................................25

# TABLE OF AUTHORITIES

## CASES

*Albemarle Corp. & Subsidiaries v. United States*, 821 F.3d 1345 (Fed. Cir. 2016)....................21

*Bell Supply Co., LLC v. United States*, 348 F. Supp. 3d 1281 (CIT 2019)............................15, 24

*Bell Supply Co., LLC v. United States*, 393 F. Supp. 3d 1229 (CIT 2019)..................................13

*Boen Hardwood Flooring, Inc. v. United States*, 357 F.3d 1262 (Fed. Cir. 2004).........................2

*Dillinger France S.A. v. United States*, 350 F. Supp. 3d 1349 (CIT 2018) .................................23

*Fedmet Res. Corp. v. United States*, 755 F.3d 912 (Fed. Cir. 2014) ...............................8

*Maquilacero S.A. De C.V. v. United States*, 256 F. Supp. 3d 1294 (CIT 2017)...........................12

*Peer Bearing Co. – Changshan v. United States*, 128 F. Supp. 3d 1266 (CIT 2015) .................15

*Saha Thai Steel Pipe Pub. Co. v. United States*, 547 F. Supp. 3d 1278 (CIT 2021) ...................11

*Star Pipe Prods. v. United States*, 365 F. Supp. 3d 1277 (CIT 2019) ................................... 11-12

*Wheatland Tube Co. v. United States*, 161 F.3d 1365 (Fed. Cir. 1998) .......................................10

*Whirlpool Co. v. United States*, 890 F.3d 1302 (Fed. Cir. 2018) ...................................................2

## STATUTES

19 U.S.C. § 1673d(b)(1)(A)..........................................................................................................10

## REGULATIONS

19 CFR § 351.225(a)......................................................................................................................4

## ADMINISTRATIVE DECISIONS

*Hardwood Plywood from China*, Inv. Nos. 701-TA-565 & 731-TA-1341, USITC Pub.
4747, 2017 ITC LEXIS 1583 (Dec. 2017)................................................................. 10, 11-12, 14

*Multilayered Wood Flooring From the People's Republic of China: Final*
*Determination of Sales at Less Than Fair Value*, 76 Fed. Reg. 64,318 (Oct. 18, 2011)......... 22-23

Plaintiffs Vietnam Finewood Company Limited ("Finewood"), Far East American, Inc.

("FEA"), and Liberty Woods International, Inc. ("Liberty") (collectively, "Plaintiffs") hereby

reply to the response briefs of Defendant United States ("Defendant") and Defendant-Intervenor

Coalition for Fair Trade in Hardwood Plywood ("Petitioner").  *See* Defendant's Response to

Plaintiffs' Rule 56.2 Motion for Judgment on the Agency Record (Nov. 18, 2022) ("U.S. Rsp."),

**ECF 35**, and Defendant-Intervenor's Response to Motion for Judgment on the Agency Record

(Dec. 12, 2022) ("Pet. Rsp."), **ECF 38**.

## I.    Argument

### A.    Commerce Expanded the Orders by Reading Ambiguity Into The Scope Language When There Is None.

Plaintiffs demonstrated that Commerce's reading of the scope language unlawfully

expanded the scope of the underlying hardwood plywood Orders.  *See* Plaintiffs Rule 56.2

Memorandum In Support of Motion for Judgment Upon the Agency Record at 11-14

("Plaintiffs' R56.2"), **ECF 31-1**.  In the scope language, the term "certain veneered panels" in

the first sentence is immediately referenced in the second sentence as "other veneered panel" and

defined as a product "consisting of two or more layers or plies of wood veneer and a core, with

the face and/or back veneer made of non-coniferous wood(hardwood) or bamboo." Dep't

Commerce, Memorandum: *Enforcement and Protect Act (EAPA) Investigation No. 7252: Final

Scope Ruling* at 2, Scope of the Orders (Jan. 21, 2022), **P.R.[1]141, C.R.135**, ("Final Scope

Ruling"); Plaintiffs' R56.2 at 11-13.  Commerce in the second sentence clarified that "for

purposes of this proceeding," the term "hardwood and decorative plywood" encompasses (1)

---

[1] Antidumping Public Record, **ECF 23-1**, referenced as "**P.R.**," and Antidumping Confidential Record as
"**C.R.**," **ECF 23-2**.

generally flat, multilayered plywood, and (2) veneered panels, that meet the requirement of having at least three plies with at least one side of face/back of hardwood or bamboo veneer. *Id.*

Then, starting from the third sentence (in the first paragraph) through to the end of the scope language, which has <u>fourteen</u> paragraphs in total, Commerce consistently referred to subject merchandise as either "hardwood and decorative plywood" or "hardwood plywood." Final Scope Ruling at 2-5. This unequivocally demonstrates that there is only ***one*** category of in-scope product, i.e., the "hardwood and decorative plywood" defined in the <u>second</u> sentence of the scope language. Although Commerce has the authority to clarify an order's scope, it cannot interpret an order "in a way contrary to its terms," nor in a way "so as to change the scope of that order." *Whirlpool Co. v. United States*, 890 F.3d 1302, 1308 (Fed. Cir. 2018) (internal citation omitted).

Defendant wrongly maintains that there are two general types of in-scope products, *i.e.*, "hardwood and decorative plywood" and "certain veneered panels," and "certain veneered panels" is not defined in the scope language at all. U.S. Rsp. at 13. Defendant argues that the definition in the second sentence addresses "hardwood and decorative plywood" only and <u>not</u> "certain veneered panel." U.S. Rsp. at 13. This argument ignores Plaintiffs' analysis of the terms "certain" and "other" that precede "veneered panels" as quantifiers. Plaintiffs' R56.2 at 13. Nor does Defendant address Plaintiffs' analysis that Plywood defined by the Federal Circuit in *Boen Hardwood Flooring, Inc. v. United States* and in the WCO requires the core of the merchandise also be made of veneer (or veneers). *Id.* For that reason, referencing the subject merchandise as both "hardwood and decorative plywood" and "certain veneered panel" prior to defining "veneered panel" and "hardwood and decorative plywood" collectively as hardwood plywood for purposes of the underlying proceeding was not superfluous.

