# UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE MARK A. BARNETT, CHIEF JUDGE

_____
|   |   |
|---|---|
| VIETNAM FINEWOOD COMPANY LIMITED FAR EAST AMERICAN, INC. AND LIBERTY WOODS INTERNATIONAL, INC., | ) ) ) ) |
| Plaintiffs, | ) ) |
| and | ) ) |
| INTERGLOBAL FOREST LLC, | ) ) |
| Consolidated Plaintiff, | ) ) |
| v. | ) ) |
| UNITED STATES, | ) ) |
| Defendant, | ) ) |
| and | ) ) |
| COALITION IN FAIR TRADE IN HARDWOOD PLYWOOD, | ) ) ) |
| Defendant-Intervenor. | ) ) |

Consol. Ct. No. 22-00049

**PUBLIC VERSION**

## CONSOLIDATED PLAINTIFF'S REPLY BRIEF IN SUPPORT OF RULE 56.2 MOTION FOR JUDGMENT ON THE AGENCY RECORD

Thomas H. Cadden
Ignacio J. Lazo
Cadden & Fuller LLP
2050 Main Street, Suite 260
Irvine, CA 92614
Tel: (949) 416-0245
Email: tcadden@caddenfuller.com
*Counsel to Consolidated Plaintiff,
Interglobal Forest LLC*

i

# TABLE OF CONTENTS

                                                                                                                              **Page(s)**

PRELIMINARY STATEMENT ...........................................................................................1

ARGUMENT .........................................................................................................................2

A.     Because The Confidential Version of IGF's Case Brief Was Timely Filed, Commerce's Rejection Of IGF's Case Brief And Its Rebuttal Brief Was An Abuse Of Discretion ........2

B.     Caselaw Has Previously Rejected The Very Same Late Filing Arguments Which Commerce Seeks To Assert Here ...................................................................................4

C.     IGF Acted With Alacrity And Due Diligence To Remedy Any Shortcomings With Respect To Its Filing .......................................................................................................6

D.     The Correspondence From Commerce Made It Unequivocally Clear That Any Request For Reconsideration Would Be Futile ..............................................................................9

E.     The Alleged Shortcomings in Documents Filed on Behalf of IGF Were Trivial .............10

CONCLUSION....................................................................................................................10

# TABLE OF AUTHORITIES

**CASES**

*Bosun Tools Co. v. United States*, 405 F. Supp. 3d 1359 (Ct. Int'l Trade 2019) ...................4, 5, 10

*Celik Halat v. Tel Sanayi A.S.*, 557 F. Supp. 3d 1348 (Ct. Int'l Trade 2022..........................6

**REGULATIONS**

19 C.F.R. § 351.303(b)(1)................................................................................................2, 3, 5

19 C.F.R. § 351.303(c).................................................................................................2, 3, 4, 5

PUBLIC VERSION

## Preliminary Statement.

Consolidated Plaintiff Interglobal Forest LLC ("IGF") submits this Reply Memorandum of Law (this "Reply") in support of its Motion for Judgment on the Administrative Record pursuant to Rule 56.2 of the Rules of the above-entitled Court and in reply to the response brief of Defendant United States ("Defendant"). *See*, Defendant's Response to Plaintiffs' Rule 56.2 Motion for Judgment on the Agency Record (Nov. 18, 2022) (the "Response"), ECF 35. Moreover, Consolidated Plaintiff IGF adopts the arguments made in Plaintiffs Vietnam Finewood Company Limited ("Finewood"), Far East American, Inc. ("FEA"), and Liberty Woods International, Inc. ("Liberty") (collectively, "Plaintiffs")'s Reply Brief (December 29, 2022) (ECF 42) to the Response.

The Response identifies two new Issues Presented for Review. *Viz.*:

> *3. Whether Commerce's rejection of portions of Finewood's administrative case brief for containing untimely new factual information was in accordance with law.*
>
> *4. Whether InterGlobal properly exhausted its administrative remedies and whether it waived its arguments with regards to its administrative case and rebuttal briefs.*

Response, Page 12 of 47. Because the Response fails to overcome the arguments initially asserted by Plaintiffs and by IGF, and because Issue No. 3 does not impact IGF, this Reply addresses itself solely to Paragraph 4.

