Slip Op. 23-58

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| VIETNAM FINEWOOD COMPANY LIMITED, FAR EAST AMERICAN, INC., AND LIBERTY WOODS INTERNATIONAL, INC., <br><br> Plaintiffs, <br><br> and <br><br> INTERGLOBAL FOREST, LLC, <br><br> Consolidated-Plaintiff, <br><br> v. <br><br> UNITED STATES, <br><br> Defendant, <br><br> and <br><br> COALITION FOR FAIR TRADE IN HARDWOOD PLYWOOD, <br><br> Defendant-Intervenor. | Before: Mark A. Barnett, Chief Judge <br> Consol. Court No. 22-00049 |

## <u>OPINION AND ORDER</u>

[Remanding the U.S. Department of Commerce's scope determination for the antidumping duty and countervailing duty orders on certain hardwood plywood from the People's Republic of China; directing Commerce to correct the administrative record; dismissing Plaintiff Vietnam Finewood Company Limited from the action.]

Dated: April 20, 2023

<u>Gregory S. Menegaz</u> and <u>Vivien J. Wang</u>, deKieffer & Horgan, PLLC, of Washington, DC, argued for Plaintiffs.  With them on the brief were <u>J. Kevin Horgan</u>, <u>Judith L. Holdsworth</u>, and <u>Alexandra H. Salzman</u>.

Consol. Court No. 22-00049                                             Page 2

Thomas H. Cadden, Cadden & Fuller LLP, of Irvine, CA, argued for Consolidated Plaintiff.

Hardeep K. Josan, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of New York, NY, argued for Defendant.  With her on the brief were Brian M. Boynton, Principal Deputy Assistant Attorney General, Patricia M. McCarthy, Director, and Tara K. Hogan, Assistant Director.  Of counsel on the brief was Savannah R. Maxwell, Attorney, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce, of Washington, DC.

Stephanie M. Bell, Wiley Rein LLP, of Washington, DC, argued for Defendant-Intervenor.  With her on the brief were Timothy C. Brightbill and Tessa V. Capeloto.

Barnett, Chief Judge:  This consolidated action involves a challenge to a U.S.

Department of Commerce ("Commerce" or "the agency") scope determination for the

antidumping duty and countervailing duty orders on certain hardwood plywood from the

People's Republic of China ("China").  *See* Compl., ECF No. 8; Confid. Final Scope

Ruling ("Final Scope Ruling"), ECF No. 34-1; *see also Certain Hardwood Plywood*

*Products From the People's Republic of China*, 83 Fed. Reg. 504 (Dep't Commerce

Jan. 4, 2018) (am. final determination of sales at less than fair value, and antidumping

duty order) ("*Plywood AD Order*"); *Certain Hardwood Plywood Products From the*

*People's Republic of China*, 83 Fed. Reg. 513 (Dep't Commerce Jan. 4, 2018) (CVD

order) ("*Plywood CVD Order*") (together, "the *Plywood Orders*").[1]  The *Plywood Orders*

cover, *inter alia*,

---

[1] The administrative record associated with Commerce's scope determination is contained in public and confidential administrative records filed in the antidumping and countervailing proceedings underlying the *Plywood Orders*.  *See* ECF Nos. 23-1 through 23-4.  Consistent with the parties, and for ease of reference, the court cites to documents contained in the public antidumping record ("PR"), ECF No. 23-1, and the confidential antidumping record ("CR"), ECF No. 23-2.  Plaintiffs also filed joint

>hardwood and decorative plywood, and certain veneered panels as
>described below.  For purposes of this proceeding, hardwood and
>decorative plywood is defined as a generally flat, multilayered plywood or
>other veneered panel, consisting of two or more layers or plies of wood
>veneers and a core, with the face and/or back veneer made of non-
>coniferous wood (hardwood) or bamboo.

*Plywood AD Order*, 83 Fed. Reg. at 512; *Plywood CVD Order*, 83 Fed. Reg. at 515.[2]

Plaintiffs, Vietnam Finewood Company Limited ("Finewood"), Far East American,

Inc. ("FEA"), and Liberty Woods International, Inc. ("Liberty") (collectively, "Plaintiffs"),

and Consolidated Plaintiff InterGlobal Forest, LLC ("IGF"), challenge Commerce's

interpretation of the scope of the *Plywood Orders* to include two-ply panels imported

from China into Vietnam and Commerce's determination that hardwood plywood

manufactured by Finewood in Vietnam using such Chinese two-ply remains in-scope

based on the absence of a substantial transformation.  Confid. Pls. Rule 56.2 Mem. in

Supp. of Mot. for J. Upon the Agency R. ("Pls.' Mem."), ECF No. 31-1; Confid. Consol.

Pl. [IGF] Rule 56.2 Mem. in Supp. of Mot. for J. Upon the Agency R. ("Consol. Pl.'s

Mem."), ECF No. 30-1.  Plaintiffs also challenge Commerce's rejection of portions of

Finewood's initial scope comments.  Pls.' Mem. at 24–27.

Defendant United States ("the Government") and Defendant-Intervenor Coalition

for Fair Trade in Hardwood Plywood ("the Coalition") urge the court to sustain

---

appendices containing record documents cited in Parties' briefs.  *See* Confid. J.A.
("CJA"), ECF Nos. 46 (Tabs 1–17), 46-1 (Tabs 18–31); Public J.A., ECF No. 47; Public
Revised J.A. Tab 19, ECF No. 54.  The court references the confidential documents
unless otherwise specified.

[2] When referencing specific scope language that appears in both orders, the court cites
to the antidumping duty order.

Commerce's scope ruling and deny the motions in all other respects.  Confid. Def.'s

Resp. to Pls.' Rule 56.2 Mot. for J. on the Agency R. ("Def.'s Resp."), ECF No. 35;

Confid. Resp. to Mot. for J. on the Agency R. ("Def.-Ints.' Resp."), ECF No. 38.[3]

For the reasons discussed herein, the court remands Commerce's determination

that two-ply panels are covered by the scope of the *Plywood Orders* but sustains

Commerce's treatment of Finewood's initial scope comments.  The court further finds

that certain of IGF's arguments are barred by the doctrines of waiver and administrative

exhaustion, and that Finewood must be dismissed from the action.

BACKGROUND

This matter arose following U.S. Customs and Border Protection's ("CBP")

issuance of a covered merchandise referral to Commerce as part of EAPA[4]

Investigation No. 7252 concerning possible evasion of the *Plywood Orders*.  *See*

Placement of Covered Merch. Referral Docs. on the R. (Jan. 21, 2020), PR 9–11, CJA

Tab 6 (attaching CBP referral letter, dated Sept. 16, 2019 ("CBP Referral")).  Section

1517 of Title 19 grants CBP authority to investigate allegations of evasion of

antidumping duty or countervailing duty orders.  19 U.S.C. § 1517 (2018).[5]  "Evasion" is

defined as:

---

[3] FEA, Liberty, and IGF are U.S. importers of hardwood plywood manufactured in Vietnam by Finewood.  *See* Final Scope Ruling at 2; Consol. Pl.'s Mem. at 1.  The Coalition represents domestic interests and was the petitioner in the investigation underlying the *Plywood Orders*.  Final Scope Ruling at 2.
[4] EAPA refers to the Enforce and Protect Act, Pub. L. No. 114–125, § 421, 130 Stat. 122, 161 (2016).
[5] All citations to the Tariff Act of 1930, as amended, are to Title 19 of the U.S. Code and all citations to the U.S. Code are to the 2018 edition, unless otherwise specified.

> entering covered merchandise into the customs territory of the United
> States by means of any document or electronically transmitted data or
> information, written or oral statement, or act that is material and false, or
> any omission that is material, and that results in any cash deposit or other
> security or any amount of applicable antidumping or countervailing duties
> being reduced or not being applied with respect to the merchandise.

*Id.* § 1517(a)(5)(A).  "Covered merchandise" means "merchandise that is subject to"

antidumping duty or countervailing duty orders issued pursuant to 19 U.S.C. § 1673e or

19 U.S.C. § 1671e, respectively.  *Id.* § 1517(a)(3).

In the underlying proceeding, CBP was unable to determine whether Finewood's

"[two]-ply cores of Chinese origin, which are further processed in Vietnam to include the

face and back veneers of non-coniferous wood, are within the scope of [the *Plywood*

*Orders*]."  CBP Referral at 2.  Under those circumstances, the statute directs CBP to

"refer the matter to [Commerce] to determine whether the merchandise is covered

merchandise pursuant to [Commerce's authority] under subtitle IV [of the Tariff Act of

1930]."  19 U.S.C. § 1517(b)(4)(A)(i).  On January 17, 2020, Commerce initiated a

scope inquiry.  *Certain Hardwood Plywood From the People's Republic of China*, 85

Fed. Reg. 3,024 (Dep't Commerce Jan. 17, 2020) (notice of covered merch. Referral

and initiation of scope inquiry).