By Defendant's logic, if the term "other veneered panels" defined in the second sentence were not used to reference the term "certain veneered panels," the inclusion of "certain veneered panels *as described below*" in the first sentence would be superfluous.  Plaintiffs' R56.2 at 12-13.  Moreover, if the second sentence is meant to define "hardwood and decorative plywood" only, the inclusion of the term "or other veneered panel" would be unnecessary and confusing; instead, the second sentence would read "{f}or purposes of this proceeding, hardwood and decorative plywood is defined as a generally flat, multilayered plywood ~~or other veneered panel~~, consisting of two or more layers or plies of wood veneers and a core, …." *Id.*

Petitioner argues that Plaintiffs failed to explain why this phrase necessarily means that "certain veneered panels" are defined in the second sentence of the scope.  Pet. Rsp. at 11.  If not in the second sentence, where below?  All remaining paragraphs in the scope language explicitly reference in-scope merchandise as "hardwood and decorative plywood" or "hardwood plywood." *See* Final Scope Ruling at 2-5.  By suggesting Commerce described "certain veneered panels" in any of those remaining paragraphs, Petitioner is agreeing with Plaintiffs' that starting from the second sentence and forward, the terms "hardwood and decorative plywood" or "hardwood plywood" include "certain veneered panels."

Defendant would have the Court to agree that the mere reference to "certain veneered panels" is a separate category of in-scope merchandise from hardwood plywood, not defined anywhere in the scope language, and therefore is ambiguous.  U.S. Rsp. at 13.  However, drafting the scope language in general terms (and thus creating some ambiguity) cannot be confused with Defendant's argument that Commerce completely failed to define one of the two categories of in-scope merchandise.  The latter, if true, runs afoul of the fundamental principle of fairness that guides the interpretation of a scope language.  Commerce publishes scope language

3

in the Federal Register to provide adequate notice to interested parties.  *See OMG, Inc. v. United States*, 972 F.3d 1358, 1364 (Fed. Cir. 2020) ("Indeed, 'the primary purpose of an antidumping order is to place foreign exporters on notice of what merchandise is subject to duties.'") (Internal citation omitted).  The description of the merchandise subject to an order must be sufficiently clear to put interested parties on notice so that the exporters have meaningful opportunities to participate in a proceeding that will substantially impact their export activities, and that the importers can know the kind of goods for which they will incur import AD/CVD liabilities.  Commerce even stated in its own regulation that "the descriptions of subject merchandise contained in the Department's determinations **must be** written in general terms."  19 C.F.R. § 351.225(a).  To that effect, the only reasonable reading of the plain scope language is that in-scope merchandise must have at least three layers or plies and at least one hardwood or bamboo veneer on the face or back.

## B.  K(1) Sources Confirm that Two-Ply Panels Are Not Subject to the Orders.

In their briefs, Defendant and Petitioner argue that the scope provided in the petitions included a reference to "veneer core platforms," later defined as "two or more wood veneers that form the core of an otherwise completed hardwood plywood product," and that when "veneer core platforms" were removed, Petitioner added the term "certain veneered panels," thus confirming Petitioner's intent to include two-ply in the scope.  U.S. Rsp. at 14 & 16-17; Pet. Rsp. at 13-14.  They also assert that Commerce's express decision in the investigation's Preliminary Scope Decision supports including of two-ply in the scope.  *Id.*

As an initial matter, contrary to Defendant's and Petitioner's statements, Plaintiffs are not asking this Court to "reweigh the evidence before Commerce."  *Id.* at 16.  Rather, Plaintiffs ask this Court to reject Commerce's conclusion because the conclusion is contradicted by the

aforementioned record evidence.  Plaintiffs provided side-by-side comparison of the scope

language contained in the initial petition and in the final scope language.  *See* Plaintiffs' R56.2 at

15-16 (*citing* Finewood's Supplemental Questionnaire Response – Part IV, Information on

Substantial Transformation (Apr. 20, 2021) ("Finewood SQR Pt.IV"), **P.R.91-92, C.R.117-123**,

at Exhibits SQ1-25 (WileyRein, Re: Petitions for the Imposition of Antidumping and

Countervailing Duties, Vol. I, at 4-5 (Nov. 18, 2016) ("Petition Vol. I")) and SQ1-26

(WileyRein, Re: *Certain Hardwood Plywood Products from the People's Republic of China*

(Dec. 6, 2016)).  The Petition referred to in-scope merchandise "hardwood and decorative

plywood," "flat panel composed of an assembly of an assembly of two or more layers or plies of

wood veneers in combination with a core," and also by the name "hardwood and decorative

plywood ***panel***."  *Id.*  Thus, the three-ply requirement is clear.  Petitioner later revised the

language to "hardwood and decorative plywood and certain veneered panels" and "a generally

flat, multilayered plywood or other veneered panel."  *Id.*  This modification was made to

explicitly cover certain panel products of at least three-plies containing a non-veneered core,

contrary to the Customs' understanding of "plywood."  *Id.* at 15-17.

Petitioner's comments filed in the underlying investigation and Commerce's subsequent

preliminary scope memo confirm as much.  In explaining its objection to removing the phrase

"certain veneered panels" from the scope language, Petitioner stated that the WCO defines

plywood as being "three or more sheets of wood glued and pressed one on the other and

generally disposed so that the grains of successive layers are at an angle," while the WCO

defines a veneered panel "as a veneer of wood (in this case a hardwood) which has been affixed

to a base (including the core) of inferior wood or a non-wood product."  *Id.* at 17 (*citing*

Finewood Sur-Rebuttal (May 13, 2021), **P.R.107, C.R.127**, at Exhibit SR-1 (Dep't Commerce,

Re: Scope Comments Decision Memorandum for the Preliminary Determinations, at Cmt. 4
(Apr. 17, 2017) ("Inv. Prelim. Scope Memo")).  Immediately following this statement was
Petitioner's example of an in-scope veneered panel with oak veneers on the front and back with a
particle board or MDF core.  *Id.*