1

**ARGUMENT**

**A. Because The Confidential Version of IGF's Case Brief Was Timely Filed, Commerce's Rejection Of IGF's Case Brief And Its Rebuttal Brief Was An Abuse Of Discretion.**

The Confidential Version of Commerce's Response asserts that "InterGlobal never properly filed its initial comments with Commerce. P.R. 127-131.[1]" Response, Page 14 of 47. The Response also asserts that, "As Commerce explained in its letter, InterGlobal's comments were untimely and included a number of procedural errors. Commerce Letter Re: INTERGLOBAL Comments, P.R. 126." Response, Pages 14-15.

Notably, however, Commerce concedes that, "on September 30, 2021, *two parts of InterGlobal's comments on the Preliminary Scope Ruling were submitted at 4:49 p.m. and 4:50 p.m.*, and two parts were submitted after the deadline, at 5:04 p.m. and 5:05 p.m. Attachment 1, P.R. 129. [Emphasis added.]" Response, Page 15 of 47.

As is its wont, Commerce cherry picks its facts. It neglects to distinguish that, taken together, the documents which IGF did *timely* file constituted IGF's *unredacted confidential* comments on the preliminary scope ruling. *See*, Electronic Submission Confirmation A-570-051 and C-570-052 – Scope Inquiry Response by Cadden & Fuller LLP for InterGlobal Forest Bar Code 4166287 and Bar Code 4166288 dated September 30, 2021. The documents which were filed four and five minutes late, respectively, constituted the *redacted public* version of those same comments. *See*, Electronic Submission Confirmation A-570-051 and C-570-052 – Scope Inquiry

---

[1] Antidumping Public Record, ECF 23-1, is referenced herein as "P.R.," and Antidumping Confidential Record as "C.R.," ECF 23-2.

Response by Cadden & Fuller LLP for InterGlobal Forest Bar Code 4166300 and Bar Code 4166301 dated September 30, 2021.

Commerce takes pains to cite that "19 C.F.R. § 351.303(b)(1) states that "{a}n electronically filed document must be received successfully in its entirety by the Department's electronic records system, ACCESS, by 5 p.m. Eastern Time on the due date." Response, Page 15 of 47. Commerce's analysis ignores, however, the provisions of 19 C.F.R. § 351.303(c) which provides that:

> (1) In general. If a submission contains information for which the submitter claims business proprietary treatment, the submitter may elect to file the submission under the one-day lag rule described in paragraph (c)(2) of this section. . . . .
>
> (2) Application of the one-day lag rule—
>
> (i) Filing the business proprietary document. ***A person must file a business proprietary document with the Department within the applicable time limit.***
>
> . . . .
>
> (iii) Filing the public version. ***Simultaneously with the filing of the final business proprietary document under paragraph (c)(2)(ii) of this section, a person also must file the public version of such document (see § 351.304(c)) with the Department.***

In other words, notwithstanding that language of 19 C.F.R. § 351.303(b)(1), the one-day lag rule recognizes that the essential element which must be satisfied is that Commerce timely receives an unredacted version of the confidential comments.

**B. Caselaw Has Previously Rejected The Very Same Late Filing Arguments Which Commerce Seeks To Assert Here.**

The importance of the fact that Commerce timely received an unredacted version document was deemed controlling in *Bosun Tools Co. v. United States*, 405 F. Supp. 3d 1359 (Ct. Int'l Trade 2019). The court in that case determined that:

> . . . Commerce abused its discretion by rejecting Chengdu's attempt to re-file the redacted version of a document it previously attempted to file on time but which, for reasons unclear on this record, only uploaded in part. Chengdu's counsel timely filed the complete unredacted version of the submission on ACCESS. The record is silent on whether the failure to upload resulted from some inadvertence on Chengdu's part or some problem with the ACCESS system. *It is clear, however, that before the relevant deadline expired Chengdu attempted to upload the redacted version of its submission but was only successful in uploading it in part and that it successfully uploaded the unredacted version in full.* . . . . As a result, *by the relevant deadline, Commerce received the complete unredacted version and a portion of the redacted version of Chengdu's submission.* . . . . Two days after the relevant deadline expired and within an hour of receiving two Workflow Rejection Notifications from Commerce staff with the directive to "refile th[e] [redacted] version with a cover letter and the narrative," . . . Chengdu's counsel complied and re-filled the complete redacted version of its submission. . . . . Subsequently, Commerce rejected and removed from the record all versions of Chengdu's submission and denied Chengdu's request for reconsideration.