To resolve the covered merchandise referral from CBP, Commerce applied its

regulation governing the issuance of scope rulings.  *See* Final Scope Ruling at 6–7.

That regulation recognizes that, because the descriptions of merchandise covered by

the scope of an antidumping or countervailing duty order must be written in general

terms, questions may arise as to whether a particular product is included within

the scope of an order.  *See* 19 C.F.R. § 351.225(a) (2020).[6]  In order to resolve such

questions, including in the context of CBP covered merchandise referrals, Commerce

issues "scope rulings" that clarify whether the product is in-scope.  *See id.*; Final Scope

Ruling at 6–7.  Although there are no specific statutory provisions that govern

Commerce's interpretation of the scope of an order, Commerce is guided by case law

and agency regulations.  *See Meridian Prods., LLC v. United States*, 851 F.3d 1375,

1381 (Fed. Cir. 2017) ("*Meridian 2017*"); 19 C.F.R. § 351.225.

      Commerce's inquiry begins with the relevant scope language.  *See, e.g.*, *OMG,*

*Inc. v. United States*, 972 F.3d 1358, 1363 (Fed. Cir. 2020).  If the scope language is

unambiguous, "the plain meaning of the language governs."  *Id.*  Commerce further

interprets the scope "with the aid of" the sources set forth in 19 C.F.R. § 351.225(k)(1)

(referred to as a "(k)(1) analysis," "(k)(1) sources," or "(k)(1) materials").  *Meridian 2017*,

851 F.3d at 1382 (citation omitted).  Subsection (k)(1) directs Commerce to consider the

descriptions of the subject merchandise in the petition, initial investigation, and prior

determinations by Commerce (including scope determinations) or the U.S. International

Trade Commission ("ITC").  19 C.F.R. § 351.225(k)(1).  If the (k)(1) sources are

dispositive, Commerce may issue its ruling based solely on the party's application and

---

[6] Commerce recently revised its scope regulations; however, the revisions apply "to scope inquiries for which a scope ruling application is filed . . . on or after the effective date" of November 4, 2021.  *See Regs. To Improve Admin. and Enforcement of Antidumping and Countervailing Duty Laws*, 86 Fed. Reg. 52,300, 52,300, 52,327 (Dep't Commerce Sept. 20, 2021).  Thus, the court cites to the prior scope regulations that were in effect when Commerce initiated this scope inquiry.  *See* Final Scope Ruling at 6 n.13.

the (k)(1) sources.  19 C.F.R. § 351.225(d).[7]  In all other cases, Commerce will initiate a

scope inquiry and may consider the factors enumerated in subsection (k)(2) of the

regulation.  *See Meridian 2017*, 851 F.3d at 1382 (citing 19 C.F.R. § 351.225(k)(2)).[8]

When Commerce "finds that a scope inquiry presents an issue of significant

difficulty, the [agency] will issue a preliminary scope ruling" and will allow time for initial

and rebuttal comments.  19 C.F.R. § 351.225(f)(3).  Commerce issued its preliminary

scope ruling in this case on August 26, 2021.  Prelim. Scope Ruling (Aug. 26, 2021), CR

128, PR 110, CJA Tab 2.  After finding the scope ambiguous and consulting the (k)(1)

sources, Commerce preliminarily concluded that the Chinese two-ply panels are within

the scope of the *Plywood Orders*.  *Id.* at 1.  Commerce further determined that

hardwood plywood produced by Finewood in Vietnam using Chinese two-ply was not

substantially transformed in Vietnam and, thus, entered the United States as a product

of China.  *Id.*

Commerce allowed interested parties to file comments on the preliminary scope

ruling.  *See* Prelim. Scope Ruling at 31.  Commerce subsequently rejected Finewood's

initial comments based on the inclusion of untimely new factual information.  *See* Letter

Re: [Finewood] Cmts. on the Prelim. Scope Ruling (Dec. 10. 2021) ("Commerce's Dec.

---

[7] To be dispositive, the (k)(1) factors "must be 'controlling' of the scope inquiry in the sense that they definitively answer the scope question."  *Sango Int'l L.P. v. United States*, 484 F.3d 1371, 1379 (Fed. Cir. 2007).

[8] The (k)(2) factors include: "(i) The physical characteristics of the product; (ii) The expectations of the ultimate purchasers; (iii) The ultimate use of the product; (iv) The channels of trade in which the product is sold; and (v) The manner in which the product is advertised and displayed."  19 C.F.R. § 351.225(k)(2).

10 Ltr."), PR 136, CJA Tab 30.  Finewood refiled its initial comments with those portions omitted under protest.  Resubmission of DH Respondents Cmts. on Prelim. Scope Ruling (Dec. 14, 2021) at 3, Attach. ("Pls.' Prelim. Scope Cmts."), CR 134, PR 138, CJA Tab 31.

Commerce rejected and did not retain on the record IGF's initial comments based on procedural errors and untimeliness.  *See* Letter Re: [IGF's] Cmts. on the Prelim. Scope Ruling (Oct. 8, 2021), PR 126, CJA Tab 25; Attachments to Oct. 8, 2021 Letter (Oct. 13, 2021), PR 128–31, CJA Tab 27.  Commerce rejected and removed from the record IGF's rebuttal comments based on the inclusion of untimely affirmative argument.  Letter Re: [IGF's] Rebuttal Cmts. on the Prelim. Scope Ruling (Oct. 15, 2021), PR 134, CJA Tab 29.

On January 21, 2022, Commerce issued its affirmative Final Scope Ruling.  Final Scope Ruling at 1.  On February 18, 2022, Plaintiffs filed a summons and complaint.  Summons, ECF No. 1; Compl.  On March 17, 2022, the Coalition intervened.  Order (Mar. 17, 2022), ECF No. 20.  On March 21, 2022, the court consolidated IGF's action under this lead case.  Docket Entry, ECF No. 22.  Following briefing on the merits, on March 21, 2023, the court heard oral argument.  Docket Entry, ECF No. 55; *see also* Oral Arg. (recording on file with the court).[9]

---

[9] Subsequent citations to the oral argument reflect the timestamp from the recording.

### JURISDICTION AND STANDARD OF REVIEW

The court has jurisdiction pursuant to section 516A(a)(2)(B)(vi) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1516a(a)(2)(B)(vi), and 28 U.S.C. § 1581(c).[10]  The court will uphold an agency determination that is supported by substantial evidence and otherwise in accordance with law.  19 U.S.C. § 1516a(b)(1)(B)(i).

"[W]hether the unambiguous terms of a scope control the inquiry, or whether some ambiguity exists, is a question of law that [the court] review[s] de novo." *Meridian 2017*, 851 F.3d at 1382.  Whether a product is covered by the language of the scope is "a question of fact reviewed for substantial evidence." *Id.*; *see also OMG, Inc.*, 972 F.3d at 1363–64 (discussing the standard of review).  "Commerce is entitled to substantial deference with regard to its interpretations of its own antidumping duty orders." *King Supply Co., LLC v. United States*, 674 F.3d 1343, 1348 (Fed. Cir. 2012).  Nevertheless, "Commerce cannot 'interpret' an antidumping order so as to change the scope of th[e] order, nor can Commerce interpret an order in a manner contrary to its terms." *Eckstrom Indus., Inc. v. United States*, 254 F.3d 1068, 1072 (Fed. Cir. 2001) (citation omitted).

---

[10] Plaintiffs also alleged jurisdiction pursuant to 28 U.S.C. § 1581(i) based on CBP's premature liquidation of the subject entries.  Compl. ¶ 26.  However, the Government does not contest jurisdiction in this case pursuant to section 1581(c).  Remote Teleconf. (March 17, 2022) at 00:40–1:40 (time stamp from the recording, on file with the court).  Plaintiffs protested the liquidation of their entries, and CBP has suspended action on the protests.  Compl. ¶¶ 12, 16–17, 23; Compl. ¶¶ 13, 17, 23, *InterGlobal Forest LLC v. United States*, Court No. 22-cv-00053 (Feb. 2, 2022), ECF No. 7.