The WCO definition of veneered panel reads: "**Veneered panels**, which are panels
consisting of a thin veneer of wood affixed to a base, usually of inferior wood, by gluing under
pressure."  *See* Finewood SQR Pt.IV at Exhibit SQ1-50 (Apr. 20, 2021), **P.R.91-92, C.R.117-
123**. (Emphasis in original).  Petitioner recited the WCO definition almost word for word, with
the addition of two parentheses "(in this case a hardwood)" after "a veneer of wood" and
"(including the core)" after "a base" as qualifying criterion, respectively.  Indeed, "a base," as
stated in the WCO, can be a product of only one layer, but "a base (including the core)," as stated
by Petitioner, means a product of at least two layers – the *back* and the *core*.  One face veneer of
hardwood plus a two-layer base equals a product of three plies.  This phrase "a base (including
the core)" was adopted by Commerce in the investigation Preliminary Scope Ruling.  *See* Inv.
Prelim. Scope Ruling at Cmt. 4.

Defendant and Petitioner argue that Plaintiffs ignored that the Petition referenced "veneer
core platforms" which is "clearly describing two-ply panels."  U.S. Rsp. at 16-17; Pet. Rsp. at
13-14.  To be sure, Plaintiffs did not ignore that fact; instead, Plaintiffs noted that the scope
language in the Petition did not reference "veneer core platforms" as in-scope merchandise, but
was referenced in a paragraph defining "veneer."  *See* Plaintiffs' R56.2 at 18 (*citing* Petition Vol.
I at 4).  It was only in discussing which side of the veneer constitutes the face versus the back,
Petitioner stated "{f}or products that are entirely composed of veneer, such as Veneer Core
Platforms, the exposed veneers are to be considered the face and back veneers, in accordance

with the descriptions above."  Petition Vol. I at 5.  Then, in a different section of the Petition

describing "core," Petitioner stated that "{v}eneer core 'platforms' are included in the definition

of subject merchandise" and "{a} veneer core platform is defined as two or more wood veneers

that form the core…."  *Id.* at 7.  Defendant argues that this definition in the Petition clearly

indicates that in-scope merchandise covers two-ply, but it is far from clear.  Two-ply does not

have a core (because it only has a face and a back), so why is that definition provided in a

paragraph entirely dedicated to the "core" component?  Significantly, in the "Scope of

Investigation" section of the Petition, in-scope merchandise was described in the first two

sentences as "a flat panel composed of an assembly of two or more layers or plies of wood

veneers in combination with a core."  *Id.* at 4.

   Next, Defendant asserts that Commerce included two-ply panels in developing the

reporting method for in-scope merchandise because respondents could have contacted the

Commerce official in charge to modify this reporting field to include "02" under number of plies,

and this is "merely an 'additional product characteristic' not included in the CONNUM."  U.S.

Rsp. at 17-18.  Defendant's argument misses the mark.

   The "number of plies" field states:

**FIELD NUMBER 3.13: Number of Plies**

FIELD NAME:     NUMPLYU

DESCRIPTION:   Report the total number of plies in the product, including face and
back veneers.  Ensure that your response in this field is reported in
two digits.  For example, should your product include 5 plies, you
should report 05 in this field.

|  |  |
|---|---|
| 03 | 3 plies |
| 04 | 4 plies |
| 05 | 5 plies |
| 06 | 6 plies |
| 07 | 7 plies |
| 08 | 8 plies |
| 09 | 9 plies |
| 10-n | 10 plies |

Finewood Sur-Rebuttal, Exhibit SR-2 at 9 (Dep't Commerce, Re: Product Characteristics and

Deadline for Sections C and D of the Antidumping Duty Questionnaire (Jan. 12, 2017)

("CONNUM Memo")), **P.R.107, C.R.127.**  The absence of an "02" is indeed strong evidence

that Commerce itself did not consider two-ply panels in-scope to begin with.  The burden cannot

be shifted thus to all respondents to imagine every possible out of scope product and seek

clarification that it is not in scope.  Rather, "{i}t is Commerce's duty to define the scope of the

merchandise that will be investigated."  *Fedmet Res. Corp. v. United States*, 755 F.3d 912, 922

(Fed. Cir. 2014).

Meanwhile, Defendant failed to respond to Plaintiffs' argument regarding Field 3.6.

Plaintiffs' R56.2 at 20.  Field 3.6 is a component of the CONNUM, which respondents <u>cannot</u>

contact Commerce officials to change the reporting method.  CONNUM Memo at 5.  There are

other CONNUM components where respondents are afforded the option to choose "none," *see*

**Fields 3.10: Surface Coating** and **3.11: Minor Processing**, but Field 3.6 is not one of those.  *Id.*

This confirms again that Commerce understood that in-scope merchandise must have a core

component, which two-ply does not have.  Petitioner unconvincingly argues that Plaintiffs

"failed to explain why the 'other' category is necessarily limited to this description *{i.e., cores*

*made with multiple materials}* and could not be used for two-ply panels."  Pet. Rsp. at 15.  The

clear instruction in this CONNUM says that respondents are to use the "other" category "{i}f the

core layer(s) are made of multiple materials," so the field cannot be used for two-ply panels.

CONNUM Memo at 5.

Next, Defendant argues that Commerce need not issue supplemental questionnaires in the

investigation to clarify with respondents that two-ply is included in the scope, because in the first

administrative review, Chengen reported that all its sales to the U.S. are subject merchandise.

U.S. Rsp. at 18; *see also*, Pet. Rsp. at 15.  This argument fails on the most fundamental level –

the Period of Investigation and the first administrative review cover different time periods.