*Bosun*, 405 F. Supp. 3d 1359, 1365 (Ct. Int'l Trade 2019).

Just as in the present case, Commerce argued that removing Chengdu's submission was justified because "Chengdu did not satisfy the requirements of 19 C.F.R. § 351.302(c)—filing an extension request and demonstrating that an "extraordinary circumstance" prevented timely filing—that would warrant consideration of its untimely submission." *Bosun*, 405 F. Supp. 3d at 1367. Chengdu did not request an extension either before or after the filing deadline expired.

The *Bosun* court rejected the argument of Commerce that a "bright-line" test applied. Instead, the court's opinion observed that:

> An extension request, however, presumes that the requestor did not or will not proffer a filing by the deadline set. That is not the situation here because Chengdu did timely proffer its submission. ***Commerce timely received the complete unredacted version of the submission on ACCESS, it also timely received an incomplete redacted version of the submission, and the redacted and unredacted versions of the same were timely served on all interested parties. The information in the submission was provided by the deadline set and the updated version of the submission, filed two-days late, related back to the original, timely filing.***

Bosun, 405 F. Supp. 3d at 1367.

Moreover, the *Bosun* court noted that, "Commerce has not explained why it would be burdensome to incorporate the information [that was timely filed]. Invocation of a "general prejudice stemming from late submissions" and the potential effect that cumulative late filings across all proceedings may have on Commerce's ability to administer its case load . . . do not

constitute a reasonable explanation given the facts of this case." *Bosun*, 405 F. Supp. 3d at 1365–66.

This is not the only instance in which the CIT has determined that Commerce has overstepped and taken an unduly harsh position. *See*, *Celik Halat v. Tel Sanayi A.S.*, 557 F. Supp. 3d 1348, 1361 (Ct. Int'l Trade 2022) which observed that:

> Defendant-intervenors argue that "to the extent [Celik] Halat's post-rejection request is deemed an 'untimely filed' extension request, [Celik] Halat failed to demonstrate that an extraordinary circumstance existed, as Commerce properly concluded." Def.-Intervenors' Resp. 19. But even were the court to presume, arguendo, that Celik Halat's representative had not described what Commerce would consider an "extraordinary circumstance"—and on these particular facts the court need not decide that issue—Commerce imposed a grossly disproportionate penalty for what essentially was a minor technical violation that had no discernible effect on the investigation. While Commerce has the authority to establish and enforce its own regulations, it is not free to apply its "extraordinary circumstance" rule in so harsh a way as to produce an unjust and punitive result. *See*, *F.lli De Cecco Di Filippo Fara S. Martino S.p.A.*, 216 F.3d at 1032 (cautioning against a punitive, as opposed to remedial, use of 19 U.S.C. § 1677e(b)).

**C. IGF Acted With Alacrity And Due Diligence To Remedy Any Shortcomings With Respect To Its Filing.**

Commerce maintains that it properly exercised its discretion because Chengdu did not comply with the 19 C.F.R. § 351.303 (2017) filing requirements, had notice that the cover letter and narrative portions of the redacted version of its submission did not upload to the Enforcement and Compliance's Antidumping and Countervailing Duty Centralized Electronic Service System ("ACCESS") before the filing deadline expired and did not request to extend the deadline at any point. *See*, Def.'s Resp. Mots. J. Agency R. at 11–20, Dec. 19, 2018, ECF No. 42 ("Def.'s Resp. Br."). Likewise, the Response completely ignores the fact that IGF immediately contacted Commerce and made repeated requests for instructions with respect of how it could remedy any problem relating to the delay in filing the redacted public version.