**DISCUSSION**

Plaintiffs and IGF challenge Commerce's determination that the Chinese two-ply panels imported into Vietnam are within the scope of the *Plywood Orders*.  Because the court finds that remand is required on that issue, the court does not reach parties' arguments regarding substantial transformation.[11]

## I.      Commerce's Scope Interpretation

Commerce determined there was an ambiguity in the written scope description requiring a (k)(1) analysis.  Final Scope Ruling at 9–11.  Plaintiffs and IGF challenge Commerce's finding of ambiguity and Commerce's analysis of the (k)(1) sources to include the Chinese two-ply panels within the scope of the *Plywood Orders*.

As previously stated, the scope of the *Plywood Orders* states:

> The merchandise subject to this investigation is hardwood and decorative plywood, *and certain veneered panels as described below*.  For purposes of this proceeding, hardwood and decorative plywood is defined as a generally flat, multilayered plywood *or other veneered panel, consisting of two or more layers or plies of wood veneers and a core*, with the face and/or back veneer made of non-coniferous wood (hardwood) or bamboo.

*Plywood AD Order*, 83 Fed. Reg. at 512 (emphasis added).  Upon review of this language, Commerce found that the scope "cover[s] two general types of merchandise"—hardwood and decorative plywood[12] and certain veneered panels—but that the second scope sentence defines only hardwood plywood.  Final Scope Ruling at

---

[11] Parties agree that the court need not address Commerce's substantial transformation analysis if the court finds two-ply panels beyond the scope of the *Plywood Orders*.  Pls.' Mem. at 27–28; Oral Arg. 1:53:00–1:54:30.

[12] For ease of reference, the court refers to "hardwood and decorative plywood" as "hardwood plywood."

9; *see also id.* at 11.  Commerce explained that a contrary interpretation of the second

sentence to describe certain veneered panels would render "the express inclusion of

'certain veneered panels' in the first sentence of the scope" superfluous.  *Id.* at 11.

Commerce concluded that "the scope is ambiguous with regard to 'certain veneered

panels,'" *id.* at 10 (footnote omitted), and thus, it is unclear "whether all in-scope

merchandise must be made of a minimum of three layers," *id.* at 11.

      With respect to the (k)(1) materials, Commerce first reviewed the final injury

investigation report prepared by the U.S. International Trade Commission ("ITC") and

concluded that it provided no basis to exclude two-ply from the scope of the orders.

Final Scope Ruling at 12–14.[13]  Commerce explained that investigation documents

provided to the ITC referenced "certain veneered panels"; the ITC found that the

domestic like product was coextensive with the scope; and the ITC did not expressly

exclude two-ply panels from its investigation.  *Id.* at 13–14.

      Next, Commerce considered language in the Petition and revisions to the scope

prior to initiation.  *Id.* at 14.  As part of the revisions, Commerce noted that the phrase

"veneer core platforms," a term defined in the Petition to include two-ply, was removed

from the scope and the phrase "certain veneered panels" was added.  *Id.* at 14–15.

Commerce explained that the record of the investigation fails to indicate the reason for

---

[13] Relevant portions of the ITC's report are reproduced in or appended to various record filings.  *See, e.g.*, Final Scope Ruling at 13 & n.54 (citing two such filings).  For ease of reference, the complete citation is Hardwood Plywood from China, Inv. Nos. 701-TA-565 and 731-TA-1341, Pub. 4747 (Dec. 2017) (final) ("ITC Report").

the change but maintained that the change was not intended to remove two-ply from the scope.  *Id.* at 15.

Commerce also explained that, in the preliminary scope memorandum filed in the underlying investigation ("Preliminary Investigation Scope Memo"), the agency defined "certain veneered panels" to mean "a veneer of hardwood which has been affixed to a base (including the core) of inferior wood or a non-wood product."  *Id.* at 16 & n.81 (citing Rebuttal to Substantial Transformation Info. (May 4, 2021), Ex. 1 (Scope Cmts. Decision Mem. for the Prelim. Determination (Apr. 17, 2017) ("Prelim. Inv. Scope Mem.")) at Cmt. 4, CR 126, PR 102, CJA Tab 21).  Commerce further explained that an example of a three-ply panel provided by the Coalition and referenced in the Preliminary Investigation Scope Memo described a hardwood plywood product, not a veneered panel.  *Id.* at 19 & n.99 (citing, *inter alia*, Prelim. Inv. Scope Mem. at Cmt. 4). Commerce stated that its "current understanding of the phrase 'veneered panels' means 'a veneer of hardwood affixed to a base, usually of inferior wood, by gluing under pressure, in accordance with the explanatory notes of the [Harmonized Tariff Schedule ("HTS")].'"  *Id.* at 17 & n.85 (citing Prelim. Scope Ruling at 14).

Commerce also addressed Finewood's argument that the product characteristics memorandum from the investigation ("Product Characteristics Memo") supported its view that Commerce did not intend to capture two-ply in the scope.  *Id.* at 19. Commerce explained that the Product Characteristics Memo "did not instruct respondents *not* to report two-ply panels."  *Id.* at 19 (emphasis added).  Commerce went on to explain that the Product Characteristics Memo "directed respondents to

report the number of plies of the product, with the option to create their own two-digit

codes (e.g., respondents could have reported '02' for a two-ply product) for any product

with a number of plies not listed." *Id.* at 19 & n.100 (citing Finewood Sur-Rebuttal to

Pet'r's May 4, 2021 Rebuttal Cmts. (May 13, 2021), Ex. SR-2 ("Prod. Characteristics

Mem."), CR 127, PR 107, CJA Tab 22).  Commerce further explained that "the number

of plies was not a physical characteristic used to define the reported products (also

known as control numbers or 'CONNUMs'); instead, it was merely an 'additional product

characteristic' not included in the CONNUM." *Id.* at 19 & n.101 (citing Prod.

Characteristics Mem.).

### A.  Parties' Contentions

Plaintiffs contend that Commerce erred in finding the scope ambiguous with

respect to the phrase "certain veneered panels" because the scope explicitly states that

such products are "described below."  Pls.' Mem. at 11.  They are, Plaintiffs contend,

because the second scope sentence uses the phrase "other veneered panel." *Id.* at 12

(emphasis omitted).  Plaintiffs assert that instead of clarifying the scope, Commerce has

impermissibly expanded it.  Pls.' Reply at 1–4; *see also* Consol. Pl.'s Mem. at 14, 17

(advancing similar arguments).  Plaintiffs further contend that record evidence

undermines Commerce's (k)(1) analysis.  Pls.' Mem. at 14–24; Pls.' Reply at 4–14; *see*

*also* Consol. Pl.'s Mem. at 17–19.

The Government urges the court to sustain Commerce's ambiguity finding

based on the lack of any explicit definition of "certain veneered panels."  Def.'s Resp. at

12.  Regarding Commerce's (k)(1) analysis, the Government contends that Plaintiffs

merely invite the court to reweigh the evidence and that Commerce's findings should be sustained.  *Id.* at 16–20.

The Coalition contends that Commerce met the "low threshold" applicable to ambiguity findings.  Def.-Int.'s Resp. at 9–10 (discussing *Laminated Woven Sacks Comm. v. United States*, 34 CIT 906, 914, 716 F. Supp. 2d 1316, 1325 (2010)).[14]  In addition to supporting the Government's arguments, *see id.* at 12, the Coalition further contends that the (k)(1) materials reflect their intent to include two-ply in the scope of the *Plywood Orders*, *id.* at 13–17.