Defendant then argues that the Investigation Preliminary Scope Memo explicitly defines

"certain veneered panels" as a product with a minimum of two layers and no party commented

further or raised any objections to that.  *Id.* at 18-19.  First, as discussed above, the Investigation

Preliminary Scope Memo defined "certain veneered panels" as a product with a minimum of

three layers, i.e., having a face veneer affixed to a base (including the core).  Second, Petitioner's

comments leading up that memorandum clearly indicate the words "certain veneered panels" was

introduced to be deferential to the WCO definitions of plywood and veneered panels.  On a

related matter, Defendant never confronts Commerce's obvious error of finding that the one (and

only) example of "certain veneered panels" existed on the entire record described a hardwood

plywood product instead of a veneered panel.  Plaintiffs' R56.2 at 18 (*citing* Final Scope Ruling

at 19).

Additionally, Plaintiffs demonstrated that nothing in the ITC report gave any indication that the ITC ever investigated two-ply products, and Commerce's determination unlawfully expanded the scope to cover a product for which the ITC made no injury determination.  *See* Plaintiffs' R56.2 at 21-24.  Any affirmative AD/CVD finding by Commerce is limited to subject imports for which the ITC made an affirmative injury finding.  *Id*; *see* 19 U.S.C. § 1673d(b)(1)(A)(i)-(ii).  Otherwise, Commerce has no legal basis to impose AD/CVD duties because such action would result in the assessment of duties on "products intentionally omitted from the ITC's injury investigation."  *Wheatland Tube Co. v. United States*, 161 F.3d 1365, 1371 (Fed. Cir. 1998).  Commerce's finding that ITC investigated two-ply because two-ply is considered "certain veneered panel" is both circular and conclusory.  As Plaintiffs discussed, in the ITC report, in addition to block-quoting Commerce's scope definition, (which we note that the ITC does in all injury investigations,) the ITC provides *its* definitive understanding of the subject merchandise: "{h}ardwood and decorative plywood ***is a wood panel product made from gluing two or more layers of wood veneer to a core***."  *Hardwood Plywood from China*, Inv. Nos. 701-TA-565 & 731-TA-1341, USITC Pub. 4747, 2017 ITC LEXIS 1583, *16-17 (Dec. 2017) ("ITC Final Report") (emphasis added); Plaintiffs' R56.2 at 22.

As Defendant re-stated, Commerce found that "the ITC Final Report stated that a plywood core can be entirely composed of veneers to illustrate that a two-ply panel could also be considered a core."  U.S. Rsp. at 19-20.  This is illogical.  This sentence in the ITC Report states that a plywood core "can be entirely composed of veneers or other type of wood materials such as medium density fiberboard ("MDF"), particleboard, lumber, or oriented strand board."  ITC Final Report, 2017 ITC LEXIS 1583, *17.  Does this mean the referenced MDF, particleboard, lumber, and OSB were considered by ITC as in-scope merchandise as well?  *No*.  Indeed,

plywood "core" covers a wide variety of things but is not in-scope merchandise unless it meets

scope description of having at least three layers and has at least one face veneer of hardwood or

bamboo.

Defendant also argues that the three-ply nature of subject merchandise referenced by the

ITC was irrelevant because it does not apply to certain veneered panels, a product "distinct and

separate" from hardwood plywood.  U.S. Rsp. at 20.  If that were true, the fact that the ITC never

discussed two-ply "damns the strongest." *Saha Thai Steel Pipe Pub. Co. v. United States*, 547 F.

Supp. 3d 1278, 1298-99 (CIT 2021) (In remanding Commerce's determination that dual-

stenciled pipe is a type of "standard pipe" as covered in the scope language, the Court stated in

particular that no interested parties "has found a single instance of dual-stenciled pipe being

referenced as 'standard pipe' throughout the entire history of the Thailand Order and the sunset

reviews of that order.").  In the instant case, there is not a single instance throughout the ITC

investigation where two-ply was referenced as "certain veneered panels."

Moreover, in *Star Pipe Prods. v. United States*, the Court remanded Commerce's finding

that the Non-Malleable Cast Iron Pipe Fittings Order covers ductile iron flanges because

Commerce failed to analyze discussions in the ITC report that detracted from Commerce's

conclusion.  *Star Pipe Prods. v. United States*, 365 F. Supp. 3d 1277, 1284-86 (CIT 2019).  The

Court found "{b}ecause ductile flanged fittings are excluded from the scope of the domestic like

product (which the ITC defined as identical to the scope of the investigation), it cannot be

concluded that the ITC reached an affirmative injury or threat determination as to them."  Here,

regarding "domestic like product," the ITC stated that: "{i}n our preliminary determinations, we

defined a single domestic like product, coextensive with the scope of these investigations. *We*

*found that all hardwood plywood consisted of two or more layers of wood veneer glued to a core*

and was used in a range of interior applications…… In these final phase investigations, … we again define a single domestic like product corresponding to the scope." ITC Final Report, 2017 ITC LEXIS 1583, *19-20. (Emphasis supplied).  The ITC further stated that the "domestic industry" consists of "all U.S. producers of *hardwood plywood*."  *Id.* at *26. (Emphasis supplied).  Contrary to Petitioner's claim, there are indeed multiple places in the ITC's determination that demonstrate ITC did not investigate two-ply and never made an affirmative finding on two-ply.  Pet. Rsp. at 17.

Petitioner incorrectly asserts that *Maquilacero S.A. De C.V. v. United States* does not support Plaintiffs' case.  Pet. Rsp. at 16.  In *Maquilacero*, the Government unsuccessfully argued that Commerce properly considered the ITC's negative injury finding on mechanical tubing, but the ITC Report did not define the product and was thus "not helpful."  *Maquilacero S.A. De C.V. v. United States*, 256 F. Supp. 3d 1294, 1309-10 (CIT 2017).  The Court held that nothing in the ITC report suggests that the ITC considered stenciling, and therefore, Commerce's scope ruling unlawfully narrowed the exclusion by later imposing a stenciling requirement.  *Id.* at 1311. Here, ITC made an affirmative determination on "hardwood and decorative plywood" or "hardwood plywood," i.e., a wood panel of at least three plies.  ITC Final Report, 2017 ITC LEXIS 1583, *16-17, 19, 98.  Nothing in the ITC Report suggests that the ITC ever considered a two-ply as an exception of the three-ply rule.  Commerce's finding that the ITC Report was irrelevant, and two ply is within the scope even though it does not meet the three-ply rule, is an unlawful expansion of the Orders.