More particularly, on September 30, 2021 at 4:49 p.m. and at 4:50 p.m., Donald Corbett, a paralegal employed by counsel for IGF, received confirmation from the ACCESS Help Desk that IGF had timely filed both parts of the redacted version of its confidential Case Brief. Subsequently, at 4:54 p.m. and 4:56 p.m., Mr. Corbett received notice from the ACCESS Help Desk that the redacted, public version of IGF's Case Brief had been rejected because it contained "unauthorized comments," identified as "hyperlinks," within the documents. Mr. Corbett immediately attempted to refile the documents, but received a second set of notices at 4:57 p.m. and 5:00 p.m. that the public version of IGF's Case Brief had again been rejected due to a remaining hyperlink and "unsearchable text." Mr. Corbett again refiled the public version of its Case Brief. He finally received confirmation from the ACCESS Help Desk that IGF had filed both parts of the unredacted public version of its Case Brief at 5:04 p.m. and 5:05 p.m. respectively.

Contrary to the assertion by Commerce that IGF did not contact the ACCESS Help Desk or Commerce until October 1, 2021, at 5:16 p.m. on September 30, 2021, Mr. Corbett emailed the

ACCESS Help Desk informing them that both parts of the redacted version of its confidential Case Brief had been timely filed, but that the public version had been filed in two parts, one of which was accepted at 5:04 p.m. and the other at 5:05 p.m. The email further provided a telephone number and email address and requested that ACCESS contact Mr. Corbett for filing assistance.

Despite the notification of a successful filing of the confidential version of the Case Brief, on the morning of October 1, 2021, Mr. Corbett received four separate emails indicating that the public and redacted versions of the Case Brief had now been rejected. Mr. Corbett again requested assistance from the ACCESS Help Desk on October 1, 2021 via telephone and email. Mr. Corbett was eventually directed to contact Mark Harrison, an analyst in the Office of Enforcement and Compliance with the International Trade Administration on the "case team" for "guidance re: refiling." See, email dated October 1, 2021 from Pamela Dow.

At 12:00 noon on October 1, 2021, Mr. Corbett responded to an email from Mr. Harrison, which provided case information and requested assistance so that IGF could refile the redacted public version of the IGF Case Brief and correct any clerical filing errors with the confidential Case Brief. Mr. Harrison directed Mr. Corbett to Nicolas Mayora, an International Trade Analyst, Enforcement and Compliance, Department of Commerce/International Trade Administration. On October 4, 2021, Mr. Mayora emailed Mr. Corbett and informed him that he was "still awaiting feedback on this issue" and "would get back to you as soon as I get any information."

Moreover, Mr. Mayora specifically directed Mr. Corbett to refrain from refiling the documents until he received further guidance from the "case team." *See*, among other communications, email dated October 4, 2021 from Mr. Corbett to Mr. Mayora). Commerce, however, never provided the further guidance it had promised.

Consequently, on October 5, 2021, Richard Reincke (another paralegal employed by counsel for IGF) emailed Mr. Mayora. Mr. Mayora again reiterated that he had directed IGF not to refile the documents pending further guidance from Commerce. Mr. Reincke reiterated to Mr. Mayora that the delay in providing guidance was further prejudicing IGF.

In response to that email, later that day, Mr. Corbett received a telephone call from Kabir Archuletta, Program Manager, Office V, Enforcement and Compliance, Commerce Department/International Trade Administration who informed Mr. Corbett that, "the matter is still being discussed internally – attorneys, staff and policy people are involved," that they understood the time-sensitive nature of the problem, and that Mr. Corbett would be contacted via letter.

Finally, on October 8, 2021, Mr. Corbett received a letter from Mr. Archuletta categorically claiming that the submissions were untimely and that the absence of a timely extension request "forecloses on the possibility of InterGlobal to submit its comments on the preliminary scope ruling."

**D. The Correspondence From Commerce Made It Unequivocally Clear That Any Request For Reconsideration Would Be Futile.**

As noted above, IGF had immediately asserted its rights and requested guidance from Commerce to refile the redacted version of its confidential case brief. Commerce responded by instructing IGF not to refile its redacted version of its Case Brief. The long string of emails and telephone calls made it clear that Commerce was treating the issue seriously. Ultimately, Commerce made it unequivocally clear that it would reject any unilateral attempt by IGF to remedy any defect in its filings.