### B.  Together, the Scope Language and the (k)(1) Sources Confirm the Unambiguous Scope of the *Plywood Orders*

Further background on the nature of the court's review of Commerce's scope ruling is helpful to the analysis.  In this case, Commerce characterized the existence of ambiguity in the scope language as "a condition precedent" for Commerce to consider the (k)(1) sources—effectively finding what some have inferred to be a "(k)(0)" step built into the agency's scope analysis (i.e., prior to (k)(1) and (k)(2)).  Final Scope Ruling at 11 n.45 (citing, *inter alia*, *Meridian 2017*, 851 F.3d at 1381).  Commerce's approach finds some support in the case law, *see, e.g.*, *OMG*, 972 F.3d at 1363, but, elsewhere,

---

[14] The Coalition argues that the phrase "as described below" following "certain veneered panels" could instead be interpreted to refer to the "14 additional paragraphs following the first paragraph, all of which provide information regarding the covered merchandise."  Def.-Int.'s Resp. at 11.  However, like the second scope sentence, subsequent scope paragraphs describing what is included in the scope are prefaced with the phrase "hardwood plywood."  The Coalition's argument that subsequent scope paragraphs may describe certain veneered panels is entirely inconsistent with its position that the second scope sentence *does not* describe certain veneered panels.

courts have acknowledged that Commerce's review of the scope language is

inseparable from consideration of the (k)(1) sources, *see, e.g.*, *Meridian Prods. v.*

*United States*, 890 F.3d 1272, 1277 (Fed. Cir. 2018) ("*Meridian 2018*") (stating that "the

plain language of an antidumping order is 'paramount,'" but that "[i]n reviewing the plain

language of a duty order, Commerce must consider [the (k)(1) sources]") (citation

omitted); *Shenyang Yuanda Aluminum Indus. Eng'g Co. v. United States*, 776 F.3d

1351, 1354 (Fed. Cir. 2015) (describing "a two-step process" in which "Commerce must

[first] consider the scope language contained in the order itself, the descriptions

contained in the petition, and how the scope was defined in the investigation and in the

determinations issued by Commerce and the ITC"); *ArcelorMittal Stainless Belg. N.V. v.*

*United States*, 694 F.3d 82, 87 (Fed. Cir. 2012) ("[T]he first step in a scope ruling

proceeding is to determine whether the governing language is in fact ambiguous, and

thus requires analysis of the regulatory factors [i.e., the (k)(1) sources] previously

outlined.  If it is not ambiguous, the plain meaning of the language governs.").

Despite what some might consider to be conflicting indications, the above-

referenced case law simply suggests there is no bright line, that Commerce's scope

analysis (and the court's corresponding review of that analysis) is "highly fact-intensive

and case-specific."  *King Supply*, 674 F.3d at 1345.  Thus, in some cases, an order's

scope, by itself, may be sufficiently plain in relationship to a particular product that no

resort to the (k)(1) sources is necessary.[15]  In other cases, however, it may be

necessary to consider the (k)(1) sources to confirm that the scope language plainly

speaks to the inclusion or exclusion of a particular product.  *See, e.g.*, *Meridian 2017*,

851 F.3d at 1383–84 (reviewing the scope language and finding that Commerce's

interpretation of such language was supported by earlier scope rulings) (citation

omitted); *ArcelorMittal*, 694 F.3d at 89–90 (finding a scope unambiguous "when read in

light of industry practice" and "Commerce's previous [scope] decision").

Whether resort to the (k)(1) sources is necessary to interpret the scope of an

order, the court reviews Commerce's ambiguity determination *de novo*.  *See Meridian*

*Prods. 2017*, 851 F.3d at 1382.  Thus, when the court finds that a scope is

unambiguous, Commerce may not deviate from the court's holding in that regard.  *See*

*ArcelorMittal*, 694 F.3d at 90 (stating the plain meaning of the scope language in terms

of the court's holding).  This case falls into the scenario in which the scope language,

when read together with (k)(1) sources, unambiguously establishes that the *Plywood*

*Orders* do not include Chinese two-ply panels.

Commerce rested its determination that the phrase "certain veneered panels"

was ambiguous on the agency's view that the second scope sentence (and, thus, the

---

[15] In a similar vein, the U.S. Court of Appeals for the Federal Circuit ("Federal Circuit")
has recognized that CBP effectively applies the scope language as it determines, "for
every imported product, whether the product falls within the scope of an antidumping or
countervailing duty order."  *Sunpreme Inc. v. United States*, 946 F.3d 1300, 1320 (Fed.
Cir. 2020) (en banc).  In recognizing CBP's authority to do so when an order is
ambiguous, the Federal Circuit also recognized that CBP makes such determinations
when "order[s] [are] clear and unambiguous."  *Id.* at 1318.  Similarly, Commerce may
find an order unambiguous such that any further scope inquiry is unnecessary.

remainder of the scope) defined only hardwood plywood.  Final Scope Ruling at 9.

From the outset, Commerce's interpretation of the scope to include two "distinct and

separate" products,[16] only one of which is described, is problematic in light of applicable

statutory provisions and Commerce's regulation.  Sections 1671e(a)(2) and 1673e(a)(2)

require Commerce to include in antidumping and countervailing duty orders "a

description of the subject merchandise."  19 U.S.C. §§ 1671e(a)(2), 1673e(a)(2).  While

that description need only contain "such detail as the [agency] deems necessary," *id.*,

Commerce's regulation presupposes at least a "general" description of the subject

merchandise, 19 C.F.R. § 351.225(a).[17]  These provisions serve to implement "the

primary purpose" of any unfair trade order, which "is to place foreign exporters on notice

of what merchandise is subject to duties."  *OMG*, 972 F.3d at 1364 (quoting

*ArcelorMittal*, 694 F.3d at 88).[18]  Commerce not only failed to address the

---

[16] Commerce described hardwood plywood and certain veneered panels as "distinct and separate" products in its (k)(1) analysis.  Final Scope Ruling at 13.

[17] For this reason, cases cited by the Coalition involving ambiguities in general scope descriptions are inapposite.  *See* Def.-Int.'s Resp. at 9.  In *Laminated Woven Sacks*, for example, the court sustained Commerce's clarification of general scope language covering subject merchandise "printed with three colors or more in register" to mean the number of inks used in printing and not the number of colors visible on the merchandise.  34 CIT at 913–15, 716 F. Supp. 2d at 1325–26.  Here, however, Commerce claimed that the ambiguity was related to the absence of any description of certain veneered panels and sought to describe such merchandise in the first instance in a scope ruling.  *See* Final Scope Ruling at 11.

[18] Commerce acknowledged the "fundamental principle that merchandise subject to an order must be the *type of merchandise described in the order* and from the particular country covered by the order," Prelim. Scope Ruling at 11 (emphasis added), but then failed to recognize the incongruity of its position that the *Plywood Orders* nowhere describe "certain veneered panels," *see id.* (stating that "the scope does not define 'certain veneered panels,'" or provide examples thereof).

consequences of its ambiguity determination in the context of these important considerations but took an interpretive approach which was at odds with them.

Commerce supported its determination that the second sentence of the scope defined only hardwood plywood by claiming that if that sentence "were intended to also define 'certain veneered panels,' the express inclusion of 'certain veneered panels' in the first sentence of the scope . . . would be unnecessary." Final Scope Ruling at 11. Accepting Commerce's position, however, would render the phrase "as described below" in the first sentence superfluous because certain veneered panels would not be described below. The Government's suggestion that "as described below" applies to hardwood plywood, Oral Arg. 05:45–06:55, does not remedy this problem because subsequent scope descriptions are prefaced with an identifying phrase such that this forecast of a description is unnecessary. Thus, Commerce's sole basis for finding that the second scope sentence does not describe certain veneered panels is unpersuasive.

Plaintiffs, on the other hand, read the first scope sentence as prefatory— introducing the products covered by the scope—while the second scope sentence serves to define the totality of the products, "[f]or purposes of this proceeding," as plywood or other veneered panels with coextensive definitions under the umbrella term of hardwood plywood. Pls.' Mem. at 11–12; *see also* Pls.' Reply at 1–2. The comma placement after "plywood" in the first scope sentence supports reading the phrase "and certain veneered panels as described below" to consist of a single independent clause such that the certain veneered panels *are* the "other veneered panel[s]" that Commerce "described below." *See Plywood AD Order*, 83 Fed. Reg. at 512. However, it is not

necessary to resolve this matter based on the scope language alone because the (k)(1)

sources establish the unambiguous meaning and show that Plaintiffs' interpretation

aligns with Commerce's intent at the time the agency issued the *Plywood Orders*.

Before turning to the (k)(1) sources, one additional point bears mentioning.