Lastly, the Government's defense of Commerce's rejection of certain quotes and citations in Plaintiffs' post-preliminary comments boils down to that they were factual information instead of legal authorities.  U.S. Rsp. at 31-33; *but see* Plaintiffs' R56.2 at 25-26.  However, the rejected

passages pertain to two scope comments filed by Petitioner in the investigation.  The fact that Commerce and Petitioner are now running away from the administrative history underlying the order is telling.

### C.  Substantial Transformation Test

Plaintiffs argued, unopposed, that the issue of whether Commerce's substantial transformation is supported by substantial evidence is moot if the Court determines that two-ply is not within the Orders.  Plaintiffs' R56.2 at 27-28.  Even if the Court agrees with Defendant that two-ply is within the Orders, the Court should find Commerce's determination under the substantial transformation test unsupported by record evidence.

First, the class or kind criterion should be given no weight based on record of this case. Plaintiffs' R56.2 at 29-30.  Defendant argues that where the upstream and downstream products are within the same class or kind, Commerce has found it weighs against a finding of substantial transformation.  U.S. Rsp. at 23-24; *see also*, Pet. Rsp. at 18.  However, Commerce's analysis of this criterion amounts to nothing more than "we decided they were the same, therefore they are the same."  *Bell Supply Co., LLC v. United States*, 393 F. Supp. 3d 1229, 1239 (CIT 2019) ("*Bell Supply VI*"); Plaintiffs' R56.2 at 29-30.  Commerce's finding that this criterion weighs against a finding of substantial transformation is at odds with *Bell Supply VI*'s holding that such circular argument "neither detracts from nor supports Commerce's totality-of-the-circumstances analysis."  *Id.*

Plaintiffs address Defendant's arguments regarding the other four criteria below.

### 1.   Product Properties, Essential Components/Characteristics, and End-Use

Commerce did not compare the essential components, physical characteristics, and intended use between the finished plywood Finewood produced and that of the two-ply. Plaintiffs' R.56.2 at 30-34.  The finished plywood consists of a graded face veneer, back veneer, core component, and glue in between all layers.  *Id.*  The process of laying multiple layers of veneers with their grain in alternating directions provides strength and stability to the finished product.  *Id.* at 31-32 (*citing* ITC Final Report).  The record contains photographs taken at Finewood's factory by its U.S. customer showing individual sheets of veneers, two-ply panels, and plywood (including Finewood's core platforms that are all at least 3-plies), demonstrating that two-ply panels are readily distinguishable from the more rigid core platforms and plywood. *Id.* (*citing* Finewood's SQR Pt.IV at Exhibit SQ1-28 (Photos), **P.R.91-92, C.R.117-123**).  As Plaintiffs explained, the photos in Exhibit SQ1-28 do not have a caption identifying two-ply, because that exhibit was originally filed in Customs' EAPA investigation and was not meant to show Customs two-ply specifically.  *Id.* at 32-33.  Online pictures posted by U.S. sellers of "two-ply veneer" further supports that two-ply does not exhibit the same stability and rigidity as plywood panels.  *Id.* at 33 (*citing* Finewood's SQR Pt.IV at Exhibit SQ1-35).

Two-ply has an ungraded face veneer glued to an ungraded back veneer, without the core components.  *Id.*  For that reason, two-ply purchased by Finewood cannot be directly used as finished plywood in construction of cabinets, furniture, architectural woodwork, wall paneling, manufactured home, RVs, etc.  *Id.* (*citing* ITC Final Report, 2017 ITC LEXIS 1573, *90 & Finewood's SQR Pt.IV, Exhibit SQ1-28).  Two-ply's commercial invoice demonstrates that it is sold by size only, while Finewood's finished hardwood plywood's invoice demonstrates that it is sold on the basis of grade, face veneer species, type of core, overall panel thickness, and CARB

14

certified.  *Id.* (*citing* Finewood SQR Pt.IV at 17 & Exhibits SQ1-33 – SQ1-34).

Defendant maintains that the two-ply Finewood purchased from China has its essential characteristics imparted in China when the two veneers are glued together into a panel.  U.S. Rsp. at 24-25; *see also*, Pet. Rsp. at 19.  This argument must fail because Commerce is required to conduct a <u>comparative</u> analysis of the input material (two-ply) and finished product (hardwood plywood) in terms of essential characteristics.  *See* Plaintiffs' R56.2 at 31 (*citing Bell Supply Co., LLC v. United States*, 348 F. Supp. 3d 1281, 1291 (CIT 2019) ("*Bell Supply IV)*), *Peer Bearing Co. – Changshan v. United States*, 128 F. Supp. 3d 1266, 1293 (CIT 2015)).

Commerce found that the essential characteristic of the two-ply is being "suitable for future use in the production of plywood."  *See* U.S. Rsp. at 24-25.  Commerce never disputed that Finewood's production turned two-ply into finished plywood, which means that it is <u>no longer</u> suitable for future use in the production of plywood.  The essential characteristic of the finished plywood is the strength and stability that provide structural support, and the graded, sanded, smooth face that is aesthetically pleasing.  Substantial transformation occurred because the essential characteristics of the downstream product, imparted in Vietnam, are different from that of the upstream two-ply.

Additionally, contrary to Defendant's claim, Finewood did not argue that the two-ply panels were not sanded or puttied in order to "minimize the labor associated with {the} two ply panels."  U.S. Rsp. at 25; *see also*, Pet. Rsp. at 20.  Before Finewood even knew that Commerce would look beyond the clear scope language to conduct a substantial transformation analysis, Finewood stated that "2-ply consists of 2 layers of core veneers already glued together." Finewood Questionnaire Response at 9 (Apr. 9, 2020) **P.R.26, C.R.3**.  "Finewood used {2-ply}

15

the same way as it would use other core veneers. … 2-ply goes through all the inspection, gluing, repair, and pressing processes as other veneer until the result is the core itself. The finished cores then undergo puttying and sanding processes before the face/back veneers enter such processes to be bound to the core and finished into plywood through additional processes …….” *Id.* at 10 & Exhibit 8 - Production Flowchart (pursuant to Commerce's request, this exhibit was updated in Exhibit SQ1-8 in Finewood's Supplemental Questionnaire Response – Part I (Mar. 30, 2021) ("Finewood SQR Pt.I"), **P.R.59, C.R.14-24**, to provide the machinery and narrative for each production step listed).