9

Consistent with its prior statements, when IGF sought to advance its arguments in its subsequent rebuttal briefing, Commerce again rejected and removed from the record IGF's new filing, asserting Commerce's opinion that IGF's rebuttal brief contained untimely filed affirmative comments on the preliminary scope ruling rather than a rebuttal to arguments raised in the initial comments on the preliminary scope ruling by the other respondents, *See*, Letter from Kabir Archuletta dated October 15, 2021.

### E. The Alleged Shortcomings In The Documents Filed On Behalf of IGF Were Trivial.

Commerce also contends that IGF's filings, "contained numerous other procedural deficiencies." Allegedly, as a result of "numerous procedural errors" including conflicting statements on the proprietary or public nature of the documents, incorrect security classification, and a failure to state whether the documents may or may not be released under the administrative protective order, all of IGF's submissions were rejected by the staff of Commerce's Central Records Unit. Attachment II, P.R. 130.

In reality, any defect could have been remedied easily. All that IGF needed to do was (1) refile the document under the proper security classification, (2) insert a statement that the document might be released under the APO, and (3) indicate the proprietary or public nature of the documents. *See* Footnote 5 to the letter from Mr. Archuletta dated October 8, 2021. That process would have taken approximately 30 minutes to complete. Instead, IGF dutifully deferred to the request by Commerce that IGF refrain from fixing the filing.

## **CONCLUSION**

On September 30, 2021, Commerce possessed a timely-filed unredacted version of IGF's comments. For the reasons articulated in the *Bosun* case discussed above, Commerce knew all that it needed to know about IGF's substantive comments. As the case law holds, it would be willful and capricious for Commerce to claim that it was prejudiced because of a five-minute delay in finally getting the public version uploaded.

The claim that there were technical defects in the filing is a slender reed upon which to try to claim prejudice. If Commerce had bothered to respond substantively to the repeated inquiries from the attorneys for IGF, any such trivial omissions could have been remedied the following day.

Instead Commerce delayed and now has the brazen temerity to impliedly suggest that it might have relented if only IGF had taken further action. It is clear under the circumstances that it would have been futile to ask Commerce to reconsider its decision. Having had ample time to review the merits of IGF's claims, it appears that Commerce saw an opportunity to dodge a bullet.

For the reasons articulated in the briefs previously filed in this case, Commerce cannot justify its errors and oversights. Therefore, Consolidated Plaintiff IGF requests that the Court reverse Commerce's Final Scope Ruling.

Dated: December 29, 2022                    Respectfully submitted,
　　　　　　　　　　　　　　　　　　　　　　　　　/s/ Ignacio J. Lazo
　　　　　　　　　　　　　　　　　　　　　Ignacio J. Lazo
　　　　　　　　　　　　　　　　　　　　　CADDEN & FULLER LLP
　　　　　　　　　　　　　　　　　　　　　2050 Main Street, Suite 260
　　　　　　　　　　　　　　　　　　　　　Irvine, CA 92614
　　　　　　　　　　　　　　　　　　　　　Tel.: (949) 788-0827
　　　　　　　　　　　　　　　　　　　　　Email: ilazo@caddenfuller.com
　　　　　　　　　　　　　　　　　　　　　Counsel for Plaintiff,
　　　　　　　　　　　　　　　　　　　　　InterGlobal Forest LLC

## Word Count Certificate of Compliance

This brief has been prepared utilizing Microsoft Word using a proportionally spaced typeface (Times New Roman 12). In accordance with this Court's Scheduling Order and the Chambers Procedures of the United States Court of International Trade, the undersigned certifies that his brief complies with the word limitations set forth. Specifically, excluding those exempted portions of the brief, as set forth in 2 B (1) of the Chambers Procedures, I hereby certify that this brief contains 2,817 words.

In accordance with the Chambers Procedures, this certified word count is based on the word count feature in the word processing system (Microsoft Word) used to prepare this brief.

      */s/ Ignacio J. Lazo*
Ignacio J. Lazo
CADDEN & FULLER LLP
2050 Main Street, Suite 260
Irvine, CA 92614
Tel.: (949) 788-0827
Email: ilazo@caddenfuller.com
Counsel for Plaintiff,
InterGlobal Forest LLC