During oral argument, the Coalition asserted that finding the second scope sentence

unambiguously applicable to certain veneered panels does not end the inquiry.  Oral

Arg. 1:54:30–2:01:10.  According to the Coalition, the second scope sentence should

also be interpreted to describe a two-ply—not a three-ply—minimum requirement.[19]  *Id.*

However, the Coalition presented this argument to Commerce during the scope inquiry,

*see* Final Scope Ruling at 10 (summarizing the Coalition's arguments),[20] and

---

[19] Commerce looked to the (k)(1) sources for guidance on whether "veneered panels" may constitute "two-ply panels," and resolved that question in the affirmative.  Prelim. Scope Ruling at 13; Final Scope Ruling at 11.  Commerce's singular focus on the minimum ply requirement is problematic insofar as it ignores that all other characteristics of certain veneered panels would remain undefined because—according to Commerce—the scope describes only hardwood plywood.  Commerce's approach thus leaves open the possibility of piecemeal scope rulings (and litigation) concerning other aspects of subject veneered panels, including, for example, core composition (if any), surface coatings, and dimension.  *See Plywood AD Order*, 83 Fed. Reg. at 512.
[20] The Coalition argued that the second scope sentence "is more reasonably read" to define hardwood plywood as "consist[ing] of two or more layers or plies of: (1) wood veneer; and (2) a core."  Final Scope Ruling at 10.  The Coalition's argument is, however, premised on the omission of the plural form of "wood veneers" that Commerce used in the scope along with the singular "core."  *See Plywood AD Order*, 83 Fed. Reg. at 512 (referring to "two or more *layers or plies* of wood *veneers* <u>and</u> *a core*") (emphasis added).  The argument is further undermined by the Coalition's clear statement in its petition underlying the original investigation that "[h]ardwood plywood is comprised of a core sandwiched between two veneers," clearly describing a three-ply product. Finewood Suppl. Questionnaire Resp. – Part IV and Info. on Substantial Transformation (Apr. 20, 2021) ("Finewood Suppl. Resp."), Ex. SQ1-25 ("Petition") at 7, CR 117–23, PR 91–92, CJA Tab 18.

Commerce impliedly rejected this interpretation.  Commerce's statement that, "without a clear definition of certain veneered panels . . . it is unclear whether *all in-scope merchandise* must be made of a minimum of three layers," *id.* at 11 (emphasis added), indicates Commerce's understanding that at least *some* in-scope merchandise "must be made of a minimum of three layers."[21]  If Commerce had agreed with the Coalition that the second scope sentence encompassed two-ply panels, Commerce's review of the (k)(1) sources for a definition of certain veneered panels would have been unnecessary because there would be no distinction between the two types of subject merchandise. *But cf.* Final Scope Ruling at 13.  Thus, to the extent the Coalition intended to suggest that Commerce must further address the meaning of the second scope sentence if the court finds that "certain veneered panels" are described in that sentence, the court disagrees that any further consideration by Commerce is necessary.

As discussed below, the (k)(1) sources show both that Commerce intended to include subject merchandise with a minimum of three plies in the scope of the investigations *and* that Commerce only intended to include such merchandise—in other words, that the second scope sentence applies to all subject merchandise and that the second scope sentence unambiguously covers products of three or more plies.

---

[21] Further in, Commerce referred to a product containing face and back veneers and a core as a hardwood plywood product "as described in the scope definition of hardwood plywood."  Final Scope Ruling at 19.

### 1.   Revisions to the Proposed Scope Language Prior to Initiation

Commerce's review of the Coalition's revisions to the proposed scope language

prior to initiation of the investigations were cited in the agency's conclusion that certain

veneered panels include two-ply panels.  Final Scope Ruling at 15.  Commerce's

explanation is, however, circular, and unsupported by the record.

Revisions to the proposed scope of the investigations prior to initiation show that

the Coalition added the phrase "certain veneered panels" to the first scope sentence

when it added "other veneered panel[s]" to the second scope sentence.  *See* Finewood

Suppl. Resp., Ex. SQ1-26 (containing Exhibit 1 to the Coalition's Dec. 6, 2016, letter to

Commerce revising the proposed scope ("Revised Proposed Scope")).  Prior to the

revisions, the proposed scope language stated, in relevant part:

> The merchandise subject to this investigation is hardwood and decorative
> plywood.  Hardwood and decorative plywood is a flat panel composed of
> an assembly of two or more layers or plies of wood veneers in
> combination with a core.  The veneers, along with the core, are glued or
> otherwise bonded together to form a finished product. . . .  For products
> that are entirely composed of veneer, such as Veneer Core Platforms, the
> exposed veneers are to be considered the face and back veneers . . . .

Petition at 4–5.  Later in the Petition, though not in the section containing the proposed

scope language, the Coalition explained that "[v]eneer core 'platforms' are included in

the definition of subject merchandise" and that veneer core platforms are "defined as

two or more wood veneers that form the core of an otherwise completed hardwood

plywood product."  *Id.* at 7.

The Coalition's revised proposed scope language included "certain veneered

panels" and removed all references to "veneer core platforms."  *Compare* Revised

Proposed Scope at 1, *with, e.g.*, *Plywood AD Order*, 83 Fed. Reg. at 512; *see also* Pls.'
Mem. at 15–16 (summarizing the changes).  While Commerce did not address the fact
that the Coalition added "certain veneered panels" to the proposed scope language at
the same time it added "other veneered panel[s]," to the court it appears anomalous for
Commerce to have accepted those additions but now disclaim any relationship between
the nearly identical terms.  *See* Final Scope Ruling at 15.  Instead, Commerce focused
on the Petition's definition of the deleted term "veneer core platforms" to include a two-
ply panel.  *See id.* at 15 & n.70 (citing, *inter alia*, Petition at 7).  Commerce went on to
accept the Coalition's position that the proposed scope language therefore covered two-
ply panels.  *See id.* at 15 (stating that, "[a]s the petitioner notes, 'the removal of the
phrase veneer core platforms did not change the scope to remove two-ply panels'").
Commerce believed this fact to be "confirmed" by the addition of the reference to
"certain veneered panels" and Commerce's decision, discussed in more detail below, to
retain the phrase "certain veneered panels" in the scope over requests to delete the
term.  *Id.*

   While the Petition "may provide valuable guidance as to the interpretation of the
final order," the Petition "cannot substitute for language in the order itself."  *Duferco
Steel, Inc. v. United States*, 296 F.3d 1087, 1097 (Fed. Cir. 2002); *see also id.* at 1096–
98 (invalidating a scope ruling in which Commerce relied on language in a petition that
did not appear in the final order).  Commerce's explanation rests on finding an
equivalence between veneer core platforms and certain veneered panels.  *See* Final
Scope Ruling at 15.  However, as Commerce stated, "the record of this proceeding

contains *no information* relating to why the reference to veneer core platforms was

removed from the scope and certain veneered panels was added." *Id.* (emphasis

added).  Thus, Commerce's explanation has no basis in the record and the Petition's

references to veneer core platforms are of little, if any, value.

Moreover, Commerce's assumption that the original scope language proposed in

the Petition covered two-ply panels is unsupported.  While the Coalition provided a

definition of veneer core platforms that included two-ply panels, *see* Petition at 7, the

actual scope language proposed by the Coalition specified products consisting of "two

or more layers or plies of wood veneers in combination with a core," *id.* at 4 (further

stating that "[t]he veneers" (plural) are "glued or otherwise bonded" to "the core").  Thus,

while the Coalition may have defined veneer core platforms generally to consist of at

least two plies, the proposed scope language did not expressly include two-ply veneer

core platforms themselves and, instead, the scope appeared to require at least three

plies.  *See id.* [22]

---

[22] The change from "veneers in combination with a core" to "veneers and a core" is
immaterial.  While the hardwood plywood investigation was ongoing, Commerce issued
an interpretive note in the antidumping and countervailing duty proceedings concerning
multilayered wood flooring ("MLWF") from China clarifying that the phrase "two or more
layers or plies of wood veneer(s) in combination with a core" means "wood flooring
products with a minimum of three layers."  *Multilayered Wood Flooring From the
People's Republic of China*, 82 Fed. Reg. 27,799, 27,800 n.11 (Dep't Commerce June
19, 2017) (final clarification of the scope of the antidumping and countervailing duty
orders); *see also* Final Scope Ruling at 24 & n.133 (citing an earlier yet substantively
identical clarification of the MLWF orders).  Thus, the original scope language proposed
by the Coalition in the Petition, which incorporated the same language, reasonably must
be read to require a minimum of three plies.  By their own terms, subsequent revisions
to the proposed scope language by the Coalition were intended to clarify—not change—

### 2.  Commerce's Preliminary Investigation Scope Memo

As indicated above, in the Final Scope Ruling, Commerce also referenced its decision during the investigations not to remove the reference to certain veneered panels from the scope language.  Final Scope Ruling at 15.  By way of further background, following initiation of the investigations, an interested party submitted comments on the proposed scope language.  Prelim. Inv. Scope Mem. at Cmt. 4.  That interested party argued that the phrase "'certain veneered panels' should be removed" based on possible "confusion on covered products" given the lack of any "specific description of the physical characteristics or uses that define 'certain veneered panels' as distinct from the specifically defined 'hardwood and decorative plywood.'"  *Id.* According to Commerce, the Coalition responded as follows:

> Petitioners argue that the reference to "veneered panels" was included because the term "veneered panels" is a term used in the HTSUS and by the World Customs Organization (the WCO).  Petitioners state that the WCO defines plywood as being "three or more sheets of wood glued and pressed one on the other and generally disposed so that the grains of successive layers are at an angle."  Petitioners state that [the] WCO defines a veneered panel, on the other hand, as a veneer of wood (in this case a hardwood) which has been affixed to a base (including the core) of inferior wood or a non-wood product.  Petitioners state that an example of a veneered panel could be a three-ply hardwood panel with oak front and rear faces and with a core of particle board or a core of medium-density fiberboard (MDF).