Surely, the two sheets of veneers were stacked with their grain in alternating directions prior being glued.  However, two-ply was not sanded or puttied in China; otherwise, Finewood would not have needed to undertake that process after gluing and pressing multiple sheets of two-ply into core platforms.  *See* Finewood SQR Pt.I at Exhibit SQ1-8; Finewood's SQR Pt.IV at Exhibit SQ1-28 (Picture #12 showing "poplar inner blanks being puttied and prepared for face and back veneer application (July 2018)").  Further, Finewood sands the core platform after the core materials went through gluing, cold pressing, repairing, hot pressing, and puttying.  *See* Exhibit SQ1-8.

Lastly, Plaintiffs addressed Commerce's criticism that Finewood did not distinguish the two-ply from the [    ]mm thick [        ] plywood Chengen sold during the first review. Plaintiffs' R56.2 at 33-34.  Plaintiffs demonstrated that besides the thickness, the two-ply products are not remotely comparable to Chengen's [        ] products.  *Id.*  Chengen's product in addition to having [                              ], also has [                    ] face veneers, [                ] back veneers, and went through the entire production process of plywood including [                                                    ].  *Id.* (*citing*

16

Chengen POR 1 Information at Exhibit AI-2 (Apr. 13, 2021), **P.R.62-94, C.R.25-96**).  Defendant did not address this, and Petitioner merely maintains that the thickness of two products is similar. Pet. Rsp. at 21.

### 2.  Nature and Sophistication of Processing

In comparing the production steps of two-ply manufactured in China, plywood manufactured in China, and plywood manufactured in Vietnam (by Finewood), Defendant maintains that Commerce properly included the initial three steps of "harvesting, debarking, and transporting of logs."  U.S. Rsp. at 27.  Defendant misconstrues Plaintiffs' argument, which is that all four initial steps should be discounted, i.e., "harvesting logs, transporting logs, [

            ], and debarking the logs."  Plaintiffs' R56.2 at 35-36.  Plaintiffs argued that the initial step should be log cutting, consistent with Chengen's production process flowchart and other record evidence.  *Id.*

In defending Commerce's decision to include any initial steps prior to log cutting, Defendant and the Petitioner were only able to point to *one* piece of record information, i.e., the Yalong Wood online publication submitted by Finewood, claiming that this article included the initial harvesting and debarking as part of the plywood production process.  U.S. Rsp. at 27 (*citing* Finewood SQR Pt.IV at Exhibit SQ1-37); Pet. Rsp. at 24.  As discussed in Plaintiffs' brief, Yalong Wood unequivocally discounted those steps as part of the plywood production process.  Plaintiffs' R56.2 at 35-36.  In Exhibit SQ1-13, Yalong Wood stated:

> Plywood production process: veneer peeling, drying, glue spreading, veneer composing, cold press, hot press, trimming, sanding, …….

Finewood SQR Pt.IV at Exhibit SQ1-37.  After the summary, Yalong illustrated production steps with pictures, beginning with "1. log cutting, … 2. veneer peeling & cutting, …" *Id.*  The very

first step Plaintiffs advocated for is "log cutting," as it is supported by Yalong's narrative description, and Chengen's production process. Plaintiffs' R56.2 at 36 (*citing* Exhibits SQ1-37 (Yalong article) & SQ1-38 (Chengen Production Flowchart)).

Petitioner asserts that Finewood did not argue that any of the contested initial steps were not undertaken. Pet. Rsp. at 23-24. Obviously, those steps were undertaken by someone - same as sourcing the tree seeds, planting the seeds, etc. However, as Finewood argued before the agency, those steps are clearly performed outside the plywood mill by farmers and suppliers not employed by the plywood mills and thus should not be included in this analysis. *See* DH Respondents - Resubmission of Comments on Preliminary Scope Ruling at 34-38 (Dec. 14, 2021), **P.R.138, C.R.134**.

Plaintiffs argued that Commerce arbitrarily included a step "[                    ]" in the China productions but not in Finewood's. *See* Plaintiffs' R56.2 at 36. Plaintiffs also challenged Commerce's decision to remove [          ] steps in Finewood's production process without providing any justification. *Id.* at 34. Defendant did not address these arguments in its brief. Nor did it defend Commerce's finding that debarking logs is a labor-intensive or resource-intensive step. *Id.* at 37. Plaintiffs also demonstrated that Commerce improperly relied on the plywood production process Petitioner placed on the record from a United Kingdom distributor of various merchandise unrelated to plywood, to which Defendant did not respond. *Id.* at 37-38. Indeed, as Plaintiffs recounted, Finewood's production in Vietnam involves [   ] steps, where there are only [   ] steps involved to produce finished plywood in China or [   ] steps to produce two-ply, strongly weighing in favor of finding Finewood's operation in Vietnam is substantial. *Id.* at 39.

Defendant maintains that Commerce correctly found the log peeling process in China sophisticated due to "the precise nature of the veneer peeling process."  U.S. Rsp. at 27-28.  In doing so, Defendant argues that the veneer peeling process is "precise" because veneers were peeled by highly sophisticated machinery that is tuned and adjusted to produce veneers in "fractions of a millimeter" thickness.  *Id.* (*citing* Final Scope Ruling at 36, which, in turn, cites Preliminary Scope Ruling at 24, **P.R.110, C.R.128**).  In the Preliminary Scope Ruling, Commerce stated that core veneer peeling machine "is calibrated to specific and precise sizes with finished product tolerance of as little as only [     ] mm per ply, suggesting a highly sophisticated and technical process."  Preliminary Scope Ruling at 24, **P.R.110, C.R.128**. Commerce never explained how it reached that [     ]mm per ply thickness tolerance.  The only record evidence Commerce cited was the 32-page BOM (with 16 pages being the English translation) in Chengen's supplemental questionnaire response, but as Plaintiffs discussed, "the referenced Chengen's exhibit makes no mention of veneer peeling machine," not did it discuss any per-ply tolerance requirement tracing back to core veneer peeling machines.  Plaintiffs' R56.2 at 38 (*citing* Chengen POR1 Records at Exhibit AI-5 (Chengen Section D Supplemental Response at Exhibit SQ3-24, BOM), **P.R.62-84, C.R.25-96**).  The thickness tolerance of the *finished plywood*, on the other hand, is not gained by peeling machines, but trimming and sanding the unfinished and then the finished plywood in several stages, which, in this case, were undertaken by Finewood in Vietnam.  *See id.* at 38-39.