---

the scope of the investigations.   *See* Revised Proposed Scope at 1–2; *cf.* Def.-Int.'s Resp. at 13 (in reference to the revisions, stating that "[t]he Coalition did not state that it was modifying the universe of merchandise covered nor does anything on the record indicate that this was the Coalition's intent").

*Id.* (footnotes omitted).  Based on this response, Commerce retained certain veneered

panels in the scope and expressly determined that "this phrase means, in the context of

this investigation, a veneer of hardwood which has been affixed to a base (including the

core) of inferior wood or a non-wood product."  *Id.*

Commerce's discussion of this information from the investigation in the Final

Scope Ruling suffers from several flaws.  First, Commerce's attempt to dismiss the

Coalition's earlier example of a three-ply panel as "a hardwood plywood product, rather

than a veneered panel," Final Scope Ruling at 19, is unsupported by both the text and

context of the Preliminary Investigation Scope Memo.  Indeed, the Government does

not defend this finding.  *See* Def.'s Resp. at 14–17.  The Coalition explicitly

characterized the example as "a veneered panel"; the example followed the Coalition's

explanation of the WCO's definition of a veneered panel; and the entire discussion was

intended to justify why Commerce should retain certain veneered panels in the scope.

*See* Prelim. Inv. Scope Mem. at Cmt. 4.

Additionally, in the Final Scope Ruling, Commerce clearly altered its definition of

certain veneered panels without explaining the basis for the changes or why the

changes should not be considered an impermissible enlargement of the scope.

Commerce explained that its altered "definition is generally consistent with the

definition" used "in the explanatory notes of the HTS."  Final Scope Ruling at 16.  While

that may be true, Commerce failed to explain why its "current understanding" of certain

veneered panels, *id*. at 17, comports with Commerce's understanding of the phrase during the investigation.[23]

In fact, Commerce's definition of certain veneered panels in the investigation appears to reconcile the scope language with the WCO's definition of relevant terms. The WCO defines "veneered panels" as "a thin veneer of wood affixed to a base, usually of inferior wood, by glueing [sic] under pressure."  Finewood Suppl. Resp., Ex. SQ1-50.  The WCO defines plywood as "three or more sheets of wood glued and pressed one on the other and generally disposed so that grains of successive layers are at an angle."  *Id.*  Commerce's scope, which provides for a core layer consisting of "a range of materials, including but not limited to hardwood, softwood, particleboard, or medium-density fiberboard," *Plywood AD Order*, 83 Fed. Reg. at 512, is inconsistent with the WCO's definition insofar as hardwood plywood defined by Commerce in the scope may contain a non-wood core.  Any such inconsistency is remedied, however, by the inclusion of "certain veneered panels" when such products are generally understood to have a core of an inferior wood or non-wood layer, *see* Finewood Suppl. Resp., Ex. SQ-50, and by Commerce's use of limiting language defining hardwood plywood solely "[f]or purposes of this proceeding," *Plywood AD Order*, 83 Fed. Reg. at 512.

---

[23] At oral argument, the Government explained that Commerce considered the meaning of the phrase certain veneered panels "more extensively" in the context of the scope inquiry than it apparently had during the investigation.  Oral Arg. 21:07–22:30. Regardless, counsel's explanation does not, however, operate to tie Commerce's current understanding of the phrase to the Commerce's intent when it issued the *Plywood Orders*.

### 3.  Commerce's Product Characteristics Memo

Commerce maintained that the Product Characteristics Memo from the investigation supported the finding that certain veneered panels "include products composed of two or more plies."  Final Scope Ruling at 19.  It does not.  Taken as a whole, Commerce's Product Characteristics Memo substantiates an intent to include three-ply—and only three-ply—in the scope of the investigations.

In the Product Characteristics Memo, Commerce required respondents to report a face veneer (fields 3.1 through 3.3); a back veneer (fields 3.4 through 3.5); and a core (field 3.6).  Prod. Characteristics Mem. at 1–5.  Commerce considered these characteristics necessary for CONNUM[24] purposes.  *See id.* at 1.  In field 3.6, Commerce used the "other" option to instruct respondents to report "core layer[s] . . . made of multiple materials," but did not instruct respondents to use this option to report the absence of a core layer.  *Id.* at 5.  In contrast, Commerce used the code "00" for "No Surface Coating" in field 3.10 and "None" for "Minor Processing" in field 3.11, reserving "Other" for reporting existent, but unspecified, information.  *Id.* at 7–8.  The Product Characteristics Memo therefore indicates that Commerce did not contemplate respondents reporting the absence of a core layer, as would be the case for two-ply panels.

_____

[24] CONNUM refers to "control number," which is a number designed to reflect the "hierarchy of certain characteristics used to sort subject merchandise into groups" and allow Commerce to match identical and similar products across markets.  *Bohler Bleche GmbH & Co. KG v. United States*, 42 CIT __, __, 324 F. Supp. 3d 1344, 1347 (2018).

For the number of plies, Commerce instructed respondents to report anywhere from three to 10 or more plies.  *Id.* at 9.  Commerce's assertion in the Final Scope Ruling that the Product Characteristics Memo contained "the option [for respondents] to create their own two-digit code" for an unlisted number of plies, such as "02" for two plies, is unsupported by the record.  Final Scope Ruling at 19.  The Product Characteristics Memo listed codes for products with three to ten plies and contemplated the creation of codes for "10-n" plies, i.e., more than 10 plies, but not for less than three plies.  Prod. Characteristics Mem. at 9.  Commerce's explanation again fails to account for Commerce's approach in other fields, which included "less than" options when necessary.  *See id.* at 3, 6, 8.  While "the number of plies was not a physical characteristic used to define the reported products," Final Scope Ruling at 19, Commerce offers no explanation for the lack of an explicit option to report two plies if, in fact, as Commerce now contends, two-ply panels were always considered to be in-scope.

### 4.  The ITC Report

Lastly, the ITC Report indicates that the ITC understood the subject merchandise to include three-ply products generally referenced as hardwood plywood.  The ITC Report stated:

> In our preliminary determinations, we defined *a single domestic like product, coextensive with the scope of these investigations.  We found that all hardwood plywood consisted of two or more layers of wood veneer glued to a core* and was used in a range of interior applications.
>
> ***

> Information in the final phase of these investigations about the characteristics of hardwood plywood is the same as that in the preliminary phase.  Accordingly, we again define a single domestic like product corresponding to the scope.

Pls.' Prelim. Scope Cmts. at 8–9 (quoting ITC Report at 9–10).[25]  The ITC Staff Report also described U.S. producers' hardwood plywood production to include the pressing of face and back veneers to a core.  *See* Resp. to the Dep't's Request for Add'l Info. (Apr. 20, 2021), Ex. 2, PR 94, CJA Tab 19 (reproducing ITC Report at I-16).