Petitioner asserts that Plaintiffs failed to address Commerce's finding that Chengen's BOM showing the thickness of the veneers and the overall tolerance for the finished product (i.e., hardwood plywood) are precise measurements.  Pet. Rsp. at 25 (citing Final Scope Ruling at 36).  This argument has no merit.  First, in the portion Petitioner cited, Commerce did not state

that "thickness of the veneers" listed on Chengen's BOM was relevant to its decision.  Final

Scope Ruling at 36.  But even if Commerce did, this has nothing to do with the sophistication of

the veneer peeling machine.  A Bill of Material of finished plywood of X̲ thickness composed of

Y̲ layers of veneers of course would lay out the thickness of veneers used in each-ply, to set a

unified production standard among workers and minimize waste.  *See* Chengen's Exhibit SQ3-

24, **P.R.62-84, C.R.25-96**.  This is irrelevant to how sophisticated the peeling machine is.

Second, how can Plaintiffs address Commerce's finding other than what was already said, when

the one document Commerce cited contains no information supporting its decision?  Plaintiffs'

R56.2 at 38-39.

Notably, the record contains photos of a peeling machine from a veneer peeler that is "on

the more sophisticated end of the scale of veneer peelers in China."  *See* Finewood's Rebuttal to

Petitioner's Additional Information (Apr. 30, 2021) at Exhibit 1 (Pictures #12-14), **P.R.100,**

**C.R.125**.  The photos demonstrate that the peeling process consists of logs being "loaded with

manual labor and a very short feeder attachment into the peeling machine… {where} the log is

forced against the rollers with a blade." *Id.* at Exhibit 1, page 3 & Pictures #12-14.  The peeling

process is far from "sophisticated."

### 3.  Value-Added in Vietnam

Commerce's value-added calculation is based on two numbers – put simply – the cost of

the two-ply, and the cost of the finished plywood.  Plaintiffs challenged Commerce's calculation

of both as unreasonable.  Plaintiffs' R56.2 at 39-44.

Starting from the cost of the two-ply, Commerce stated that it prefers to build the cost

based on the Factors of Production (FOP) data based on the data from the Chinese manufacturer

of two-ply which Finewood consumed, but neither Defendant nor Petitioner dispute that such data does not exist on the record and is by no fault of Finewood.  *Id.* at 41.  In fact, the only FOP data that exists on the record is Chengen's contemporaneous FOP from AD POR 1.  While Commerce used Chengen's unit consumption rate in general, Commerce arbitrarily departed from Chengen's production process (i.e., starting from log consumption), and instead started the cost buildup from veneer consumption, i.e., the "intermediate methodology."  *Id.* at 39-41.

Defendant argues that "value added to the two-ply panels by Finewood in Vietnam is necessarily a company-specific analysis that should focus on the experience of the entity that is the subject of the analysis."  U.S. Rsp. at 29.  Defendant's one-sentence response ignores that the record contains no data from the actual two-ply manufacturer, so the two-ply FOP buildup, whether the one used by Commerce or the one Plaintiffs argued for, does not reflect the experience of the company who produced them.  Plaintiffs' R56.2 at 41.  Under the circumstances, Chengen's contemporaneous production data (based on its production method) is the only reasonable source.  In deviating from Chengen's production method, Commerce claimed that Chengen's data is not representative.  *See* Final Scope Ruling at 38-39.  However, by selecting Chengen as the *sole* mandatory respondent in the administrative review, Commerce has deemed Chengen representative of the entire Chinese plywood industry and cannot now find otherwise.  Plaintiffs' R56.2 at 40-41; *Albemarle Corp. & Subsidiaries v. United States*, 821 F.3d 1345 (Fed. Cir. 2016) ("The representativeness of the investigated exporters is the essential characteristic that justifies an 'all others' rate based on a weighted average for such respondents.") (Internal citation omitted).

Petitioner criticized the alternative Plaintiffs proposed in calculating the two-ply cost while Defendant did not.  Pet. Rsp. at 27.  Plaintiffs' alternative is indeed superior to

Commerce's current intermediate methodology, because if Chengen's data is unrepresentative – which it is not – why use the data at all when the surrogate value of Chinese two-ply exists on the record?

Next, with respect to the cost of finished plywood produced in Vietnam, Commerce declined to use the cost calculation and FOP data Finewood prepared, with the primary reason being that Finewood's cost calculation is not fully based on Finewood's actual consumption rates.  Final Scope Ruling at 39-40.  In doing so, Commerce plainly ignored record evidence that the consumption data of Finewood's main material inputs are all on the record, and Chengen's consumption rates can be used to substitute Finewood's because record evidence demonstrates that the entities share highly similar production processes.  Plaintiffs' R56.2 at 42-43.

Defendant claims that Finewood's cost calculation is based on non-market economy (NME) methodology; but Vietnam is a non-market economy country, just like China, and Commerce in fact used the NME methodology to calculate cost of the Chinese two-ply.  U.S. Rsp. at 29-30.  Commerce, and now Defendant, failed to explain the agency's arbitrary decision in using the NME methodology to calculate one cost but not the other.