Commerce dismissed Finewood's arguments concerning the ITC's three-ply definition of hardwood plywood as "irrelevant" based on its theory that certain veneered panels and hardwood plywood "are distinct and separate" products.  *See* Final Scope Ruling 13.  Commerce also deemed it insignificant that the ITC Report contained no references to two-ply panels.  *See id*.  Commerce explained that the scope description provided to the ITC referenced "certain veneered panels" and the ITC found the

---

[25] While Commerce maintained that it cited only to portions of the ITC Report that parties had placed on the record, *see* Final Scope Ruling at 12–13, Commerce later acknowledged that no party placed page 9 of the ITC Report on the record, *see* Confid. Def.'s Post-Arg. Submission at 1, ECF No. 56.  Nevertheless, Commerce cited to page 9 of the ITC Report to support its preliminary ruling, *see* Prelim. Scope Ruling at 21 & n.122; Commerce did not reject Finewood's subsequent citations to that page or any other page of the ITC Report, *see* Commerce's Dec. 10 Ltr. at 2; and, in the Final Scope Ruling, Commerce reiterated the ITC's finding of a single like product coextensive with the scope of the investigations, *see* Final Scope Ruling at 13 & n.57 (citing Pls.' Prelim. Scope Cmts. at 8–9, in turn citing ITC Report at 9–10).  It is therefore clear that Commerce considered at least this additional portion of the ITC Report that was apparently never placed on the record.  The court will therefore direct Commerce to correct the administrative record such that it includes "all information presented to or obtained by the [agency]" pursuant to 19 U.S.C. § 1516a(b)(2)(A)(i) and CIT Rule 73.2(a)(1) or explain why correction is inappropriate.

domestic like product to be coextensive with the scope. *Id.* Commerce also stated that the ITC did not expressly exclude two-ply panels from its investigation. *Id.* at 13–14.

The lack of an express exclusion is beside the point. The purpose of a scope ruling is, first and foremost, to ascertain whether the scope can "reasonably be interpreted to include" the contested merchandise. *Duferco*, 296 F.3d at 1905. Thus, "Commerce cannot find authority in an order based on the theory that the order does not deny authority" to include two-ply as a result of an express exclusion. *Id.* at 1096. With respect to whether the ITC Report supports including two-ply in the scope, Commerce's reasoning is entirely circular. The issue is not whether the ITC referenced "certain veneered panels" in the report but whether the ITC understood the phrase to mean, and thus clearly investigated, two-ply panels. *See* Pls.' Mem. at 21–22. Commerce points to no affirmative record evidence that the ITC did so. In the absence of any such affirmative evidence, either of inclusion or exclusion of two-ply panels, the court finds that the ITC Report is inapposite to whether two-ply panels were included in the scope of its injury investigation.[26]

---

[26] The Coalition's argument that the ITC's definition of the domestic like product should not be read to include the universe of covered products is not persuasive. Def.-Int.'s Resp. at 16–17 (asserting that the ITC only referenced "gluing" when the scope provides that subject merchandise "may be glued *or otherwise bonded together*"). The ITC acknowledged that hardwood plywood products may be differentiated by, among other things, "the type of adhesive used in the manufacturing process." Pls.' Prelim. Scope Cmts. at 27 (quoting ITC Report at I-14).

### 5.  Summary and Conclusion

When read in light of the (k)(1) sources, it is clear that the scope of the *Plywood*

*Orders* unambiguously covers hardwood plywood and certain veneered panels that, for

purposes of the underlying proceeding, and from the second scope sentence onward,

are collectively described as hardwood plywood "consisting of two or more layers or

plies of wood veneers and a core," i.e., at least three plies.  Commerce's Final Scope

Ruling is therefore not in accordance with the law and will be remanded for Commerce

to issue a ruling consistent with this opinion.

## II.    Commerce's Rejection of Finewood's Citations to (k)(1) Sources

Commerce rejected portions of Finewood's comments on the preliminary scope

ruling.  Commerce's Dec. 10 Ltr.  Commerce took issue with Finewood's references to

sections of the Coalition's scope comments from the investigation that were not

previously included in the factual submissions.  *Id.* at 2.

### A.  Parties' Contentions

Plaintiffs contend that "Commerce must consider [the Coalition's] submissions

during the initial . . . investigation regardless of whether any party put portions of the

investigation materials on the record of the scope inquiry."  Pls.' Mem. at 25; *see also*

Pls.' Reply at 12–13.[27]  Plaintiffs base their argument on language in the regulation

---

[27] Plaintiffs' argument appears to be two-fold: 1) that Commerce unlawfully rejected Finewood's citations to the Coalition's scope comments, and 2) that Commerce was required to consider the complete ITC Report regardless of whether the ITC Report was placed on the record in its entirety.  *See* Pls.' Mem. at 24–25; Oral Arg. 1:06:00– 1:07:05.  Because Commerce did not take any adverse action with respect to

stating that Commerce "*will* take into account" the (k)(1) sources, Pls.' Mem. at 25

(quoting 19 C.F.R. § 351.225(k)(1)), and on case law they assert supports their position,

*id.* at 26 (citing *Meridian 2018*, 890 F.3d at 1272; *TMB 440AE, Inc. v. United States*, 43

CIT __, 399 F. Supp. 3d 1314 (2019); *Saha Thai Steel Pipe Pub. Co. v. United States*,

45 CIT __, 547 F. Supp. 3d 1278 (2021)).  Plaintiffs contend that the (k)(1) sources

constitute "legal authority that Commerce must consult."  *Id.* at 27.

The Government argues that Commerce was within its discretion to reject the

untimely new factual information.  Def.'s Resp. at 31–33.  The Coalition contends that

Plaintiffs' cited cases are inapposite.  Def.-Int.'s Resp. at 29–30.

## B.  The Court Will Sustain Commerce's Determination

At issue is the following language from Commerce's scope regulation: "in

considering whether a particular product is included within the scope of an order or a

suspended investigation, [Commerce] *will* take into account the following [sources.]"  19

C.F.R. § 351.225(k)(1) (emphasis added).  A review of the surrounding provisions and

other relevant regulations, along with case law, supports Commerce's characterization

of the (k)(1) sources as factual information and application of corresponding deadlines.

Subsection (c) of 19 C.F.R. § 351.225 explains the process for parties to apply

for a scope ruling.  That provision states that a party applying for a scope ruling must

include "[a]ny *factual information* supporting this position, including excerpts from

---

Finewood's extra-record citations to the ITC Report and Plaintiffs do not point to any
specific parts of the ITC Report that Commerce failed to address, the court leaves open
the question whether the ITC Report, which is a public document, should be treated
differently from other (k)(1) sources.

portions of [Commerce's] or the Commission's *investigation*, and relevant prior *scope rulings*." 19 C.F.R. § 351.225(c)(ii)(C) (emphases added).  These sources, which Commerce identifies as factual information, encompass those listed in subsection (k)(1). *See id.* § 351.225(c)(ii)(C), (k)(1).  Additionally, 19 C.F.R. § 351.102(21) defines "[f]actual information" broadly as "[e]vidence."  The (k)(1) sources are considered evidence of Commerce's understanding of the scope of its order at the time it issued the order.  *See, e.g.*, *Fedmet Res. Corp. v. United States*, 755 F.3d 912, 921 (Fed. Cir. 2014) (stating that "(k)(1) sources are afforded primacy in the scope analysis . . . because interpretation of the language used in the orders must be based on the meaning given to that language during the underlying investigations").

Plaintiffs' reliance on Commerce's use of the term "will" in the regulation is not persuasive of a different interpretation.  *See* Pls.' Mem. at 25.  While terms such as "will" or "shall" often "convey a command rather than a discretionary choice," *Ad Hoc Comm. of AZ-NM-TX-FL Producers of Gray Portland Cement v. United States*, 16 CIT 1008, 1012, 808 F. Supp. 841, 845 (1992), courts have recognized that, when used "against the government, the word 'shall,' when used in statutes, is to be construed as 'may,' unless a contrary intention is manifest," *id.* (quoting *Barnhart v. United States*, 5 CIT 201, 203, 563 F. Supp. 1387, 1389 (1983), in turn quoting *Cairo & F.R. Co. v. Hecht*, 95 U.S. 168, 170 (1877)).

Further, "[a]s with a statute, the intent of a regulation may best be determined by its language."  *Id.*  Plaintiffs overlook Commerce's consistent use of "will" in subsection (k)(2) of the regulation, which states: "[w]hen the above criteria are not dispositive,

[Commerce] *will* further consider [additional factors.]"  19 C.F.R. § 351.225(k)(2)

(emphasis added).  The materials listed in subsection (k)(2) consist of factual

information.  *See id.* (listing "physical characteristics of the product[,]" "channels of trade

in which the product is sold[,]" and the "manner in which the product is advertised and

displayed").  Consequently, the term "will" in both subsections (k)(1) and (k)(2) must be

considered and applied in light of the factual record.  It would be inconsistent to

construe "will" in subsection (k)(1) to require Commerce to consider extra-record

materials while construing "will" in subsection (k)(2) to hold a more limited meaning.  *Cf.*

*Mil.-Veterans Advocacy v. Sec'y of Veterans Affairs*, 7 F.4th 1110, 1147 (Fed. Cir.