Petitioner claims that Commerce "highlighted" that Finewood's cost calculation is distorted because not all plywood produced by Finewood used two-ply panels from China, followed by a new argument on inter-CONNUM analysis that Commerce never articulated in the Final Scope Ruling.  Pet. Rsp. at 27-28.  Nonetheless, as Finewood established in its rebuttal comments before the agency, Commerce has a long-standing practice of underlining disregarding any inter-CONNUM variations.  *See* Finewood Sur-Rebuttal at 13-14 (May 13, 2021), **P.R.107, C.R.127** (*citing Multilayered Wood Flooring From China* antidumping investigation, 76 Fed. Reg. 64318

(Oct. 18, 2011) and accompanying IDM at 34-35, and *Dillinger France S.A. v. United States*, 350 F. Supp. 3d 1349, 1369-70 (CIT 2018)).   Indeed, in *Dillinger France*, the Court, quoting Commerce's decision memo, held that "{t}he established CONNUMs are the foundation for reporting not only comparison and U.S. market sales, but also {the respondents'} costs of production..." *Dillinger France*, 350 F. Supp. 3d at 1369.

Additionally, Defendant maintains that using Finewood's U.S. sales price derived by Commerce was better than the FOP price because the former reflects the amount Finewood "actually sold the plywood produced using those two-ply panels to the United States."  U.S. Rsp. at 29-30.  Defendant failed to respond to Plaintiffs' argument that record evidence clearly shows that the price derived by Commerce [                                    ] and is therefore unusable. Plaintiffs' R56.2 at 43-44 (citing Finewood's initial questionnaire response and supplemental questionnaire response).  On this matter, Petitioner incorrectly argues that Plaintiffs failed to exhaust administrative remedies.  Pet. Rsp. at 28.  Plaintiffs already opposed Commerce using its derived U.S. sales price as the denominator, however, because such comparison is highly distorted.  DH Respondents Revised Cmts. at 40, **P.R.138, C.R.134**.  This is additional support of Plaintiffs' case that is manifested on the record.

### 4.  Level of Investment

In comparing Finewood's investment level with Chengen's, Plaintiffs argued that using the sales volume from the month in which the companies had the highest sales volume is more reasonable when the companies' capacity is missing from the record (because Commerce never requested such information).  Plaintiffs' R56.2 at 45.  Commerce did not dispute that the comparison of monthly sales volume provides no true information on the companies'

investments without their capacity information; nor did the Defendant. U.S. Rsp. at 30-31.

Instead, Defendant claims that Commerce's calculation is more reasonable because Commerce does not know whether both companies were operating at similar capacity utilization rates in their respective months with the highest sales volume. *Id.* While the capacity utilization rates, like capacities, are not on the record, common sense dictates that in the respective months where Finewood and Chengen each had their highest sales volume, they were producing at a level *most closely* resembling their capacity as compared to other months (with lower sales volume). Therefore, the Finewood-proposed investment calculation (i.e., Finewood – [          ]/M3 and Chengen – [          ]/M3) is more reasonable than Commerce's investment calculation (i.e., Finewood – [          ]/M3 and Chengen – [          ]/M3).

Commerce also erred when it found that its "level of investment" test weighed against finding substantial transformation because Finewood's investment is <u>smaller</u> than that of Chengen's. *See* Final Scope Ruling at 43. Unopposed by Defendant or Petitioner, Plaintiffs argued that the appropriate test is not whether one is "greater" than the other, but whether Finewood's plywood production <u>is significant as compared</u> to Chengen's. Plaintiffs' R56.2 at 46. Indeed, as summarized by the *Bell Supply* Court, Commerce stated that the proper comparison is whether the investment required for the processing performed in Indonesia is <u>small</u> <u>in comparison to</u> that required for a complete mill, not whether the processing in Indonesia requires less investment than that necessary for an integrated mill. *Bell Supply IV*, 348 F. Supp. 3d at 1295-96. Both Finewood and Chengen had the equipment to produce plywood from veneers. Finewood's investment is not small or insignificant as compared to Chengen's.

In sum, Commerce's five criteria of the substantial transformation, viewed together, weigh in favor of finding that substantial transformation occurred when Finewood produced finished plywood from two-ply raw materials.

## II.    CONCLUSION

For the foregoing reasons, Plaintiffs Finewood, FEA, and Liberty request that the Court reverse Commerce's Final Scope Ruling.

<div style="margin-left: 45%;">

Respectfully submitted,

/s/ *Gregory S. Menegaz*

Gregory S. Menegaz
J. Kevin Horgan
Alexandra H. Salzman*
Vivien Jinghui Wang**
**DEKIEFFER & HORGAN, PLLC**
Suite 410
1090 Vermont Ave., N.W.  20005
Tel: (202) 783-6900
email:  gmenegaz@dhlaw.com
*Counsel to Plaintiffs Vietnam Finewood Company Limited, Far East American, Inc., and Liberty Woods International, Inc.*

</div>

Date: December 29, 2022

<div style="margin-left: 45%;">

* Admitted to California Bar; practice supervised by attorneys of the firm who are active D.C. Bar members pursuant to D.C. Bar Rule 49(c)(8).

** Admitted to New Mexico Bar; practice limited to Federal International Trade Matters pursuant to D.C. Bar Rule 49(c)(2).

</div>

**Word Count Certificate of Compliance**

This brief has been prepared utilizing Microsoft Word 2021 using a proportionally spaced typeface (12 point Times New Roman font).

In accordance with this Court's Scheduling Order and the Chambers Procedures of the United States Court of International Trade, the undersigned certifies that his brief complies with the word limitations set forth.  Specifically, excluding those exempted portions of the brief, as set forth in 2 B (1) of the Chambers Procedures, I hereby certify that this brief contains **6,999** words. In accordance with the Chambers Procedures, this certified word count is based on the word count feature in the word processing system (Microsoft Word) used to prepare this brief.

/s/ Gregory S. Menegaz

Gregory S. Menegaz
**DEKIEFFER & HORGAN, PLLC**
Suite 410
1090 Vermont Ave., N.W.  20005
Tel: (202) 783-6900
Fax:  (202) 783-6909
email:  gmenegaz@dhlaw.com
*Counsel to Plaintiffs*