2021) ("[I]t is a well-established canon of statutory construction that Congress is

presumed to have intended for 'identical words used in different parts of the same act . .

. to have the same meaning.') (citation omitted).[28]

Lastly, Plaintiffs' case citations are misplaced.  While courts frequently recite the

regulatory steps Commerce must follow for the issuance of a scope ruling and may

direct Commerce to consider the (k)(1) sources, none of the cited cases addressed the

question whether Commerce must consider extra-record information.  *See Meridian*

*2018*, 890 F.3d at 1277 (clarifying the legal framework); *TMB 440AE, Inc.,* 399 F. Supp.

3d at 1322 (remanding for Commerce to conduct a (k)(1) analysis); *Saha Thai*, 547 F.

Supp. 3d at 1290 (same).

Accordingly, Commerce's decision on this issue will be sustained.

---

[28] While this presumption may be overcome, *see, e.g.*, *Nike, Inc. v. Wal-Mart Stores,*
*Inc.*, 138 F.3d 1437, 1445 (Fed. Cir. 1998), Plaintiffs offer no arguments in this regard.

### III.      Commerce's Rejection of IGF's Scope Comments

As previously stated, Commerce rejected IGF's initial and rebuttal scope

comments.  IGF did not challenge those decisions in its complaint or its moving brief.[29]

In its response brief, the Government argued that Commerce's rejection of IGF's scope

comments meant that any arguments of IGF that differed from Plaintiffs were not

exhausted before Commerce, no exception to the exhaustion doctrine applies, and,

therefore, those arguments should not be considered by the court.  Def.'s Resp. at 34

(citing Consol. Pl.'s Mem. at 16–17, 19–20, 43, 46–49); *see also* Def.-Int.'s Resp. at 30–

31 (advancing similar arguments).

In its reply brief, IGF purports to address the issues of waiver and exhaustion.

*See* Consol.-Pl.'s Reply at 1 (summarizing the issues).  IGF does not, however, address

these issues.  Instead, IGF presents new substantive arguments against Commerce's

rejection of its initial and rebuttal scope comments.  *Id.* at 2–10.

The court declines to consider IGF's arguments.  It is well-established "that

arguments not raised in the opening brief are waived."  *SmithKline Beecham Corp. v.*

*Apotex Corp.*, 439 F.3d 1312, 1319 (Fed. Cir. 2006).  This principle is also reflected in

the court's rules, which require movants to include in their Rule 56.2 briefs "the

authorities relied on and the conclusions of law deemed warranted by the authorities."

U.S. Court of International Trade ("CIT") Rule 56.2(c)(2).  Because IGF did not contest

---

[29] In its statement of the case, IGF asserted that "Commerce falsely claimed that it need
consider only information that either Commerce or the parties put on the record."
Consol. Pl.'s Mem. at 6.  IGF did not, however, support its assertions of falsehood with
substantive argument.

Commerce's rejection of IGF's initial and rebuttal scope comments in its moving brief,

IGF waived any such arguments offered for the first time in its reply brief.

Without any basis for remanding Commerce's rejection of IGF's scope

comments, IGF failed to exhaust its administrative remedies with respect to arguments

raised for the first time in its moving brief.  "[T]he [CIT] shall, where appropriate, require

the exhaustion of administrative remedies."  28 U.S.C. § 2637(d).  While exhaustion is

not jurisdictional, *Weishan Hongda Aquatic Food Co., Ltd. v. United States*, 917 F.3d

1353, 1363–64 (Fed. Cir. 2019), the statute "indicates a congressional intent that,

absent a strong contrary reason, the [CIT] should insist that parties exhaust their

remedies before the pertinent administrative agencies," *id.* at 1362 (quoting *Boomerang

Tube LLC v. United States*, 856 F.3d 908, 912 (Fed. Cir. 2017)) (alteration in original).

IGF does not present any reasons—let alone strong reasons—why the court should

decline to apply the exhaustion doctrine here.  Further, while certain exceptions to this

general rule exist, none would appear to apply in this instance.  Accordingly, to the

extent IGF raises arguments not otherwise raised before Commerce by Plaintiffs and

considered herein, the court does not consider those arguments.

## IV.    Finewood's Participation In This Case

In their moving brief, Plaintiffs asserted that Finewood ceased operations in

November 2018 and dissolved in September 2019.  Pls. Mem. at 6.  Based on that

representation, at oral argument, the court requested parties to address Finewood's

capacity to sue in this court, whether any such challenges have been waived, and

Finewood's standing to remain in the action.  Letter to Counsel (Mar. 16, 2023) at 3,

ECF No. 52.  The court noted that Rule 17 "states that capacity to sue is determined, for

corporations, 'by the law under which it was organized,' and 'for all other parties, by the

law of the appropriate state,'" *id.* (quoting CIT Rule 17(b)(2)–(3)), and that Rule 9

requires opposing parties to "raise any issues regarding capacity 'by a specific denial'

and with 'supporting facts that are peculiarly within the party's knowledge,'" *id.* (quoting

CIT Rule 9(a)(2)).  The court further noted that "[c]apacity to sue is distinct from

standing, which is a jurisdictional requirement that must be maintained throughout the

action."  *Id.*

Plaintiffs chose not to provide substantive arguments supporting Finewood's

presence in this action, explaining that the action would continue under the named

importer plaintiffs regardless of Finewood's participation.  Oral Arg. 1:32:00–1:32:25.

Noting that Finewood alleged incorporation under the laws of Vietnam, the Government

stated that it was unable to take a position based on the lack of information regarding

Finewood's status under Vietnamese law.  *Id*. 1:32:30–1:33:20; *see also* Compl. ¶ 1.

The court need not take a position on the issue of capacity (or waiver in relation

thereto) because it finds that Finewood must be dismissed for lack of standing.  In order

to have standing, a "plaintiff must have suffered an 'injury in fact'—an invasion of a

legally protected interest" that is "concrete and particularized" and "actual or imminent";

the injury must be "fairly traceable" to the challenged action; and there must be a

substantial likelihood that the relief requested will redress or prevent the plaintiff's injury.

*Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–561 (1992).  Additionally, "[t]he party

invoking federal jurisdiction bears the burden of establishing these elements."  *Id.* at

561.  Finewood failed to identify any interest that is legally protected in light of the

company's dissolution or otherwise to establish the possibility of redress.[30]  Thus,

Finewood will be dismissed from the action and the clerk will be directed to recaption

the action accordingly.

### CONCLUSION AND ORDER

In accordance with the foregoing, it is hereby

**ORDERED** that Commerce's Final Scope Ruling is remanded for Commerce to

issue a scope ruling concerning Finewood's two-ply panels that is consistent with the

unambiguous meaning of the *Plywood Orders* discussed herein; it is further

**ORDERED** that Commerce's treatment of Finewood's initial scope comments

and its rejection of IGF's initial and rebuttal scope comments are sustained; it is further

**ORDERED** that, on or before May 4, 2023, Commerce must correct the

administrative record or provide an explanation as to why correction is inappropriate,

consistent with footnote 25 of this opinion; it is further

**ORDERED** that Finewood is dismissed from the action and the clerk is directed

to amend the caption of this action accordingly; it is further

**ORDERED** that Commerce shall file its remand redetermination on or before

June 20, 2023; it is further

---

[30] In parallel litigation challenging CBP's affirmative EAPA determination, the court denied Finewood's motion to intervene on similar grounds, finding that Finewood had failed to establish a legally protected interest in the action as required pursuant to CIT Rule 24(a)(2).  *See* Order, *Far East Am., Inc. v. United States*, Consol. Ct. No. 22-cv-213 (Oct. 7, 2022), ECF No. 33.

Consol. Court No. 22-00049                                                  Page 39

     **ORDERED** that subsequent proceedings shall be governed by CIT Rule 56.2(h); and it is further

     **ORDERED** that any comments or responsive comments must not exceed 3,000 words.

/s/      Mark A. Barnett____
Mark A. Barnett, Chief Judge

Dated: April 20, 2023_____
     New York, New York